## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SCRANTON PRODUCTS, INC.,    :

        **Plaintiff,**    :

    v.    :    **3:14-CV-00853**

    :    **(JUDGE MARIANI)**

BOBRICK WASHROOM    :
EQUIPMENT, INC.,    :

        **Defendant.**    :

**FILED
SCRANTON**

JUN - 3 2016

PER _____
        DEPUTY CLERK

### MEMORANDUM OPINION

Pending before the Court are six discovery disputes.  In the first dispute, Defendant Bobrick Washroom Equipment, Inc. ("Bobrick") seeks relief in connection with the alleged "unauthorized practice of law and unethical conduct of Mr. Brian Cooper," in-house counsel for Plaintiff Scranton Products, Inc. ("SP").  (Docs. 138-140).  Next, Bobrick challenges SP's "improper redactions," specifically, SP's redactions based on its determination that certain information is irrelevant to the litigation.  (Docs. 142, 152, 161).  The other four disputes concern the parties' challenges to certain "Confidential" and "Attorneys Eyes Only" ("AEO") designations under the Modified Stipulated Protective Order (the "Protective Order").  (Docs. 101, 109, 115; 123-124; 141, 149-151, 156-159; 186).  The Court will address each dispute in turn.

### I.    INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff SP filed a complaint (the "Complaint") in May 2014 alleging, among other things, that Defendant Bobrick "carefully orchestrated a campaign to scare architects, product

specifiers, procurement representatives, building owners, and others in the construction

industry into believing that Scranton Products' toilet partitions are fire hazards, are unsafe

and pose health and safety risks if used in building projects across the country." (Compl. at

¶ 1).  SP asserts two claims under the Lanham Act, 15 U.S.C. § 1125(a), claiming "literally

false advertising," and "deceptive and misleading advertising" and seeks both monetary

damages and equitable relief. (*Id.* at ¶¶ 61-76).  SP also brings claims under Pennsylvania

law, alleging common law unfair competition, commercial disparagement, and tortious

interference with existing or prospective business relations.  (*Id.* at ¶¶ 77-92).  Bobrick filed

its Answer on June 25, 2014.  (Doc. 21).

For the past two years the parties have engaged in protracted and highly contentious

discovery disputes, filing motion after motion requesting the Court's intervention.  On May

20, 2016, the Court held oral argument in connection with five of the six pending discovery

disputes.

### A. The Alleged Unauthorized Practice of Law and Unethical Conduct of Brian Cooper

In the first pending dispute, Bobrick seeks relief concerning the alleged unauthorized

practice of law and "unethical and improper conduct" of SP's in-house counsel, Mr. Brian

Cooper.  (Docs. 138-140).  In particular, Bobrick alleges that Mr. Cooper has violated

Pennsylvania Bar Rule 302 ("Rule 302") and three provisions of the Pennsylvania Rules of

Professional Conduct:  Rules 4.2, 8.4(a), and 8.4(c).  As a result of Mr. Cooper's apparent

misconduct, Bobrick requests that the Court: (1) order SP "to produce all documents and

2

information that have been withheld based on an assertion that such documents reflect privileged attorney-client communications between SP and Mr. Cooper," because Mr. Cooper is not authorized to practice law in Pennsylvania; and (2) enter an order precluding SP from "continuing to use or rely upon its self-serving characterization," of a July 11, 2013, telephone call between Bobrick President Mark Louchheim and SP President Don Wharton "because of Mr. Cooper's unethical conduct—secretly participating in and documenting" the telephone call. (*Id.* at 1-2).

### i.     Pennsylvania Bar Rule 302

Rule 302 requires non-admitted "in-house" attorneys providing legal services within Pennsylvania to first obtain a Limited In-House Corporate Counsel License ("Rule 302 License"). Pa. B.A.R. § 302(a). Since January 13, 2013, Mr. Cooper has served as general counsel for CPG International, Inc. ("CPG") and its affiliates, which includes Plaintiff SP. (Doc. 138-2, at 3). When he was first hired in early 2013, Mr. Cooper testified that he worked and maintained an office "strictly" in Scranton, Pennsylvania. (*Id.* at 5-6). Eight months later, in August 2013, Mr. Cooper relocated to Skokie, Illinois. (*Id.*). Since then, Mr. Cooper "kind of" has an office in Pennsylvania that he testified he "go[es] to" but does not "spend really any time there unless I am doing work in Pennsylvania which is probably about every two or three months." (*Id.* at 7-8).

Mr. Cooper testified that he was aware of Rule 302 but did not know whether he possessed a Rule 302 License. Specifically, Mr. Cooper testified that he was "not sure"

3

whether he possessed a Rule 302 License and that he "recall[ed] there was something about that" but did not "remember." (Doc. 138-2, at 8). He further testified that he did not recall whether he submitted an application to obtain a Rule 302 License and that he "thought [he] had." (*Id.* at 7). However, it is undisputed that Mr. Cooper neither obtained a Rule 302 License nor is a member of the Pennsylvania Bar. It is also undisputed that Mr. Cooper has been an active member of the California Bar since 1990. (*Id.* at 7); *see also* (Doc. 138-3). According to Bobrick, Mr. Cooper's failure to obtain a Rule 302 License warrants a finding that certain of his communications with SP are not protected from disclosure by the attorney-client privilege.

### ii.    Alleged Violation of the Pennsylvania Rules of Professional Conduct

Bobrick next asserts that, in addition to his failure to comply with Rule 302, Mr. Cooper violated Rules 4.2, 8.4(a), and 8.4(c) of the Pennsylvania Rules of Professional Conduct. Mr. Cooper's alleged violations all stem from his "silent participation" in a July 11, 2013, telephone call between SP's President Don Wharton and Bobrick's President Mark Louchheim.

On July 11, 2013, prior to the commencement of the instant litigation, SP's President Don Wharton initiated a call with Bobrick's President Mark Louchheim to discuss the parties' ongoing dispute over Bobrick's statements to third parties regarding SP's HDPE toilet

4

partition products and their compliance, or lack thereof, with the NFPA-286 standard.[1]

Neither Mr. Wharton nor Mr. Cooper informed Mr. Louchheim (or, for that matter, Bobrick's

in-house or outside counsel) that Mr. Cooper was in the same room as Mr. Wharton,

listening and taking notes. (Doc. 138-2, at 12). Moreover, Mr. Cooper testified at his

deposition that he advised Mr. Wharton prior to the call by providing him with "talking

points," and that he "assumed" Bobrick to be represented by counsel at the time of the July

11, 2013 call. (Doc. 138-2). Mr. Cooper found it unnecessary to disclose his presence on

the call because he "was just there to witness the call" and "wasn't participating on the call"

or "making any statements." (Doc. 138-2).

SP has used Mr. Cooper's notes and characterizations of the call to support its claims in

this litigation. Specifically, SP alleges that during the call Mr. Louchheim "acknowledged

that Scranton products offered for sale NFPA 286-complaint HDPE toilet partitions."

(Compl. at ¶ 39). The Complaint also asserts that Mr. Louchheim:

> further acknowledged that Bobrick's specific attacks on Scranton Products' HDPE toilet
> partitions . . . were initiated because Scranton Products is an industry leader in toilet
> partitions, thus revealing the true motive behind Bobrick's improper campaign: to imply
> that Scranton Products' HDPE toilet partitions were unsafe, thereby diverting toilet
> partition sales away from Scranton Products to Bobrick.

---

[1] HDPE is an abbreviation for high-density polyethylene. (Compl. at ¶ 2). "NFPA 286" is "a test developed by the National Fire Protection Association" identified in the International Building Code as "the standard for evaluating the contribution of certain 'interior finish' materials to room fire growth during specific fire exposure conditions." (Id. at ¶¶ 2, 14-15). "The fire testing that NFPA 286 provides is known as the 'room corner' test. NFPA 286 and its room-corner test applies only to 'interior finishes' constructed of HDPE or polypropylene. NFPA 286 also sets forth the 'acceptance criteria' that tested material must meet in order to pass the room-corner test." (Id. at ¶ 16).

