# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCRANTON PRODUCTS, INC., | : |
| Plaintiff, | : |
| v. | : 3:14-CV-00853 |
| | : (JUDGE MARIANI) |
| BOBRICK WASHROOM EQUIPMENT, INC., | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

On June 3, 2016, the Court issued an order granting Defendant Bobrick Washroom Equipment's ("Bobrick") motion requesting "appropriate relief in connection with the unauthorized practice of law and unethical conduct of Mr. Brian Cooper," (Doc. 138), Plaintiff Scranton Product's ("SP") in-house counsel. (Doc. 193). The Order prohibits Plaintiff SP from "using or relying on Mr. Cooper's notes generated as a result of the July 11, 2013, call in connection with any motion or at trial." (Doc. 193, at 2). The Order also precludes Mr. Cooper "from offering any testimony concerning or referencing the July 11, 2013, telephone call or any of Mr. Louchheim's alleged admission or statements made during that call." (*Id.*). The Court ordered the parties to take the deposition of SP's President, Don Wharton, and further directed the parties "to submit supplemental briefing addressing the propriety of Mr. Cooper's conduct in light of Mr. Wharton's testimony, and whether the crime-fraud exception to the attorney-client privilege applies under the

circumstances." (*Id.*). Thereafter, the parties submitted supplemental briefing. (Docs. 194-195).

## II. ANALYSIS

### A. The June 3, 2016 Order

The Court has extensively discussed the background of the June 3, 2016, Order in a memorandum opinion and need not repeat it here. *See Scranton Prods. Inc. v. Bobrick Washroom Equip., Inc.* __ F. Supp. 3d __, 2016 WL 3418535 (M.D. Pa. June 3, 2016). The Court will first address Plaintiff SP's supplemental submission. (Doc. 194).

#### i. The Sanction Imposed

Based on Mr. Wharton's testimony, whose recollection of the events, as SP notes, "was markedly different than Mr. Cooper's recollection of that same call," (Doc. 194, at 2), SP asks to the Court to reconsider the sanction imposed in the June 3 Order. Specifically, SP asserts that:

> Contrary to Mr. Cooper's recollection of the events, Mr. Wharton testified that the call occurred not in Mr. Cooper's office on Keyser Avenue in Scranton, but rather in Mr. Wharton's office on Corey Street, which is a separate location. Mr. Wharton explained multiple times that the call was *not* on the speakerphone, as Mr. Cooper had testified. To the contrary, Mr. Wharton testified that he was 'positive' that he participated in the call on a hand held phone. Mr. Wharton testified that Mr. Cooper was present to take notes of what he, Mr. Wharton said, **and not of what Mr. Louchheim said**. Mr. Wharton also took notes of the call, including what Mr. Louchheim said. When the call was over, Mr. Wharton relayed his notes to Mr. Cooper, and Mr. Cooper used both his notes of what Mr. Wharton said and Mr. Wharton's notes and memory of what Mr. Louchheim said to prepare the typed notes that were submitted to the Court at the May 20, 2016 argument. Mr. Wharton further testified that he 'regurgitated' to Mr. Cooper his recollection of what Mr. Louchheim said on that July 11, 2013 [call]. Mr. Wharton

2

> testified that because Mr. Louchheim was not on speakerphone, he did not expect that Mr. Cooper could have heard what Mr. Louchheim stated. Mr. Wharton's purpose for having Mr. Cooper in the room during the call 'was to make sure I didn't say anything inaccurately.' Mr. Wharton's purpose for preparing the typed notes was to have a record of the call to share with the CEO of CPG, Scranton Products' parent company, and so that Mr. Wharton would have a record of what he told Mr. Louchheim. During the call, Mr. Cooper sat far away from Mr. Wharton. Mr. Cooper did not pass him notes, or make any hand gestures or signs, but rather was sitting silently and taking notes of what Mr. Wharton said. At no time did Mr. Wharton place the call on mute to consult with Mr. Cooper.

(*Id.* at 3-4).

Upon review Mr. Wharton's testimony, the Court finds that the testimony of Mr. Wharton, SP's President, and Mr. Cooper, SP's in-house counsel, are diametrically opposed on key facts that the Court found relevant to the June 3 Order. For example, unlike Mr. Cooper, Mr. Wharton testified that Mr. Cooper was not, in fact, listening in on the conversation on speakerphone and only taking notes of what Mr. Wharton, not Mr. Louchheim, said on that call. (Doc. 194-1 at 31). However, although Mr. Wharton testified that the call did not take place on speakerphone, he also testified that he did not "know what [Mr. Cooper] heard or didn't hear" on the telephone call with Mr. Louchheim, and therefore it is entirely plausible that Mr. Cooper—consistent with his own testimony—was listening in on the call without informing Mr. Louchheim of his presence. (*Id.* at 33). Moreover, when asked if he "knew that Mr. Cooper was also on that call," (*Id.* at 39), Mr. Wharton testified that he did, before attempting to explain that he did not consider Mr. Cooper to be actually present on the telephone call. *Id.* Thus, the Court stands by its reasoning set forth in the June 3, 2016, Order and accompanying memorandum opinion and finds that the sanction imposed was

