# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BOBRICK WASHROOM EQUIPMENT, INC.** | : <br> : <br> : |
| Plaintiff, | : |
| v. | :    3:14-CV-00853 <br> :    (JUDGE MARIANI) |
| **SCRANTON PRODUCTS, INC.** | : |
| Defendant. | : |

## **MEMORANDUM OPINION**

### I.    **INTRODUCTION**

In the latest dispute between the parties, Plaintiff Bobrick Washroom Equipment, Inc. ("Bobrick") claims that Defendant Scranton Products, Inc. ("Scranton Products") waived its right to designate certain information as attorneys' eyes only ("AEO"). Specifically, Bobrick contends that Scranton Products' failure to timely designate as AEO portions of the deposition transcript of Eric Jungbluth and documents produced by third party Washington Penn Plastics ("WPP") in accordance with the time limitations set forth in the Modified Stipulated Protective Order ("MSPO") prohibits it from now designating this information as AEO. (Doc. 60). Scranton Products, in contrast, asserts that its failure to timely designate was "inadvertent" and therefore it is permitted to designate this information as AEO under the plain language of the MSPO. Alternatively, Scranton Products' asks the Court to exercises its discretion under Federal Rule of Civil Procedure 6(b)(1)(B) and allow it to make untimely designations.

## II. STATEMENT OF FACTS

Two paragraphs of the MSPO are principally at issue in this dispute: paragraphs 3(c) and 4.[1] Paragraph 3(c) provides:

> If any party wishes to designate as Confidential or Attorneys' Eyes Only documents or things produced by a non-party during the course of this litigation within the scope of paragraph 2 above, the designating party shall make such designation by: (i) if the designation sought is Confidential, (A) informing the opposing party in writing as to which specific documents are being designated Confidential and (B) producing to the opposing party true and exact copies of the designated documents bearing the confidentiality marking prescribed by Paragraph 3(a) of this Order; or (ii) if the designation sought is Attorneys' Eyes Only, giving the notice and following the other procedures required by Paragraph 3(b) of this Order. Such Confidential designations shall be completed and Attorneys' Eyes Only notices shall be given within ten (10) calendar days of the designating party's initial receipt of the documents or things produced by the non-party. Subject to the provisions of paragraph 4 relating to inadvertent failure to designate, if no notice of a Confidential or Attorneys' Eyes Only designation of non-party information is given within the time prescribed in this paragraph, the documents and things produced by the non-party will be considered devoid of Confidential and Attorneys' Eyes Only information.

(Doc. 60, at ¶ 3(c)). It is undisputed that Scranton Products did not designate certain information in the documents produced by WPP until sixteen days after receipt of those documents—six days later than permissible under the MSPO. It is also undisputed that

---

[1] The Court has written extensively on the language contained in the MSPO and need not repeat it in detail here. *See, e.g., Bobrick Washroom Equip. v. Scranton Prods., Inc.*, 3:14-CV-00853, 2017 WL 928917 (M.D. Pa. Mar. 8, 2017); *Bobrick Washroom Equip. v. Scranton Prods., Inc.*, 3:14-CV-00853, 2017 WL 841286 (M.D. Pa. Mar. 3, 2017); *Scranton Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 190 F. Supp. 3d 419 (M.D. Pa. 2016).

Scranton Products did not timely designate certain information in the deposition transcript of Eric Jungbluth as AEO.[2]

The MSPO also contains a provision governing inadvertent failures to designate. Paragraph 4 provides:

> The inadvertent failure to designate or withhold any information as Confidential or Attorneys' Eyes Only will not be deemed to waive a later claim as to its confidential or privileged nature, or to stop the producing party from designating such information as Confidential or Attorneys' Eyes Only at a later date in writing and with particularity. The information shall be treated by the receiving party as Confidential or Attorneys' Eyes Only from the time the receiving party is notified in writing of the change in the designation. Notwithstanding the foregoing, a party may not, under this Paragraph 4, (i) newly designate any information as Confidential or Attorneys' Eyes Only or (ii) redesignate any information from Confidential to Attorneys' Eyes Only, at any time later than ten (10) days before the first deposition taken by the opposing party. A party may still make appropriate initial designations of newly-produced information in accordance with the procedures and time limits set forth in Paragraph 3.

(*Id.* at ¶ 4).

According to Bobrick, nothing in the MSPO permits Scranton Products to now attempt to designate certain information contained in the WPP production or Jungbluth deposition as AEO. (Doc. 401). Scranton Products, in contrast, claims that the plain language of the MSPO permits it to designate this information as AEO because its failure to timely designate was "inadvertent." (Doc. 403). The Court held a telephone conference on August 22, 2017 to discuss the parties' respective positions.

---

[2] Under paragraph 3(d) the MSPO, Scranton Products was required to designate information as Confidential or AEO within five (5) days of receipt of Mr. Jungbluth's transcript. Scranton Products failed to do so until seven (7) days after receipt of the transcript.