(*Id.* at ¶ 40). Mr. Louchheim and Bobrick dispute SP's characterizations of the call, and deny that Mr. Louchheim admitted on the call that SP sells a NFPA-286 compliant HDPE toilet partitions. (Doc. 140).

Mr. Cooper's failure to disclose his presence and notetaking to Mr. Louchheim is, according to Bobrick, a violation of the Pennsylvania Rules of Professional Conduct. Because of this alleged violation, Bobrick seeks an order precluding SP from "using or relying on any written or oral characterization" of the telephone call. (Doc. 138, at 16). Alternatively, Bobrick requests that "[s]hould the Court believe that additional factual information is needed to determine whether Mr. Cooper impermissibly originated or orchestrated Mr. Wharton" in connection with the call, that the Court "order SP, at a minimum, to submit the relevant correspondence to the Court for *in camera* review." (*Id.* at 17).

## B. SP's Redactions For Relevancy

The second dispute before the Court concerns whether SP properly redacted certain information contained on 225 pages of documents it produced to Bobrick. SP redacted this information after determining it was "irrelevant" to any claim or defense at issue in the litigation.[2] (Doc. 142, at 3-4). To remedy what Bobrick terms SP's "improper redactions,"

---

[2] In addition to Plaintiffs redaction of information concerning its HDPE lockers, which the Court has already determined to be irrelevant to any claim or defense in the litigation, SP also claims to have redacted the following information as irrelevant: "(1) manufacturing costs and profit margins; (2) HDPE materials not subjected to fire testing under the NFPA 286 Room Corner test; (3) SP's Non-Fire testing of HDPE toilet partitions; (4) SP's marketing and product development strategies; (5) detailed internal

Bobrick seeks an order requiring SP to "(1) produce unredacted versions of all documents SP has redacted to date based on relevance, (2) refrain from making an further relevance redactions absent order from the court, and (3) consistent with the current language of Federal Rule of Civil Procedure 34, disclose whether it has silently withheld documents in their entirety based on its objections including relevance objections." (*Id.*).  SP did not submit unredacted copies of the documents at issue for the Court's *in camera* review.

### C.  Challenges to Certain Confidential and Attorneys Eyes Only Designations

Bobrick also raises challenges to SP's designations of certain documents and information as "Confidential" and/or AEO under the Protective Order.  Bobrick maintains that SP failed to demonstrate "good cause" to support its designations of 557 documents as "Confidential," (Docs. 101, 109, 115), as well as its designations of certain information as AEO. (Docs. 141, 149-151, 156-159; 123-124).  As a result, Bobrick seeks an order de-designating the identified documents and information based on SP's alleged failure to demonstrate "good cause" to support its Confidential and AEO designations.  In addition, Bobrick submitted a letter requesting that the Court uphold certain of its AEO designations, which SP has recently challenged.  (Doc. 186).

The Protective Order currently in place in this litigation governs "any document, information, or other thing furnished by any party, to any other party," and further provides

---

information regarding the sale of SP's HDPE toilet partitions; and (6) SP's manufacturing equipment and processes." (Doc. 142, at 11-15).

that each producing party may designate certain documents and information as

"Confidential" and/or AEO. (Doc. 60). A "Confidential" designation means "that the

document or information is comprised of technical, financial, customer, or other commercial

information which is not publicly known and is maintained by its possessor in confidence, or

other information required by law or agreement to be kept confidential." (Doc. 60 at ¶ 2).

An AEO designation, in contrast, "shall mean that the document or information is comprised

of trade secrets, confidential research and development, or other confidential technical

information such that disclosure needs to be limited to a smaller group of recipients than

information designated as Confidential." (Id.). Neither Confidential nor AEO designations

shall apply to "information that is already in the knowledge or possession of the party to

whom disclosure is made unless the party is already bound by agreement not to disclose

such information, or information that has been disclosed to the public or third persons in a

manner making such information no longer confidential." (Id.).

The Protective Order also provides a mechanism by which each party can challenge the

designations. (Doc. 60 at ¶¶ 3(a)-(c)). More specifically, paragraph 5(c) provides that:

> A receiving party may, in good faith, challenge the producing party's Confidential designation at any time. Any receiving party disagreeing with a Confidential designation may request in writing that the producing party change or remove the Confidential designations. The producing party shall then have fourteen (14) days after receipt of the challenged notice to advise the receiving party whether or not it will change the Confidential designation. If the parties are unable to reach agreement after the expiration of this fourteen (14) day time frame, and after the conference required under Local Rule 26.3, the receiving party may at any time thereafter seek a Court Order to alter the Confidential status of the designation information.

(*Id.* at ¶ 5(a)).  The procedure for challenging an AEO designation is similar, but includes a provision for the Court's *in camera* review of the challenged designations.  (*Id.* at ¶ 5(b)).

## II.    ANALYSIS

Before addressing the pending discovery disputes, the Court wishes to remind the parties that "discovery is about developing a record in the case that produces all of the relevant information necessary to insure an outcome fair to all parties." *Consugar v. Nationwide Ins. Co. of Am.*, No. 3:10-CV-2084, 2011 WL 2360208, at *4 (M.D. Pa. June 9, 2011).  Discovery is *not* a "competition to see which party can manipulate legal doctrines to gain advantage." *Id.*

The 2015 amendments to Rule 1 of the Federal Rules of Civil Procedure now provide "that the Court and the parties in any federal civil action must constantly strive to resolve unsettled disputes with the ultimate end of a 'just, speedy, and inexpensive determination of every action and proceeding.'"[3] *Joan Summy-Long v. Pennsylvania State Uni.*, No. 1:06-cv-1117, 2016 WL 74767, at *8 (M.D. Pa. Jan. 7, 2016) (slip copy) (quoting Fed. R. Civ. P. 1)).  The Court does not believe that the parties are living up to letter and spirit of the Federal

---

[3] The advisory committee notes recognize that the 2015 amendment to Rule 1 is designed:

> to emphasize that just as the court should construe and administer these rules to secure the just, speedy, and inexpensive determination of every action, so the parties share the responsibility to employ the rules in the same way.  Most lawyers and parties cooperate to achieve these ends.  But discussions of ways to improve the administration of civil justice regularly include pleas to discourage over-use, misuse, and abuse of procedural tools that increase cost and result in delay.  Effective advocacy is consistent with—and indeed depends on—cooperative and proportional use of procedure.

Fed. R. Civ. P. 1 advisory comm. notes

Rules.  Should the parties continue with their incessant and petty bickering, and be wholly

unable to resolve any dispute (no matter how minor) without the Court's intervention, the

Court will not hesitate to take just and appropriate action, including sanctions.  With that

said, the Court first addresses Defendant Bobrick's motion "concerning the unauthorized

practice of law and unethical conduct" of Mr. Brian Cooper.  (Doc. 138).

### A. The Alleged Unauthorized Practice of Law and Unethical Conduct of Mr. Brian Cooper

In the first dispute, Bobrick requests relief in connection with what it alleges is Mr.

Cooper's:  (1) unauthorized practice of law in Pennsylvania; and (2) alleged violations of

several of the Pennsylvania Rules of Professional Conduct.  The Court will address each in

turn.

### i. Pennsylvania Bar Rule 302 and the Unauthorized Practice of Law

Bobrick alleges that Mr. Cooper engaged in the unauthorized practice of law in

Pennsylvania and, as a result, seeks an order requiring SP to produce certain documents

over which it has asserted the attorney-client privilege.  (Docs 138, 140).  The theory behind

Bobrick's request is that, as SP's general counsel since January 2013, Mr. Cooper failed to

comply with Pennsylvania Bar Rule 302.  Rule 302 requires any non-admitted "in house"

attorney providing legal services in Pennsylvania to obtain a Limited In-House Corporate

Counsel License.  Specifically, Rule 302(a) provides:

> Every attorney not a member of the bar of this Commonwealth, who is employed by and
> performs legal services in this Commonwealth for a corporation, company, partnership,
> association or other non-governmental business entity, shall obtain a Limited In-House

Corporate Counsel License in order to provide such services if such services are performed in this Commonwealth on more than a temporary basis by the attorney or if the attorney maintains an office or other systematic and continuous presence in this Commonwealth.