3

entirely appropriate under the circumstances.[1] Accordingly, the Court will deny SP's request to reconsider the sanction imposed in the June 3, 2016, Order as wholly without merit. The Court further notes that the sanction in place prohibits the use of Mr. Cooper's notes and testimony concerning the July 11, 2013 call. It does not, however, prohibit the use at trial or in connection with any motion any notes taken by Mr. Wharton or his testimony regarding the call at issue.

### ii.   The Crime-Fraud Exception to the Attorney-Client Privilege

In the Court's June 3, 2016, memorandum opinion the Court wrote that:

> In addition, the Court, at this time, denies Bobrick's request to order Plaintiff to submit certain purportedly privileged communications for *in camera* inspection. Following the deposition of Mr. Wharton Bobrick may, if appropriate, renew its request if it has developed sufficient facts suggesting the applicability of the crime-fraud exception to the attorney-client privilege. On the current record, however, the Court concludes there are insufficient facts demonstrating the applicability of the crime-fraud exception to the attorney-client privilege to warrant *in camera* review.

*Scranton Prods.*, 2016 WL 3418535, at *10. Following Mr. Wharton's deposition the parties submitted additional briefing on this subject.

---

[1] "Although the Court stated that Mr. Cooper's answers were 'evasive,' Scranton Products submits that it is just as likely, if not more likely, that Mr. Cooper did not have as clear a recollection of the July 11, 2013 call as did Mr. Wharton." (Doc. 194, at 9-10).

The Court finds it is equally plausible that Mr. Wharton's testimony was given after imposition of the sanction and with the awareness that Court found Mr. Cooper's version of the facts surrounding the July 11, 2013, call to constitute sanctionable conduct. Indeed, Mr. Wharton testified that he read and reviewed the Court's memorandum opinion imposing the sanction based on Mr. Cooper's conduct during the July 11, 2013 telephone call in preparation for his deposition. (Doc. 194-1, at 5). In addition, a review of Mr. Wharton's deposition transcript reveals multiple instances where he could not recall certain information, *see id.* at 7, 9, 10-12, 15, 18-31, 33-34, 36-37, 39, 41-48, 53, yet he could often recall the specifics of the July 11, 2013, and in particular, the facts and circumstances which led to the Court's imposition of a sanction with clarity and precision which stood in stark contrast to Mr. Cooper's recollection of the same events.

4

According to SP, "Mr. Wharton's deposition further demonstrates that there is a complete absence of any intent by Scranton Products to commit either a fraud or crime. . . . As a result, Scranton Products submits that Bobrick has not made any showing, let alone a threshold one, to warrant this Court reviewing any attorney-client privileged documents *in camera*." (Doc. 194, at 9). Bobrick, in contrast, notes that in light of Mr. Wharton's testimony it is apparent that these documents have been "improperly withheld based on attorney-client privilege." (Doc. 195, at 2). Alternatively, Bobrick maintains that "the Court should review, *in camera*, the documents at issue to determine whether to apply the 'crime-fraud' exception—which is not limited to 'crime' and 'fraud' but includes other conduct such as the ethical violations and litigation misconduct at issue here." (*Id.* at 3). The Court will first address whether the crime-fraud exception to the attorney-client privilege applies under the circumstances.

"In this circuit, the crime-fraud exception to the attorney-client privilege applies where there is a reasonable basis to suspect that the *privilege holder* was committing or intending to commit a crime or fraud and that the attorney-client communication or attorney work product were used in furtherance of the alleged crime or fraud." *In re Grand Jury Subpoena*, 745 F.3d 681, 690 (3d Cir. 2014) (emphasis added) (internal citation and quotation marks omitted). "For the crime-fraud exception to apply, the client must be committing or intending to commit a crime or fraud at the time he or she consults the attorney." *Id.* at 691 (internal citation and quotation marks omitted). "Before engaging in *in*

*camera* review to determine the applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person . . . that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *United States v. Zolin*, 491 U.S. 554, 572, 109 S.Ct. 2619, 2631, 105 L.Ed.2d 469 (1989) (internal citation and quotation marks omitted). "Once the showing is made, the decision whether to engage in *in camera* review rests in the sound discretion of the district court." *Id.*

In the June 3, 2016, memorandum opinion this Court found that "[o]n the current record . . . there are insufficient facts demonstrating the applicability of the crime-fraud exception to the attorney-client privilege to warrant *in camera* review." *Scranton Prods.*, 2016 WL 3418535, at *10. Upon review of the parties' submissions, the Court again finds that there is no reasonable factual basis to conclude that review of the e-mails in question may reveal evidence to establish that the crime-fraud exception applies. Specifically, Bobrick has identified no facts from which the Court can conclude that SP was committing, or intending to commit, a crime and/or fraud. Nor does the Court agree with Bobrick that the ethical violation committed by Mr. Cooper is sufficient to establish that the communications leading up to the violation lose their purportedly privileged status because they were made in

furtherance of a crime and/or fraud.[2] Accordingly, the Court concludes that the crime-fraud exception to the attorney-client privilege does not apply under the circumstances.