3

## III. ANALYSIS

At the outset, the Court notes that it rejects Scranton Products' interpretation of the MSPO as set forth in its letter brief and advanced by counsel during the telephone conference. Many of the arguments advanced by Scranton Products are illogical, circular, and, in particular, the Court finds Scranton Products' reliance on the final sentence of paragraph 4 of the MSPO to be misplaced. Nor does the Court find Bobrick's proposed interpretation entirely persuasive. The Court, however, chooses not to make a definitive interpretation of the language at issue in the MSPO. Rather, the Court will address whether Scranton Products' failure to timely designate can be classified as "excusable neglect" within the meaning of Federal Rule of Civil Procedure 6(b)(1)(B).[3]

Where, as here, a party failed to comply with a time limit set forth in a court order, Federal Rule of Civil Procedure 6(b)(1)(B) provides that a Court may, for good cause, extend a deadline "after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "[T]he determination of whether a party's neglect is excusable has been held to be an equitable determination," in which the Court considers "all the relevant circumstances surrounding a party's failure" to timely act. *In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 153 (3d Cir. 2005). To determine whether Scranton Products has demonstrated "excusable neglect" the Court must consider four factors: "the

---

[3] In order to avoid disputes of this kind in the future arising from the circular and inartful language contained in paragraphs 3(c) and 4 of the MSPO, the parties are encouraged to jointly reform this language in the MSPO. Absent the parties' ability to come to a joint agreement on the revised language, the Court will take it upon itself to modify the language of paragraphs 3(c) and 4 of the MSPO—but only if the parties jointly agree to permit the Court to do so.

4

danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 125 (3d Cir. 1999) (citing *Pioneer Inv. Serv. Co. v. Brunswick Assoc. P'Ship*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)). The Court will address each in turn.

First, the Court sees no prejudice whatsoever to Bobrick if Scranton Products were permitted to designate certain information in the WPP production and Jungbluth deposition as AEO. Indeed, Bobrick made no attempt to argue how it is prejudiced by Scranton Products' untimely designation, either in its letter brief or during the telephone conference.[4] In contrast, Scranton Products would no doubt be severely prejudiced. The information it seeks to designate as AEO—the chemical composition of the products it manufactures and pricing information—is the very type of information this Court has repeatedly held to be properly classified as AEO. Without an AEO designation, information regarding Scranton Products' pricing and the chemical composition of the products its manufactures would be available for employees at Bobrick—Scranton Products' principal competitor—to review. The lack of prejudice to Bobrick and the severe prejudice to Scranton Products' weighs in favor of Scranton Products.

---

[4] Scranton Products' failure to timely designate this information as AEO permitted Bobrick to treat the WPP production and Jungbluth deposition as merely Confidential, not AEO. Fortunately, Bobrick has represented that it treated this information as AEO. Had it not done so, the Court's analysis would no doubt be different.

5

Second, the length of the delay also favors Scranton Products. Scranton Products missed the deadline to designate information in the Jungbluth deposition as AEO by a mere two days. It also missed the deadline to designate information in the WPP product by six days. These modest delays had no impact on the proceedings, and Bobrick does not argue to the contrary.

Third, the Court must consider the reasons for the delay. The Court is not at all satisfied with Scranton Products' excuse for its failure to comply with the deadlines set forth in the MSPO. Rather than counsel for Scranton Products taking responsibility for its failures, counsel at Munger, Tolles & Olson LLP (again) casts blame on a docketing clerk in its office.[5] Counsel's excuse for missing the deadline is as follows:

> Our firm's calendaring system for this matter did not automatically include deadlines related to the Protective Order; unlike court deadlines, these need to be entered manually. Unfortunately, and unbeknownst to the attorneys handling the matter, these deadlines did not initially get entered manually into the calendaring system for this case. Typically, these dates would get entered at the time a protective order is negotiated and entered; because our firm did not negotiate the Protective Order, this inadvertently did not occur, and the unique Protective Order deadlines did not get systematically calendared as they would have had we negotiated the Protective Order. The particular deadlines at issue—a 10-calendar-day deadline for designating third-party documents and a 5-calendar-day deadline for designating deposition testimony—have not previously arisen between counsel from our firm and counsel for Bobrick.

(Doc. 404-1, at ¶ 5). This excuse, and the failure of counsel at Munger, Tolles, & Olsen to take responsibility for its actions, is unacceptable. It is simply unfathomable for the nine

---

[5] Counsel for Scranton Products previously missed the deadline to file an answer to Bobrick's complaint. (Doc. 375). There, like here, Scranton Products claimed that "[d]ue to an inadvertent clerical mistake at the law firm representing Defendant, the due date for the responsive pleading was mis-calendared." (Doc. 374, at ¶ 6).

6

lawyers at two firms representing Scranton Products in this matter to take no personal responsibility for ensuring deadlines are complied with and casting blame on a docketing clerk. These failures, though, are failures of counsel—not of Scranton Products itself. Nevertheless, the Court concludes that the third factor weighs in favor of Bobrick.

Fourth, the Court must consider whether Scranton Products and its counsel have acted in good faith. There are no facts indicating that either Scranton Products or its counsel have acted in bad faith. Bobrick did not and does not argue to the contrary. Accordingly, the Court finds this factor favors Scranton Products.

In sum, three of the four factors weigh in favor of Scranton Products leading the Court to conclude that Scranton Products has demonstrated "excusable neglect" warranting a modest extension of the deadlines set forth in the MSPO. The Court reaches this conclusion despite counsel for Scranton Products' utter failure to offer a satisfactory explanation for the delay. Nevertheless, the total absence of prejudice to Bobrick, the severe prejudice to Scranton Products, the modest length of delay which had no impact on the proceedings, and Scranton Products' good faith lead the Court to conclude it should exercise its equitable discretion and grant Scranton Products' request to extend the deadlines. Accordingly, Scranton Products may now properly designate the information in both the Jungbluth deposition and WPP production as AEO despite failing to comply with the time limitations set forth in the MSPO. Scranton Products and its counsel are put on notice that the Court will not grant it such relief going forward. But, in this particular

instance, the Court does not believe that Scranton Products should be penalized (and its trade secret information made widely available to employees of its principal competitor) based on its counsel's failure to timely designate.

## IV.    **CONCLUSION**

For the foregoing reasons, the Court will grant Scranton Products' request to designate certain information contained in the Jungbluth deposition and WPP production as AEO despite being untimely. A separate Order follows.

Robert D. Mariani
United States District Judge