P.A. B.A.R. Rule 302(a).

As discussed, Mr. Cooper has served as general counsel for CPG and its affiliates, including Plaintiff SP, since January 2013. (Doc. 138-2, at 3). From that date until August 2013, Mr. Cooper worked and maintained an office "strictly" in Scranton, Pennsylvania, (*Id.* at 5-6), prior to relocating to Skokie, Illinois. (*Id.*). Since August 2013, Mr. Cooper on occasion travels to Pennsylvania as part of his employment duties and testified at his deposition that he "kind of" has an office in Pennsylvania. (*Id.*). Mr. Cooper further testified that does not visit his office in Pennsylvania unless he is "doing work in Pennsylvania which is probably about every two or three months." (*Id.* at 7-8). It is undisputed that Mr. Cooper, although an active member of the California bar, is not and was not licensed to practice law in the State of Pennsylvania. (*Id.* at 7); *see also* (Doc. 138-3). Nor is there any dispute that Mr. Cooper had knowledge of Rule 302 and that he nevertheless failed to obtain a Rule 302 License. As a result, Bobrick asserts that "any legal services" Mr. Cooper "provided to SP in Pennsylvania constituted the unauthorized practice of law." (Doc. 138, at 4-5). Based on Mr. Cooper's alleged unauthorized practice of law, Bobrick claims it is entitled to certain documents and communications that SP maintains are protected from disclosure by the attorney-client privilege on the theory that SP cannot claim that its communications with Mr.

Cooper were made for the purpose of obtaining legal advice because Mr. Cooper was not authorized to provide legal advice in this jurisdiction.

The Court rejects Bobrick's request and declines entering an order requiring SP to produce its purportedly privileged documents and communications to Bobrick. Although the Court makes no finding whether Mr. Cooper, in fact, engaged in the unauthorized practice or law in Pennsylvania by failing to comply with Rule 302, the Court concludes that even if Mr. Cooper violated Rule 302, the relief Bobrick seeks is unwarranted. As SP correctly notes, the fact that Mr. Cooper "is not admitted to practice law in Pennsylvania does not mean that SP's communications with him are not protected by the attorney-client privilege." (Doc. 139, at 1-2). Rather, Mr. Cooper's communications with SP are protected by the attorney-client privilege since he is a member of the bar and licensed to practice in *a* jurisdiction. *See In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979) (noting that the attorney-client privilege applies when the "person to whom the communication was made . . . is a member of the bar of *a* court) (emphasis added); *accord Shukh v. Seagate Tech. LLC*, 848 F. Supp. 2d 987, 993-94 (D. Minn. 2011).[4]

---

[4] The Court finds the cases cited by Bobrick in support of its motion are inapposite, as they all concern individuals who were not licensed to practice law in *any* jurisdiction. *See, e.g. Dabney v. Inv. Corp. of Am.*, 82 F.R.D. 464, 465 (E.D. Pa. 1979) (communications with a law student not admitted to any bar were not protected by the attorney client privilege); *Anwar v. Fairfield Greenwich Ltd.*, 306 F.R.D. 117, 119 (S.D.N.Y. 2013) (holding that communications with "a lawyer by education, but . . . not a licensed attorney" were not privileged); *RLS Assocs. LLC v. United Bank of Kuwait*, No. 01-Civ-1290, 2003 WL 1563330, at *1 (S.D.N.Y. Mar. 26, 2003) (finding that communications with "lawyers [who] were not admitted to the bar of any jurisdiction," were not privileged).

Mr. Cooper has been an active member of the California bar since 1990. (Doc. 139, at 2). The fact that he may have engaged in the unauthorized practice of law in Pennsylvania does not mean that his communications with Plaintiff are non-privileged. Rather, because Mr. Cooper is a member of the bar of a jurisdiction, the Court finds that his communications with SP are privileged regardless of his compliance—or lack thereof—with Rule 302. Although the Court is denying the relief Bobrick seeks, as discussed more fully below, the Court deems it appropriate to refer the matter to the appropriate disciplinary authorities to determine whether Mr. Cooper's conduct may constitute a violation of Rule 302.

### ii.   The Alleged Unethical Conduct of Mr. Cooper

Bobrick next maintains that Mr. Cooper's "silent participation" and notetaking on the July 11, 2013, call between Mr. Wharton and Mr. Louchheim—without making his presence on the call known to Mr. Louchheim or Bobrick's counsel—violated Rules 4.2, 8.4(a), and 8.4(c) of the Pennsylvania Rules of Professional Conduct. As a remedy for Mr. Cooper's alleged violations, Bobrick seeks an order "barring SP from using or relying upon any written or oral characterization of the July 11, 2013 phone call—including the self-serving notes prepared by Mr. Cooper—in connection with any motion or at trial."[5] (Doc. 138, at 16). Alternatively,

---

[5] In its Reply, Bobrick makes a somewhat similar request for "an order barring SP from using, in any way, documents or testimony reflecting its characterization of the July 11, 2013 phone call—specifically, SP's claim that Mr. Louchheim somehow 'acknowledged' during the call that any of SP's toilet partitions were compliant with NFPA 286 or that Bobrick's statements regarding SP's products were made for anticompetitive purposes." (Doc. 140, at 16).

Bobrick seeks *in camera* review of certain e-mails communications involving Mr. Cooper

that have been identified on SP's privilege log. (*Id.*).

### a. Rule 4.2 and 8.4(a) of the Pennsylvania Rules of Professional Conduct

The Court will first address whether the facts indicate that Mr. Cooper's conduct violated

Rules 4.2 and 8.4(a) of the Pennsylvania Rules of Professional Conduct.  Rule 4.2, which

has been adopted by this court pursuant to Local Rule 83.23.2, provides that:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has consent of the other lawyer or is authorized to do so by law or a court order.

Pa. R. Prof'l Conduct 4.2.[6]   The rule "applies to communications with any person who is

represented by counsel concerning the matter to which the communication relates." *Id.* cmt.

2.  Both the comments to Rule 4.2 and Rule 8.4(a) make clear that an attorney need not

personally and directly communicate with a represented party in order to violate Rule 4.2.

*See* Pa. R. Prof'l Conduct 4.2, cmt. 4 ("A lawyer may not make a communication prohibited

by this Rule through the acts of another."). *See also United States v. Brown*, 595 F.3d 498,

515 (3d Cir. 2010) (noting that Rule 8.4(a) of the Pennsylvania Rules of Professional

---

[6] Local Rule 83.23.2 provides, in relevant part, that the Middle District of Pennsylvania has adopted: "(1) the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania . . . ; and (2) the Code of Professional Conduct enacted in the Middle District of Pennsylvania's Civil Justice Reform Act Plan." L.R. 83.23.2.

Conduct provide that "an attorney has engaged in misconduct if he violates the Pennsylvania Rules of Professional Conduct through the acts of another.").[7]

Because it is undisputed that Mr. Cooper did not personally communicate with Mr. Louchheim, in order to find a violation of Rules 4.2 and 8.4(a) the Court must conclude that Mr. Cooper caused or directed SP's President Don Wharton to engage in the communication for some improper purpose, such as orchestrating an attempt to obtain an admission from Mr. Louchheim that would subsequently be used against Defendant Bobrick in litigation. *See Miano*, 148 F.R.D. at 89 (concluding that the attorney did not violate Rule 4.2 because the evidence demonstrated that he "did not suggest, plan, or supervise" what the client was doing, and the client's communication "was not illegal"). Although the Court is deeply troubled by Mr. Cooper's conduct, it nevertheless reluctantly concludes that there is insufficient evidence, on the record thus far, that Mr. Cooper directed or caused Mr. Wharton to communicate with Mr. Louchheim in violation of Rules 4.2 and 8.4(a). Nevertheless, the Court will refer this matter to the appropriate disciplinary authorities for investigation and to determine whether disciplinary sanctions may be warranted. Furthermore, should Bobrick develop additional facts at the forthcoming deposition of Mr. Wharton, it may renew its request for relief in connection with Mr. Cooper's alleged violations of Rule 4.2 and 8.4(a).