### B. Bobrick's Request For *In Camera* Review of Certain Documents

Having concluded that the crime-fraud exception to the attorney-client privilege does not apply to the facts on hand, the Court will now address a more basic proposition: whether the documents at issue were properly withheld on the basis of the attorney-client privilege in the first instance. According to Bobrick:

> Foremost, according to Wharton's June 10, 2016 deposition testimony, his communications with in-house counsel Brian Cooper leading up to the Call do not contain privileged information. It is SP's burden to demonstrate that documents withheld for privilege contain communications made for the purpose of obtaining legal advice. *See CSC Assoc. Inc. v. Altman A.M.M Inc.*, 1994 WL 176898, at *2 (E.D. Pa. May 9, 1994) (Rendell, J.) (withholding party must "demonstrate that the privilege has been properly invoked"). Wharton testified unequivocally that he did not seek *any* legal advice from Cooper or outside counsel Buchanan Ingersoll in preparation for the call, since it was intended to be only a business discussion between executives. Ex. 2 at 74:6-75:16; 81:17-82:14; 84:7-85:20; 108:15-109:2. Wharton also testified that the documents at issue that he remembered did not request or provide legal advice, and that he prepared the withheld 'talking points' himself. *See id.* at 84:7-85:20, 108:15-21. Accordingly, SP cannot meet its burden and the documents must be produced.

(Doc. 195, at 2-3).

The attorney-client privilege "applies to any communication that satisfies the following elements: it must be '(1) a communication (2) made between [the client and the attorney or

---

[2] Notably, although Bobrick maintains that the crime-fraud exception "is not limited to 'crime' and 'fraud,' but includes other conduct such as the ethical violations and litigation misconduct at issue here," (Doc. 195, at 3), it fails to direct the Court to any case law holding that a violation of the Rules of Professional Conduct, such as that committed here by Mr. Cooper, has resulted in the application of the crime-fraud exception to the attorney-client privilege.

7

his agents] (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.'" *In re Teleglobe Commc'ns Grp.*, 493 F.3d 345, 359 (3d Cir. 2007) (quoting Restatement (Third) of the Law Governing Lawyers § 68 (2000)). "Because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991). "The party claiming that evidence is subject to the attorney-client privilege bears the burden of establishing the privilege." *Patel v. Kensol-Franklin, Inc.*, Civil Action No. 3:14-1439, 2016 WL 1109874, at *3 (M.D. Pa. Mar. 22, 2016) (citing *United States v. Voigt*, 89 F.3d 1050, 1067 n.6 (3d Cir. 1996)).

Upon review of Mr. Wharton's deposition testimony, the Court agrees with Bobrick that Mr. Wharton's testimony establishes that the documents SP has withheld on the basis of the attorney-client privilege appear not to be privileged, as Mr. Wharton testified that the communications at issue were not made "for the purpose of obtaining or providing legal assistance for the client." *In re Teleglobe*, 493 F.3d at 359. Specifically, the relevant portions of Mr. Wharton's deposition testimony are as follows:

> Q: Okay. And I'm just asking for a yes or no answer on this. Did you speak to anyone at the Buchanan law firm about this inquiry from Mr. Gettelman?
>
> A: Not that I remember.
>
> Q: Because we – you know, we have a Privilege Log from counsel. We saw the privileged communications. We did not see any privileged communications around this time period copying anyone from Buchanan on it. So my question is did you forward the e-mail to anybody at Buchanan or have any other e-mails with them about this inquiry from Mr. Gettelman, to the best of your knowledge?

8

A: No, to the best of my knowledge.

Q: *Now, at this point in time, June of 2013 – and we just saw some things earlier, letters, other e-mails Wendy Newton's copied on – any reason why you didn't contact the Buchanan law firm to get their opinion about what you should do about their e-mail?*

A: *No. Again, this was going to be an executive to executive conversation, very professional, very matter of fact, you know, cordial. I didn't need, you know, legal counsel to tell me what to say or give me advice on it.*

Q: *But you did seek out Mr. Cooper's advice about the call, didn't you? He is legal counsel to the company.*

Mr. Webster: Object to form.