---

[7] Courts have found that a client qualifies as "another" within the meaning of the disciplinary rules. *See, e.g., Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc.*, 144 F. Supp. 2d 1147, 1157 (D.S.D. 2001) (recognizing that "the attorney may not avoid [Rule 4.2] by directing an investigator or anyone else to contact" a represented party), *aff'd* 347 F.3d 693 (8th Cir. 2003); *Miano v. AC & R Advertising, Inc.*, 148 F.R.D. 68, 75 (S.D.N.Y. 1993) (holding that a "client is 'another' for purposes of the disciplinary rules").

### b. Rule 8.4(c) of the Pennsylvania Rules of Professional Conduct

Although the Court declines, at this time, to find that Mr. Cooper's conduct violated

Rules 4.2 and 8.4(a), the Court concludes that Mr. Cooper violated Pennsylvania Rule of

Professional Conduct 8.4(c) by engaging in dishonest and deceitful conduct. Rule 8.4(c)

provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving

dishonesty, fraud, deceit, or misrepresentation." Pa. R. Prof'l Conduct 8.4(c). Although

there is no consensus on when an attorney's conduct crosses the line and results in a

violation of Rule 8.4(c), the Court is convinced that Mr. Cooper's failure to disclose his

presence and notetaking on the July 11, 2013, call, knowing that Bobrick was at the time

represented by counsel in connection with the subject matter of this litigation, constitutes

dishonest and deceitful conduct and therefore violates Rule 8.4(c).[8] *See McClelland v.*

*Blazin' Wings, Inc.,* 675 F. Supp. 2d 1074, 1077 (D. Colo. 2009) (attorney violated Rule

8.4(c) when his investigator surreptitiously recorded a telephone call with represented party

because "[e]ven if the lawyer had no prior knowledge of the investigator's surreptitious

recording, once they learned that the interview was recorded without [the party's] consent

---

[8] For example, some Courts in this circuit have concluded that an attorney's ostensibly deceptive conduct in the course of investigating a claim does not violate 8.4(c). *See, e.g., Apple Corps Ltd. v. Int'l Collectors Soc.,* 15 F. Supp. 2d 456, 475 (D.N.J. 1998) (concluding that Rule 8.4(c) "does not apply to misrepresentations solely as to identity or purpose and solely for evidence-gathering purposes" and that an attorney is not "ethically proscribed" from directing a third party to engage in the "limited use of deception to learn about ongoing acts of wrongdoing."); *Essex Cnty. Jail Annex Inmates v. Treffinger,* 18 F. Supp. 2d 418, 435 n.6 (D.N.J. 1998) (concluding that "literal application of the prohibition of RPC 8.4(c) as to any 'misrepresentation' by a lawyer, regardless of its materiality, is not a supportable construction of the rule") (internal citation and quotation marks omitted). Those Courts find Rule 8.4(c) is "generally limited to those cases involving fraud or deceit, or put another way, to misrepresentations that manifest a degree of wrongdoing." *Id.*

they should not have listened to it or used the recording without [the party's] permission.");

see also *Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc.*, 144 F. Supp. 2d 1147, 1158

(D.S.D. 2001) ("It is, however, unethical for an attorney or his investigator or other agent to

record a conversation without the other party's knowledge or consent because such conduct

involves deceit or misrepresentation."), *aff'd* 347 F.3d 693 (8th Cir. 2003).

In *Arctic Cat Sales,* the Eighth Circuit, affirming the district court's imposition of

sanctions for violations of Rules 4.2 and 8.4(c), found that when the purpose behind an

allegedly *ex parte* contact was "to elicit damaging admissions" from [the defendant's]

president to secure an advantage at trial "[s]uch tactics fall squarely within Model Rule

8.4(c)'s prohibition of 'conduct involving dishonesty, fraud, deceit or misrepresentation.'"

*Arctic Cat Sales*, 347 F.3d at 700 (quoting R.P.C. 8.4(c)).  The Court further found that the

attorney had a "duty to refrain from conduct that involves deceit or misrepresentations," and

that such duty "should preclude any attorney from participating in the type of surreptitious

conduct that occurred here."[9]  *Arctic Cat Sales*, 347 F.3d at 699.

---

[9] The fact that Mr. Cooper's misconduct is based on silence and his failure to disclose certain information regarding his presence and notetaking to Mr. Louchheim is of no consequence. *See Romero-Barcelo v. Acevedo-Vila*, 275 F. Supp. 2d 177, 190 (D.P.R. 2003) ("In addition, courts have held that the rule against dishonesty can be violated by silence or a failure to speak, including conduct that involved no express misrepresentation but simply consisted of a failure to reveal underlying facts which might be necessary to avoid misleading someone.") (citing *In re Greene*, 290 Or. 291, 620 P.2d 1379, 1383 (1980)). Because Mr. Cooper had a "duty to refrain from conduct involving deceit or misrepresentation," *Arctic Cat Sales*, 347 F.3d at 699, his failure to disclose his presence on the call with Mr. Louchheim, a represented party, violated Rule 8.4(c)'s prohibition on conduct involving deceit, dishonesty, fraud, and misrepresentation.

The facts before the Court show that although Mr. Cooper apparently did not "record" the call with Mr. Louchheim, he took detailed notes of that conversation and knowingly or recklessly failed to inform Mr. Louchheim of his presence on the call. Equally clear is that Mr. Cooper knew Mr. Louchheim was represented by counsel at the time, and that SP seeks to benefit from Mr. Cooper's conduct to support its claims against Defendant Bobrick based on Mr. Louchheim's alleged admissions during that call that SP sells NFPA-286 compliant toilet partitions and that Bobrick's statements regarding SP's products were made for anticompetitive purposes (which are the central issues in dispute in this litigation).[10] Moreover, Mr. Cooper attended Mr. Louchheim's deposition during which Mr. Louchheim testified that only he and Mr. Wharton were on the call, (Doc. 138-8, at 4). Despite his knowledge of the falsity of that statement, Mr. Cooper took no action whatever to correct the misunderstanding.[11]

Based on the totality of the circumstances, the Court has little trouble concluding that Mr. Cooper's conduct involved "an element of deception, artifice, and trickery which does not comport with the high standards of candor and fairness by which all attorneys are bound."

---

[10] Facts supporting Mr. Cooper's knowledge that Bobrick was represented by counsel at that time include Mr. Cooper's testimony that he "assumed" Bobrick to be represented, (Doc. 138-2), and a May 2013 letter from Mr. Cooper to Bobrick VP Alan Gettelmen referencing Bobrick's "counsel" as well as references to "admission[s] made by Bobrick concerning the very subject matter of the dispute." (Doc. 138-7).

[11] Mr. Cooper also failed to preserve certain records following the July 11, 2013, call on the mistaken belief that this call resolved all aspects of the dispute between Bobrick and SP (and therefore it was unnecessary to preserve these records in anticipation of litigation). (Doc. 140-7, at 6-7) (Mr. Cooper testified that he did not issue a litigation hold in 2013 based on his "strong hope that [the dispute] was resolved, and it was [his] belief at the time that it had been, but it retrospect that turned out not to be the case").

*Arctic Cat Sales*, 144 F. Supp. 2d at 1159 (internal citation and quotation marks omitted);

*see also Miano*, 148 F.R.D. at 76 (noting that "[t]here is authority for the proposition that it is

unethical for an attorney" to record a conversation without the other persons knowledge and

consent "since such conduct is considered to involve deceit or misrepresentation"). Indeed,

at the May 20, 2016, oral argument counsel for SP recognized the unsavory nature of Mr.

Cooper's conduct, referring to it as "ill-advised," May 20, 2016 Hr'g Tr. at 19:12-13, a

"mistake," *Id.* at 20:23-24, and noting that she was "troubled by it." *Id.* at 19:25-20:4.

Moreover, counsel stated that:

> All I'm going to say is, in-house lawyers, having worked with a lot of them, are not as
> careful, in general, as outside lawyers. I will just tell you that right now. I'm not excusing
> his behavior, I'm not. But in-house lawyers are definitely not nearly as careful as outside
> lawyers. Outside lawyers would never do this, and if they did, they would understand
> what the consequence would be.