A: *I prepared for the call. I did not seek legal counsel.*

Q: *Okay. So you didn't ask for Mr. Cooper's legal opinion about how you should address this inquiry from Mr. Gettelman, did you?*

A: *Correct.*

(Doc. 195-2 at 40-41) (emphasis added).

Q: Okay. All right. So I had asked before whether you had talked to anybody at the Buchanan firm about Mr. Gettelman's initial inquiry. My next question is did you talk to anyone at the Buchanan firm about the talking points or any of the issues leading up to the call?

A: No.

Q: When's the first time you told the Buchanan firm that you had the call?

A: Don't recall.

Q: Again –

A: Some time after, you know.

9

Q: Right.

A: I don't recall exactly.

Q: So my question is at this point Buchanan is representing Scranton Products in this dispute with Bobrick. They're writing memos. They're writing letters. Why wouldn't you talk to your outside counsel before you made this call to Mr. Louchheim or even made the decision of whether you should be calling Mr. Louchheim?

A: I didn't feel I needed advice on that. I made the call as a peer-to-peer relationship.

(*Id.* at 44-45).

Q: This is an e-mail chain July 6th, 2013 between you and Mr. Cooper. Is that right?

A: Correct.

Q: And, again, things are redacted here. Again, going back to your preparation for the deposition, do you remember seeing this e-mail before your deposition?

A: Yes.

Q: And did you see it in un-redacted form?

A: Yes.

Q: Who gave it to you?

A: It's in my – again, it's in my Bobrick folder information.

Q: Okay. And going back to your prior exhibit that we talked about with Leslie Thompson, is that another document you looked at before your deposition today to prepare?

A: Yes.

Q: And having just reviewed it, what was the subject area regarding Bobrick that was being discussed on July 6th, 2013?

A: It was about trying to get the – trying to make the call.

Q: Okay. And reviewing the e-mail, did that help refresh your recollection about the call?

A: No.

Q: Validate your recollection?

A: No.

Q: Confirm your recollection?

A: It didn't have any impact on my recollection of the call or the chain of events.

Q: It was consistent with your recollection?

A: Yes.

Q: **Were you asking Mr. Cooper for legal advice in those e-mails?**

A: **No.**

(*Id.* at 47-48) (emphasis added).

Q: Okay. So the notes aren't providing legal advice to you from Mr. Cooper. The notes are just talking points of things you wanted to cover in the call so you weren't inaccurate, is that right?

Mr. Webster: Object to form.

A: The note – this document was my preparation for the call.

Q: All right. So they're your talking points?

A: It's my preparation for the call.

Q: Would you say that the talking points were prepared by you or Mr. Cooper or both of you?

11

A: They were prepared mostly by me.

(*Id.* at 69-70).

In light of Mr. Wharton's testimony that certain documents SP has withheld on the assertion of privilege were not made for the purpose of requesting or receiving legal advice, the Court will order SP to produce, *in camera*, redacted and unredacted versions of the documents listed in Exhibit 1 to Bobrick's motion in order for the Court to determine whether SP has properly asserted the attorney-client privilege over these documents.[3] *See Holbrook v. Jellen*, Civil Action No. 3:14-cv-0028, 2015 WL 3540774, at *5 (M.D. Pa. June 3, 2015) ("Under our facts, we are unable to make the determination of the applicability of the attorney-client privilege without an *in camera* review of the documents in question."). SP may submit a brief letter, with supporting documentation, identifying why each of the documents at issue is protected from disclosure.

### III. CONCLUSION

For the foregoing reasons, the Court will leave in place the sanction imposed in the June 3, 2016 Order, and direct SP to produce for *in camera* inspection the documents identified in Exhibit 1 to Bobrick's Motion.[4] A separate order follows.

---

[3] Those documents are: CTRL00000211, CTRL00000213, CTRL00000214, CTRL00000215, CTRL00000216, CTRL00000217, CTRL00000219, CTRL00000221, CTRL0000063582-83, CTRL0000063655, CTRL0000063680, CTRL0000063681, CTRL0000063721, SP0016574-75, SP0016644-46, SP0016647-49, SP0016650-52, SP0016653-54, and SP0016655-57. (Doc. 195-1).

[4] Bobrick also asks the Court "in order to deter further misconduct of this type," to impose "a monetary sanction against SP in an amount that the Court deems appropriate." (Doc. 195, at 11). Moreover, Bobrick requests "an order barring Wharton and SP from offering any testimony (including in connection with any

12

*[signature]*

Robert D. Mariani
United States District Judge

---

motion or at trial) concerning or referencing the Call or any of Louchheim's alleged admission or statements during the Call." (*Id.*). The Court sees no reason to impose additional sanctions on SP other than that imposed in the June 3, 2016 Order and, accordingly, will deny Bobrick's requests.