*Id.* at 21:7-14. At bottom, Mr. Cooper's conduct warrants a conclusion that he knowingly

or, at a minimum, recklessly engaged in deceitful and dishonest conduct, and therefore he

violated Rule 8.4(c)'s proscription on attorney dishonesty and deceit.

### c. The Appropriate Remedy For Mr. Cooper's Violation of Rule 8.4(c)

Having found that Mr. Cooper violated Rule 8.4(c) of the Pennsylvania Rules of

Professional Conduct, the Court next turns to the appropriate remedy. In its motion, Bobrick

requests an order precluding SP from "using or relying on any written or oral

characterization" of the telephone call. (Doc. 138, at 16). Alternatively, Bobrick requests

that "[s]hould the Court believe that additional factual information is needed to determine

whether Mr. Cooper impermissibly originated or orchestrated Mr. Wharton" in connection

with the call, that the Court "order SP, at a minimum, to submit the relevant correspondence

to the Court for *in camera* review." (*Id.* at 17).

It is well recognized that federal courts have "broad authority to discipline attorneys"

pursuant to "its inherent disciplinary jurisdiction." *In re Cendant Corp.*, 260 F.3d 183, 199

(3d Cir. 2001); *see also United States v. Northrop Grumman Corp.*, __ F.App'x__, 2016 WL

1138264, at *4 (5th Cir. Mar. 23, 2016) ("District courts are afforded discretion in penalizing

ethical violations."). That power includes the ability to "prohibit or remedy litigation practices

which constitute ethical violations." *Comuso v. Nat'l R.R. Passenger Corp.*, No. CIV A 97-

7891, 2000 WL 502707, at *3 (E.D. Pa. Apr. 25, 2000). In remedying an ethical violation, "it

is appropriate to consider the seriousness of the violations and whether the violations were

intentional, as well as the nature and extent of prejudice suffered or likely to be suffered by

the parties in the future as a result of the violation." *In re Air Crash Disaster Near*

*Roselawn, Indiana on October 31, 1994*, 909 F. Supp. 1116 (N.D. Ill. 1995) (citing *In re Am.*

*Airlines*, 973 F.2d 605, 611 (5th Cir. 1992)). A showing of bad faith is not required in order

to sanction a party for attorney misconduct pursuant to the Court's inherent authority. *See*

*Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 73 (3d Cir. 1994). Rather,

in imposing sanctions:

> First, the court must consider the conduct at issue and explain why the conduct warrants
> sanctions. If an attorney, rather than a client, is at fault, the sanction should ordinarily
> target the culpable attorney. Obviously, a pattern of wrongdoing may require a stiffer
> sanction than an isolated incident; a grave wrongdoing may compel a more severe

20

sanction than might a minor infraction; and wrongdoing that actually prejudices the wrongdoer's opponent or hinders the administration of justice may demand a stronger response than wrongful conduct that, through good fortune or diligence of court or counsel, fails to achieve its untoward object. Furthermore, there may be mitigating factors that must be accounted for in shaping the court's response.

Second, having evaluated the conduct at issue, the district court must specifically consider the range of permissible sanctions and explain why less severe alternatives to the sanction imposed are inadequate or inappropriate.

*Id* at 74. A "district court must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers, and must also ensure that the sanction is tailored to address the harm identified." *Id.* at 74.

Here, there is no dispute regarding the facts surrounding Mr. Cooper's conduct: both parties admit that he listened in on and took notes during the July 11, 2013, phone call while in the same room as Mr. Wharton, and that both Mr. Cooper and Mr. Wharton failed to alert Mr. Louchheim or his counsel of Mr. Cooper's presence. As an attorney, Mr. Cooper "was required and expected to maintain the highest standard of veracity and integrity." *Miller v. Beneficial Mgmt. Corp.*, 855 F. Supp. 691, 710 n.22 (D.N.J. 1994). He has failed to do so. Such behavior, as discussed above, is dishonest and deceitful and violates Rules 8.4(c).

Turning to the appropriate sanction, the Court recognizes the "basic tenet that sanctions should always be narrowly tailored to meet the misconduct, and should entail no greater punishment than is reasonably necessary to address the specific wrongdoing that confronts the court." *Bartos v. Pennsylvania*, Civil No. 1:08-CV-0366, 2010 WL 1816674, at *6 (M.D. Pa. May 5, 2010). There is no doubt that Mr. Cooper's conduct has resulted in prejudice to

Bobrick, namely, Mr. Cooper's notes and characterizations of the July 11, 2013 call—which

are disputed by Bobrick—are being used to support SP's claims in this litigation.[12] (Doc.

140-7, at 5). Because these notes and Mr. Cooper's characterizations were the result of his

ethical violation, the Court believes it would be "inequitable" to permit Plaintiff to "profit" from

the use of evidence obtained in violation of Rule 8.4(c). *Uni. Patents, Inc. v. Kligman*, 737

F. Supp. 325, 329 (E.D. Pa. 1990). Courts routinely preclude use of evidence obtained in

violation of the ethical rules in order to appropriately remedy that violation. *See, e.g.,*

*Lennen v. John Eppler Mach. Works Inc.*, No. CIV.A. 97-2830, 1997 WL 566078, at *3 (E.D.

Pa. Sept. 5, 1997) (holding that the party is "prohibited from using any information relating to

the August 15, 1995 *ex parte* phone call . . . at trial" because permitting a party to use such

evidence would allow a party and its attorney "to benefit by violating the Rules of

Professional Conduct"); *Kligman*, 737 F. Supp. at 325 (precluding defendant from

introducing any evidence obtained as a result of counsel's violation of the Rules of

Professional Conduct); *Caggulia v. Wyeth Labs. Inc., Div. of Am. Home Prods.*, 127 F.R.D.

653, 654-55 (E.D. Pa. 1989) ("We shall, therefore, grant defendant's motion insofar as it

---

[12] Bobrick was unquestionably prejudiced by Mr. Cooper's dishonest and deceitful conduct. SP seeks to use Mr. Cooper's notes and testimony from the July 11, 2013, phone call as proof that Defendant acknowledged that SP manufactured and sold a HDPE NFPA-286 compliant toilet partition and that Bobrick's statements regarding SP's products were made for anticompetitive purposes. Both alleged admissions are key disputes in this litigation. Indeed, SP's claims under the Lanham Act, common law unfair competition, and commercial disparagement all require SP to demonstrate the falsity of the alleged statement. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1395 188 L.Ed.2d 392 (2014). SP "bears the burden of showing that a challenged advertisement is false or misleading, not merely that it is unsubstantiated by acceptable tests or other proof." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharma Co.*, 290 F.3d 578, 589 (3d Cir. 2002) (internal citation and quotation marks omitted). Use of these alleged admissions, which were obtained in violation of Rule 8.4(c), go to the very heart of SP's claims against Bobrick and therefore are highly prejudicial to Bobrick.

pertains to prohibiting plaintiff's use at trial of any statement, information or evidence obtained or received" in violation of the Rules of Professional Conduct).

The totality of the circumstances lead the Court to conclude that an appropriate remedy for Mr. Cooper's violation of Rule 8.4(c) is to enter an order precluding SP from relying on or using Mr. Cooper notes generated as a result of the July 11, 2013 call. The Court will further order that Mr. Cooper shall be precluded from offering any testimony concerning or referencing the July 11, 2013, telephone call or Mr. Louchheim's alleged "admissions" during the call that SP sells NFPA-286 compliant toilet partitions or that Bobrick's statements regarding SP's products were made for anticompetitive purposes. The Court finds that this sanction is narrowly tailored to address the harm caused by Mr. Cooper's ethical violation. A lesser sanction, such as a reprimand or fine, would be insufficient to remedy Mr. Cooper's conduct which has conferred a litigation benefit on SP and resulted in prejudice to Bobrick. Neither a fine nor reprimand would place the parties in the same position they occupied prior to Mr. Cooper's misconduct.

In addition, the Court, at this time, denies Bobrick's request to order Plaintiff to submit certain purportedly privileged communications for *in camera* inspection. Following the deposition of Mr. Wharton Bobrick may, if appropriate, renew its request if it has developed sufficient facts suggesting the applicability of the crime-fraud exception to the attorney-client privilege. On the current record, however, the Court concludes there are insufficient facts

demonstrating the applicability of the crime-fraud exception to the attorney-client privilege to warrant *in camera* review.[13]

In sum, the Court concludes that Mr. Cooper violated Rule 8.4(c)'s prohibition on attorney dishonesty and deceit and that precluding SP's use of the evidence obtained in violation of the Rule is an appropriate sanction. The Court makes no finding as to whether Mr. Cooper violated Pennsylvania Bar Rule 302 or Rules 4.2 and 8.4(a) of the Pennsylvania Rules of Professional Responsibility. However, because the "Court has an independent obligation to report any violations of the Rules of Professional Conduct once it learns of them," *McDevitt v. Verizon Servs. Corp.*, Civil Action No. 14-4125, 2016 WL 1056702, at *1 n.2 (E.D. Pa. Mar. 17, 2016) (slip copy), it will refer these matters to the appropriate Pennsylvania disciplinary authorities. The Court therefore is directing the Clerk of Court to forward a copy of this memorandum and accompanying order to the Disciplinary Board of the Supreme Court of Pennsylvania for its investigation and consideration of the propriety of

---

[13] "In this circuit, the crime-fraud exception to the attorney-client privilege applies where there is a reasonable basis to suspect that the *privilege holder* was committing or intending to commit a crime or fraud and that the attorney-client communication or attorney work product were used in furtherance of the alleged crime or fraud." *In re Grand Jury Subpoena*, 745 F.3d 681, 690 (3d Cir. 2014) (emphasis added) (internal citation and quotation marks omitted). "Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person . . . that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *United States v. Zolin*, 491 U.S. 554, 572, 109 S.Ct. 2619, 2631, 105 L.Ed.2d 469 (1989) (internal citation and quotation marks omitted). "Once the showing is made, the decision whether to engage in *in camera* review rests in the sound discretion of the district court." *Id.* The Supreme Court further recognized that "[t]he district court is also free to defer its *in camera* review if it concludes that additional evidence in support of the crime-fraud exception may be available that is *not* allegedly privileged, and that production of the additional evidence will not unduly disrupt or delay the proceedings." *Id.*

Mr. Cooper's conduct.[14]  *See* Pa. R.D.E. 205; *see also Baylson v. Disciplinary Bd. of Supreme Court of Pennsylvania*, 764 F. Supp. 329, 332 (E.D. Pa. 1991) (noting that the Board "is charged with administering the state's Rules of Professional Conduct").

## B. Bobrick's Challenge to SP's Relevancy Redactions

The second discovery dispute pending before the Court concerns SP's unilateral redactions of six categories of information that it has determined to be irrelevant to any issue in the litigation.[15] (Doc. 142, at 3-4).  According to Bobrick, the Federal Rules of Civil Procedure forbid a party from redacting portions of an otherwise responsive document based on the producing party's determination of what is and is not relevant.  In addition, Bobrick maintains that each of the six categories of information redacted by SP as irrelevant are, in fact, relevant to issues in the litigation.  Bobrick thus requests an order requiring SP to "(1) produce unredacted versions of all documents SP has redacted to date based on relevance, (2) refrain from making any further relevance redactions absent order from the court, and (3) consistent with the current language of Federal Rule of Civil Procedure 34,

---

[14] "As a creation of the Supreme Court of Pennsylvania, the Disciplinary Board has the power and the duty to investigate the conduct of an attorney who is subject to the Pennsylvania Rules of Disciplinary Enforcement.  It may initiate such an investigation *sua sponte* or upon a complaint by any person." *In re Baillie*, 368 B.R. 458, 466-67 (Bankr. W.D. Pa. 2007).  "The Disciplinary Board investigates acts or omissions by an attorney that may violate the Pennsylvania Rules of Disciplinary Enforcement and determines whether sanctions against the attorney are warranted." *Id.* at 467.

[15] The six categories are: "(1) manufacturing costs and profit margins; (2) HDPE materials not subjected to fire testing under the NFPA 286 Room Corner test; (3) SP's Non-Fire testing of HDPE toilet partitions; (4) SP's marketing and product development strategies; (5) detailed internal information regarding the sale of SP's HDPE toilet partitions; and (6) SP's "manufacturing equipment and processes." (Doc. 142, at 11-15).

25

disclose whether it has silently withheld documents in their entirety based on its objections including relevance objections." (Id.).

As an initial matter, SP did not and has not submitted unredacted copies of the documents at issue for the Court's consideration. As the "party refusing to provide discovery" it was SP's burden to demonstrate how the information redacted is not relevant. See McBride v. Infinity Prop. & Cas. Corp., No. 3:13-CV-1737, 2014 WL 1218912, at *2 (M.D. Pa. Mar. 24, 2014) ("The party objecting to discovery must show that the requested materials do not fall within the broad scope of relevance . . . or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.") (internal citation and quotation marks omitted). With the limited exception of information concerning its lockers, SP has failed to demonstrate how the categories of information it has redacted are irrelevant to any issue in this litigation.[16] Moreover, Bobrick has set forth a variety of plausible arguments demonstrating the relevancy of the information SP has redacted. (Doc. 161, at 9-16). The potential harm resulting from SP's production of this information is minimal. As Plaintiff recognized at oral argument, the Protective Order currently in place in this litigation prohibits Bobrick from using SP's Confidential or AEO documents and information to its competitive advantage, see May 20, 2016, Hr'g Tr. at 59:20-60:6, which the Court believes makes SP's

---

[16] Bobrick has not challenged SP's redactions concerning information about its lockers. See (Doc. 142, at 4) ("Nevertheless, Bobrick is not at the time asking the Court to rule on that issue. Rather, Bobrick is only asking the Court to rule that SP's many other redactions for relevance, which clearly or admittedly have nothing to do with lockers, are impermissible.").

wholesale and unilateral relevancy redactions particularly unwarranted under the circumstances. Therefore, with the limited exception of redactions concerning SP's lockers, which the Court has already determined to be irrelevant to any issue in this litigation, (Doc. 55), SP shall "(1) produce unredacted versions of all documents SP has redacted to date based on relevance" and "(2) refrain from making any further relevance redactions absent order from the court." (Doc. 142, at 3-4). Going forward, no party may redact information it deems irrelevant without first obtaining leave from the Court.[17]

The Court next turns to Bobrick's request for an order directing SP to, consistent with the current language of Federal Rule of Civil Procedure 34, "disclose whether it has silently withheld documents in their entirety based on its objections including relevance objections."[18] (Doc. 142, at 3-4). The 2015 amendments to Rule 34 now require an objecting party to "state whether any responsive materials are being withheld on the basis of

---

[17] *See, e.g., Delaware Display Grp. LLC v. Lenovo Grp. Ltd.*, Civil Action Nos. 13-2108-RGA, 13-2109-RGA, 13-2112-RGA, 2016 WL 720977, at *6 (D. Del. Feb. 23, 2016) (slip copy) ("Plaintiffs instead argue that the information . . . is 'irrelevant and highly sensitive.' This may be true, but such a fact does not entitle Plaintiffs to redact information, which they deem irrelevant, from otherwise relevant documents . . . a party may not redact information that it unilaterally deems sensitive, embarrassing, or irrelevant") (citing Fed. R. Civ. P. 34(b)(2)(E)); *Procter & Gamble Co. v. Be Well Mktg., Inc.*, Misc. Case No. 12-MC-392, 2013 WL 152801, at *2 (M.D. Pa. Jan. 15, 2013) (rejecting party's redactions for relevance after concluding "[t]he redacted information is relevant and may lead to the discovery of admissible evidence); *Orion Power Midwest, L.P. v. Am. Coal Sales Co.*, No. 2:05-cv-555, 2008 WL 4462301, at **1-2 (W.D. Pa. Sept. 30, 2008) (rejecting party's unilateral redaction of information based on its determination that such information was irrelevant).

[18] "Amendments to the Federal Rules of Civil Procedure apply retroactively unless '(A) the Supreme Court specifies otherwise; or (B) the court determines that applying them in a particular action would be infeasible or work an injustice.'" *Langbord v. U.S. Dept. of the Treasury*, 749 F. Supp. 2d 268, 272 (E.D. Pa. 2010) (quoting Fed.R.Civ.P. 86(a)(2)). The Supreme Court has not spoken on the retroactivity of Rule 34, and the Court does not conclude that applying amended Rule 34 would be infeasible or work an injustice in the action.

that objection." *R. Fellen, Inc. v. Rehabcare Grp., Inc.*, Case No. 1:14-CV-2081-DAD-SAS, 2016 WL 1224064, at *2 (E.D. Cal. Mar. 29, 2016) (finding that "in compliance with the amended Federal Rules of Civil Procedure and their stated purpose, the Court will compel Defendant to serve amended responses in compliance with Rule 34(b)(2)(C)"). The 2015 amendments were "aimed at reducing the potential to impose unreasonable burdens by objections to requests to produce." Fed. R. Civ. P. 34 advisory comm. notes. Specifically, Rule 34(b)(2)(C) was amended:

> to provide that an objection to a Rule 34 request must state whether anything is being withheld on the basis of the objection. This amendment should end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections. The producing party does not need to provide a detailed description or log of all documents withheld, but does need to alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection. An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been 'withheld.'

*Id.*

Consistent with the purposes behind the 2015 amendments to Rule 34, SP shall provide amended responses to Bobrick in compliance with Rule 34(b)(2)(C) and disclose whether it has silently withheld documents in their entirety based on its objections including relevance objections.[19]

---

[19] In *Jiang v. Porter*, Case No. 4:15-cv-1008 (CEJ), 2016 WL 3015163, at *1 (E.D. Mo. May 26, 2016) (slip copy), the Plaintiff sought an order requiring the Defendant's compliance with Rule 34(b)(2)(C). The Defendant objected, arguing that "there should be no need to specify whether she has possession of such documents" withheld on "relevance grounds." *Id.* at *2. The Court disagreed, concluding that "Rule 34(b)(2)(C) does not distinguish between types of objections or provide for implied assertions. The Court

## C. The Challenged Designations

The Court will next address Bobrick's three challenges to certain of SP's designations under the Protective Order, (Docs. 101, 109, 115; 123-124; 141, 149-151, 156-159), as well as SP's challenge to Bobrick's AEO designations.[20] (Doc. 186).

Under the Protective Order, a producing party may designate certain documents and information as "Confidential" when the information sought to be designated is "comprised of technical, financial, customer, or other commercial information which is not publicly known and is maintained by its possessors in confidence, or other information required by law or agreement to be kept confidential." (Doc. 60 at ¶ 2). For documents and information "comprised of trade secrets, confidential research and development, or other confidential technical information" the producing party may designate such documents and information as AEO. (*Id.*). Once a designation has been challenged, the party seeking to uphold its designation must demonstrate "good cause." That is, the producing party must demonstrate to the Court's satisfaction that de-designation "will result in a clearly defined, specific and serious injury." *Shingara v. Skiles*, 420 F.3d 301, 306 (3d Cir. 2005) (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786-87 (3d Cir. 1994)). "Broad allegations of harm are not sufficient to establish good cause." *Id.*

---

will therefore order defendant to comply with Rule 34(b)(2)(C) and affirmatively state whether any responsive materials are being withheld on the basis of objections," including relevancy objections. *Id.*

[20] SP's challenge to Bobrick's AEO designations of certain documents and information was not addressed at the May 20, 2016, oral argument.

### i.    Bobrick's Challenge to 557 of SP's Confidential Designations

Turning to the first of the four challenged designations, Bobrick asserts that SP failed to demonstrate "good cause" in connection with 557 "Confidential" designations under the Protective Order, and requests that the Court de-designate these documents. (Docs. 101, 109, 115). As set forth in SP's August 7, 2015, letter to the Court, (Doc. 109), the documents and information at issue "concern an extensive and multifaceted research and development process executed by SP to ensure that its HDPE toilet partitions comply with NFPA 286." (Doc. 109, at 2). "SP implemented this process with the assistance of various technical consultants and fire performance experts, as well as two testing laboratories, all of whom provided their services pursuant to a non-disclosure or confidentiality agreement." (*Id.*). The information designated Confidential includes raw test data, test notes, draft test notes, photographs, videos, quotations and invoices and correspondences regarding fire performance testing. (*Id.*).

Based on the descriptions set forth above, the Court concludes that SP has demonstrated good cause in support of its Confidential designations. The documents and information at issue concern "technical, financial, customer, or other commercial information which is not publicly known and is maintained by its possessor in confidence" and is "required by . . . agreement to be kept confidential." (Doc. 60 at ¶ 2(a)). Moreover, the Court credits SP's arguments that permitting de-designation would result in a specific and concrete harm, because de-designation "will permit SP's competitors in the toilet partition

industry—including several who sell HDPE toilet partitions—to learn how SP developed its NFPA 286-compliant partitions; what tests it performed; how much these tests costs; and the test results." (Doc. 109, at 6). Accordingly, Bobrick's request to de-designate the 557 documents at issue in this dispute is denied.

### ii.    Bobrick's Challenges to SP's AEO Designations

Bobrick next requests that the Court de-designate two categories of information SP has designated as AEO: "(1) specific pricing information set forth in quotations and invoices for actual orders for NFPA 286-compliant toilet partitions; and (2) information disclosing the manner in which the NFPA 286-compliant partitions that SP currently manufactures and sells are made." (Docs. 123-124). The Court declines Bobrick's requests to de-designate this information.

SP asserts that its pricing information is properly designated as AEO because it qualifies as a trade secret. Under Pennsylvania Uniform Trade Secrets Act, a "trade secret" is defined as "[i]nformation, including a formula, drawing, pattern, compilation including a customer list, program, device, method, technique or process that" both:

(1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

12 Pa. Con. Stat. § 5302.  To determine whether SP's pricing information qualifies as a trade secret, courts should "consider the extent to which the information is known outside of

the owner's business, the extent to which it is known by employees and others involved in the owner's business, the value of the information to the owner and his competitors, the amount of effort or money expended in developing the information, and the ease or difficulty with which the information can be acquired or duplicated by others." *Latuszewski v. Valic Fin. Advisors, Inc.* Civil Action No. 03-0540, 2007 WL 4462739, at *17 (W.D. Pa. Dec. 19, 2007) (citing *S.I. Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1256 (3d Cir. 1985)). Although it is undisputed that certain component parts of SP's pricing information would not qualify as trade secret, trade-secret protection may nevertheless be warranted for compilations of this information. *See Mettler-Toledo, Inc. v. Acker*, 908 F. Supp. 240, 247 (M.D. Pa. 1995) ("The fact that individual pieces of the information claimed to be confidential are available to the general public does not defeat a claim of confidentiality if the value of the information stems from its compilation or collection in a single place or a particular form which is of value.").

Applying these rules, "[c]ourts have found 'trade secrets' to include 'certain business and marketing information including the costing and pricing information of an employer's product or services, an employer's business plans, marketing strategies, and financial projections and the terms of specific customer accounts including contract expiration dates and revenues generated.'" *Youtie v. Macy's Retail Holding, Inc.*, 653 F. Supp. 2d 612, 621 (E.D. Pa. Sept. 10, 2009) (quoting *BIEC Int'l Inc. v. Global Steel Servs. Ltd.*, 791 F. Supp. 489, 545 (E.D. Pa. 1992)). Although "[c]ustomer lists and confidential business information

cannot be trade secrets if they are easily or readily obtained, without great difficulty" it is well settled that pricing and customer information can qualify as a "compilation of data that has independent economic value" and thus "can be protected as a trade secret," even if the component parts may not. *Id.* (internal citation and quotation marks omitted).

Here, SP has demonstrated that the compilations of its pricing information qualifies for trade secret protection and therefore has established "good cause" to support its AEO designations. SP has identified specific, concrete harms that would result from the Court's de-designation, and Bobrick has failed to articulate a compelling rationale in support of its need to widely disseminate this information. Only SP itself "maintains information regarding pricing for its entire line of NFPA 286-compliant partitions" and it would be "incredibly difficult for Bobrick to compile or recreate this information on its own, as Bobrick would necessarily have to request that information from more than 400 Scranton Products customers." (Doc. 185, at 4). Moreover, this information no doubt has value to Plaintiffs and SP has taken reasonable steps to protect this information from disclosure.[21]   *See Latuszewski*, 2007 WL 4462739, at *17 (recognizing that "customer information is of significant value" to the party asserting trade secret protection and "is the foundation of their business"). Nor is there any doubt that "this information would have been valuable to a

---

[21] As the Court in *Latuszewski* noted, "claims that the information cannot be trade secrets because it is known to the customers themselves is [] unavailing." *Latuszewski*, 2007 WL 4462739, at *17. "The fact that the same information can be gathered on any one customer by talking with the customer herself is irrelevant." *Id.* The value in SP's "customer information is in the compilation, categorization, and organization of information" regarding each and every NFPA-286 compliant toilet partition it has ever sold. *Id.*

competitor or potential competitor" of SP, like Defendant Bobrick. *Id.* at 622. De-designation of this information would enable all Bobrick employees to determine SP's manufacturing costs, material acquisition costs, profit margins, and other highly confidential pricing and business information which Bobrick could use to gain a competitive advantage over SP. In addition, SP asserts that it spent a great deal of time and money developing this information, and that such information could not easily be duplicated by its competitors and is of "paramount value" to its business. *Id.* at *17. SP has accordingly demonstrated that the information at issue qualifies as a trade secret and thus has established "good cause" to support its AEO designations by articulating concrete and specific harms that would result from de-designation. Bobrick's request to de-designate this information as AEO is thus denied.

The Court also concludes that SP's AEO designation of the four words at issue in Bobrick's motion are properly classified as AEO under the Protective Order and therefore denies Bobrick's request to de-designate this information. (Docs. 123, 124; 141, 149-151, 156-159). SP has demonstrated good cause that these four words, which relate to the design, manufacturing, composition, and construction of SP's HDPE toilet partitions, qualifies as information related to "confidential research and development, or other confidential technical information" such that its designation as AEO is proper under paragraph 2(a) of Protective Order. (Doc. 60).

34

### iii.    SP's Challenge to Bobrick's AEO Designations

Next, the Court will address SP's challenge to Bobrick's designation of certain documents and information as AEO. (Doc. 186). Specifically, Bobrick seeks to uphold its AEO designations of the individuals it engaged in order to obtain samples of SP's HDPE toilet partitions sold on the marketplace for testing. (*Id.* at 2). The Court agrees with Bobrick that such information is properly designated as AEO. As set forth in Bobrick's letter to the Court, Bobrick and these individuals entered into an agreement whereby Bobrick would protect the identities of the individuals from disclosure. (*Id.*). The "purpose of the designations was to protect the persons and entities who had provided material to Bobrick from retaliation by SP as punishment for their perceived cooperation with Bobrick in this lawsuit." (*Id.* at 4). Because this information falls within the scope of paragraph 2(a) of the Protective Order as information concerning "confidential research and development," and Bobrick has identified specific and concrete harms that would result from de-designation, the Court concludes that good cause exists for the designation. Accordingly, SP's request to de-designate this information is denied.

### D.  Interpreting The Modified Stipulated Protective Order

Finally, the Court will briefly discuss an issue with respect to interpretation of the Protective Order, (Doc. 60), that counsel for Defendant raised at the May 20, 2016, oral argument. Paragraph 3(d) of the Protective Order concerns the use of Confidential and AEO information disclosed at a deposition and provides that:

35

A party may designate information disclosed at a deposition as Confidential or Attorneys Eyes Only by requesting the reporter to so designate the transcript or any portion thereof at the time of the deposition, or by designating in writing to the other parties and the court reporter, some portion or all of the transcript as Confidential within five (5) days after the deposition transcript is received. Upon designation at the time of the deposition of information disclosed or inquired about during the deposition as Attorneys' Eyes Only, an individual attending the deposition who is not identified in Paragraph 9 of this Protective Order as an individual to whom the receiving party may disclose Attorneys' Eyes Only information shall be required to leave the deposition during any examination that concerns information designated as Attorneys' Eyes Only, unless otherwise ordered by the Court during the deposition. *In accordance with Paragraph 9(d) of this Protective Order, a receiving party may designate, in advance, one in-house counsel or other individual to be present during the disclosure of Attorneys' Eyes Only information at each deposition; however, the receiving party need not designate the same in-house counsel or individual for each deposition.*

(Doc. 60 at ¶ 3(d)) (emphasis added).  Paragraph 9(d), in turn, provides that AEO information "may be disclosed by the receiving party only to the following individuals . . . (d) one (1) in-house counsel for the receiving party or (1) other individual designated by the receiving party in advance of the disclosure." (*Id.* at ¶ 9(d)).  The meaning of these provisions was discussed at length at oral argument. *See* May 20, 2016, Hr'g Tr. at 81:18-91:16.

SP has designated Mr. Cooper as its recipient of AEO information under paragraph 9(d), whereas Bobrick has designated Mr. Gettelman.  Bobrick, however, argues that under paragraph 3(d) Mr. Louchheim, or another individual, may be permitted to be its designee in certain circumstances, such as the forthcoming deposition of Mr. Wharton.  SP disputes this position, arguing that since Mr. Gettelman has received all the AEO information only he may

attend the deposition and review and receive AEO information. The Court must look to the plain language of the Protective Order to determine its meaning.

"Pennsylvania follows the plain meaning rule of contract interpretation, such that when a written contract is clear and unequivocal, its meaning must be determined by its contents alone." *Sloan & Co. v. Liberty Mutual Ins. Co.*, 653 F.3d 175, 180 (3d Cir. 2011) (internal citation and quotation marks omitted). "The court must interpret the contract in a manner that gives reasonable meaning to all of its provisions and gives effect to all provisions of the contract." *Grove v. Johnson Controls, Inc.*, Civil No. 1:12-CV-02622, 2016 WL 1271328, at *15 (M.D. Pa. Mar. 31, 2016) (slip copy). "Contract provisions are to be interpreted so as to give each provision meaning, rather than rendering some provisions superfluous." *Carter v. Exxon Co. USA, a Div. of Exxon Corp.*, 177 F.3d 197, 206 (3d Cir. 1999).

Here, the Court concludes that the plain language of the Protective Order provides that *"the receiving party need not designate the same in-house counsel or individual for each deposition."* (Doc. 60 at ¶ 3(d)). SP's proposed interpretation of paragraph 3(d) of the Protective Order would render this clause utterly superfluous. Accordingly, because each "receiving party need not designate the same . . . individual for each deposition" Bobrick may designate Mr. Louchheim to attend Mr. Wharton's deposition. However, it is equally true that paragraph 9(d) of the Protective Order permits *only* one designee to receive and review AEO information. Accordingly, both Mr. Louchheim and Mr. Gettlemen may not review the same AEO information. It shall be the responsibility of counsel to ensure that,

should Mr. Louchheim be Bobrick's designee at Mr. Wharton's deposition, or any other deposition that any AEO information disclosed at such deposition must not have been reviewed by Mr. Gettelman and vice versa.

## III.   CONCLUSION

For the foregoing reasons, the Court will grant in part Defendant's motion requesting "appropriate relief in connection with the unauthorized practice of law and unethical conduct of Mr. Brian Cooper" (Docs. 138-140) as set forth in the order that follows. Defendant's motion concerning SP's "improper redaction of relevant documents," (Docs. 142, 152, 161) is granted. The Court denies the parties requests to de-designate certain documents and information as "Confidential" and/or "Attorneys Eyes Only." (Docs. 101, 109, 115; 123-124; 141, 149-151, 156-159; 186). A separate order follows.

Robert D. Mariani
United States District Judge