UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BOBRICK WASHROOM EQUIPMENT, INC., | |
| Plaintiff, | Civil Action No. 3:14-CV-00853-RDM |
| v. | |
| SCRANTON PRODUCTS INC., | Hon. Robert D. Mariani |
| Defendant. | |

**JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT
AND RETAIN JURISDICTION TO ENFORCE SETTLEMENT**

Plaintiff Bobrick Washroom Equipment, Inc. ("Bobrick") and Defendant

Scranton Products Inc. ("Scranton Products") (collectively the "Parties," and each

respectively a "Party") hereby jointly move the Court to approve the fully executed

Settlement Agreement and Mutual General Release (including all of its exhibits)

that is attached hereto as Exhibit 1 (the "Settlement Agreement").

The case has been vigorously litigated since its inception. The settlement is

the product of extensive negotiation by the Parties' principals and their counsel.

Both Parties respectfully submit that the settlement is a fair resolution of the

disputes between the Parties, and serves the interests of judicial efficiency by

bringing an end to a contentious, costly, and lengthy litigation. In support of their

motion, the Parties aver as follows:

1

1.      The Parties have reached a full and final agreement to settle the above-captioned civil action (the "Action").

2.      The terms and conditions of the Parties' agreement are memorialized in the executed Settlement Agreement that is attached hereto as Exhibit 1.

3.      The Court has jurisdiction over the Action pursuant to 28 U.S.C. §§ 1331, 1332, 1337, and 1367.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2).

4.      The Parties acknowledge that the Court has personal jurisdiction over each of them in connection with the Action and the Settlement Agreement.

5.      The business of the Parties involves selling toilet partitions, among other products, nationwide, and therefore substantially affects interstate commerce.

6.      The Settlement Agreement, in addition to serving the Parties' respective interests by resolving costly and disputed litigation, serves the public interest by minimizing or eliminating the expenditure of judicial resources on continued litigation of the Action.

7.      Further, the Parties have a shared interest in protecting public safety, encouraging compliance with fire, life safety, and building codes, and promoting fair and vigorous competition in the market for toilet partitions.  All of these goals are in the public interest and, the Parties submit, will be advanced by the Settlement Agreement and the Court's retention of jurisdiction as outlined therein.

By entering into the Settlement Agreement and agreeing to its provisions, neither Party is admitting or conceding any wrongdoing or liability, including in connection with the allegations in the Action or the subject matter of the Settlement Agreement.

8.      The Settlement Agreement includes the following significant features:

a.      Scranton Products will make a payment to Bobrick; Bobrick will dismiss with prejudice the claims it has asserted against Scranton Products in the Action; and the Parties will execute mutual general releases as to (a) all known claims without regard to subject matter and (b) unknown claims that arise out of or relate to the allegations in the Action or to a common nucleus of operative facts with the claims raised by any Party in the Action.  Sections IV – V; Exhibit E (Mutual General Releases).[1]

b.      Scranton Products is committing to having an independent testing facility conduct NFPA 286 testing and provide NFPA 286 certification for its high-density polyethylene ("HDPE") toilet partitions that it sells as NFPA 286-compliant for a period of ten (10) years

c.      Scranton Products is also committing to send, for a period of ten (10) years, an agreed-upon letter to all purchasers of specified products. Section VII.F.

---

[1] All citations not otherwise noted are to the Settlement Agreement.

d.      As a means of avoiding protracted and costly litigation in the future, the Parties have agreed to a notice and cure procedure for all alleged breaches of the Settlement Agreement.  Following a reasonable cure period, if the Court finds that either Party is in breach of the Settlement Agreement, the non-breaching Party is entitled to an award of liquidated damages.  Settlement Agreement ¶ 91.  To ensure that the affirmative, continuing obligations under the Settlement Agreement are carried out as intended, the Parties have also agreed that a Party may seek injunctive relief from the Court under applicable law.  *Id.* ¶¶ 101–02.

e.      As a material term of the Settlement Agreement, the Settlement Agreement is contingent upon the Court's approval and express retention of jurisdiction for the ten-year duration of the Settlement Agreement to enforce its terms, and without such approval and express retention of jurisdiction, the Settlement Agreement will be null and void.  *Id.* ¶¶ 19, 22–23.  Given the ongoing rights and obligations under the Settlement Agreement, the retention of jurisdiction for this limited ten-year period is a necessary term to the Settlement Agreement, and without it, the parties believe that settlement would not have been reached.

9.      Federal courts may, at their discretion and upon the request of the Parties, "retain jurisdiction to enforce a settlement agreement under the doctrine of

4

ancillary jurisdiction." *Brass Smith, LLC v. RPI Indus., Inc.*, 827 F. Supp. 2d 377, 380–81 (D.N.J. 2011).  Ancillary jurisdiction permits jurisdiction by federal courts "over some matters (otherwise beyond their competence) that are incidental to other matters properly before them," including enforcement of settlement agreements after dismissal.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994).  The only procedural limit on the Court's ability to retain jurisdiction is that Parties' "obligation to comply with the terms of the settlement agreement [is] made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order," *id.* at 381; *see also Raab v. City of Ocean City*, 833 F.3d 286, 294 (3d Cir. 2016).  The decision to retain jurisdiction is squarely within the Court's discretion.  *See Wright v. Prudential Ins. Co. of Am.*, 285 F. Supp. 2d 515, 520 (D.N.J. 2003) ("Courts have repeatedly affirmed the power of a court approving a settlement agreement to exercise its discretion to retain jurisdiction over the enforcement of that agreement, so long as it does so explicitly in the dismissal order.").  For several reasons, the parties respectfully ask the Court to exercise its discretion here to retain jurisdiction.

10.    First, the Court's retention of jurisdiction over enforcement of the Settlement Agreement for its duration is a material term and was an important

condition permitting the Parties to reach resolution in this case.  Settlement Agreement ¶ 22 ("The Parties agree that the validity and enforceability of this Settlement Agreement, in whole or in part (with the exception of the obligation to file the Joint Motion to Approve, the Joint Motion for Stay, and the [Proposed] Orders associated with each), is contingent upon the Court's approval of the Settlement Agreement.  The Parties further agree that the validity and enforceability of this Settlement Agreement, in whole or in part (with the exception of the obligation to file the Joint Motion to Approve, the Joint Motion for Stay, and the [Proposed] Orders associated with each), is also contingent upon the Court retaining jurisdiction over this Settlement Agreement for a period of ten years to enforce the Settlement Agreement and to adjudicate any dispute regarding or arising out of the Settlement Agreement, including the breach, termination, interpretation, or validity hereof, as well as the assessment and imposition of any liquidated damages hereunder..").

11.    Second, the duration of the Settlement Agreement is limited to ten years, and courts have found even longer periods of time acceptable to retain ancillary jurisdiction to enforce such agreements.  *See, e.g., Bronze Shields v. City of Newark*, 214 F.Supp.2d 443, 445 (D.N.J. 2002) (enforcing consent decree fifteen years after entering the order).

12.     Third, while the Parties' intention is that they will comply fully with the terms of the Settlement Agreement without any need for the Court's involvement, the Settlement Agreement is structured to obviate the need for any Court involvement unless absolutely necessary, providing for written notice and a mandatory "reasonable opportunity to cure the breach prior to seeking any damages from the Court."  Settlement Agreement ¶ 90.  The Parties likewise have provided a "presumptively reasonable" cure period of "three months" and in the event a good faith attempt to cure does not cure the breach, additional "good faith" cure periods for up to a time of "twelve months."  *Id.* ¶¶ 92, 93.  Accordingly, the Parties should be able to cure any deficiency well before the need to bring it to the Court's attention for enforcement or a decision on liquidated damages.

13.     Judges in this District have previously retained jurisdiction to enforce settlements of non-class action disputes involving various subject matters.  *See*, *e.g.*, *Dentsply Int'l, Inc. v. Guidance Endodontics, LLC*, No. 1:08-CV-0155, Dkt. No. 45 (M.D. Pa. Aug. 15, 2008) (Jones, J.) (patent infringement); *Mumma v. Randolph*, Civ. No. 1:98-CV-0087, Dkt. No. 134, 2008 WL 719352 (M.D. Pa. Mar. 14, 2008) (Rambo, J.) (sale of real property); *Diamond Triumph Auto Glass, Inc. v. Safelite Grp., Inc.*, No. 3:02-CV-0514, Dkt. No. 483 (M.D. Pa. June 12, 2007) (Munley, J.) (Lanham Act).

14.    The Parties also ask the Court to exercise its discretion to approve the Settlement Agreement, which brings resolution to multi-year litigation between the Parties. The Court's approval of the Settlement Agreement is a material term of the Settlement Agreement and was an important condition permitting the Parties to reach agreement. *See* Settlement Agreement ¶ 22.

15.    Scranton Products and Bobrick are sophisticated parties, who have had ample opportunity to evaluate the merits and risks of litigation and the appropriateness of the Settlement Agreement. They have engaged in lengthy, arm's-length negotiations during which they have been represented by able counsel.

16.    Each Party has its own further reasons in support of the Court's approval of and retention of jurisdiction over the Settlement Agreement. Accordingly, each Party sets forth its particular reasons in a separate section below. Neither Party endorses or adopts the other Party's separate section or the separate reasons stated by the other Party.

**Bobrick's Statement in Support of the Instant Motion**

17.    The Court should approve and retain jurisdiction over the Settlement Agreement because the settlement imposes continuing obligations on the Parties that promote both (a) public safety and (b) vigorous but fair business competition between Scranton Products and Bobrick, competitors in the market for toilet

partitions.  This Court's continuing jurisdiction to award liquidated damages and/or injunctive relief under the Settlement Agreement is essential to ensure that the settlement will function as intended during its ten-year term and that further expenditure of judicial resources on disputes between the Parties will be minimized or, hopefully, eliminated.

<u>Nature and Purpose of NFPA 286</u>

18.    The National Fire Protection Association ("NFPA") is a global nonprofit organization, established in 1896, devoted to eliminating death, injury, and property and economic loss due to fire, electrical, and related hazards. The NFPA's primary function is the promulgation and revision of over 300 codes and standards designed to minimize the risk and effects of fire by establishing criteria for building, processing, design, service, and installation of materials.

19.    As part of its mission, the NFPA has promulgated "Standard Methods of Fire Tests for Evaluating Contribution of Wall and Ceiling Interior Finish to Room Fire Growth," also known as NFPA 286. The current edition of NFPA 286 is the 2015 edition, with prior editions promulgated in 2000, 2006, and 2011.

20.    The purpose of NFPA 286 is to determine "the potential extent to which the interior finish materials contribute to fire growth in a room, including the heat and smoke released, the combustion products released, and the potential for fire spread beyond the room, under the particular conditions simulated." NFPA

286 ¶ 1.2.2 (2015 ed.).  To that end, NFPA 286 defines "acceptance criteria" to determine whether a given material satisfies the NFPA 286 standard.

21.     The International Code Council ("ICC") was established in 1994 as a non-profit organization dedicated to developing a single set of comprehensive and coordinated national model construction codes. ICC model codes are adopted in accordance with the laws and procedures of particular governmental jurisdictions.

22.     One of the principal codes developed by ICC is the International Building Code ("IBC"), some version of which is in use or adopted in all 50 U.S. states, the District of Columbia, and four U.S. territories.  Beginning with the 2009 edition, the IBC has mandated that HDPE, when used as interior finish (including as toilet partitions), must satisfy the acceptance criteria of NFPA 286.  That requirement is unchanged in the 2012 and 2015 editions of the IBC.

23.     As of February 2017, the fire, life safety, and/or building codes of 48 states (all but Hawaii and Texas), the District of Columbia, four U.S. territories, and the federal government have incorporated the requirements of the 2009 or a later edition of the IBC.  In five states (Arizona, Colorado, Delaware, Kansas, and Nebraska), one or more local jurisdictions have adopted the 2009 edition or a later edition of the IBC.  Six other states (Illinois, Maryland, Mississippi, Missouri, Montana, and South Dakota) have adopted the 2009 edition or a later edition of the IBC but permit local jurisdiction variation.

<u>History of Litigation</u>

24.     Bobrick was previously sued in this Court by Santana Products, Inc. ("Santana"), a corporation later acquired by CPG International LLC ("CPG")—the parent company of Scranton Products—in 2006.  That prior litigation, before then-District Judge Vanaskie (No. 3:CV96-1794) and the Court of Appeals for the Third Circuit (No. 03-1845/2283/2481), and related cases lasted approximately ten years.  Santana did not prevail on its claims in that lawsuit, which consumed enormous judicial resources and was costly for Santana, Bobrick, and non-parties.

25.     Scranton Products initiated the Action against Bobrick on May 2, 2014, alleging that Bobrick had made misrepresentations in the marketplace about whether Scranton Products then offered for sale HDPE toilet partitions that complied with the acceptance criteria of NFPA 286.  As part of its allegations in the Action, Scranton Products maintained that it had offered for sale and had actually sold NFPA 286-compliant HDPE toilet partitions since mid-2011.  Bobrick denied Scranton Products' allegations.

26.     Following extensive written discovery and some depositions, including Scranton Products' Court-ordered production of manufacturing records for its HDPE toilet partitions sold as NFPA 286-compliant, Bobrick filed a counterclaim against Scranton Products in the Action on December 16, 2016, alleging, among other things, that Scranton Products had made misrepresentations

in the marketplace about Scranton Products' HDPE toilet partitions' compliance with NFPA 286. Bobrick filed an amended counterclaim, making the same allegations, on March 21, 2017.

27. In its amended counterclaim, Bobrick asserted claims for violation of the Lanham Act by false advertising, unfair competition, abuse of legal process, and wrongful use of civil proceedings. It is Bobrick's position that by prevailing on any or all of these causes of action, Bobrick would have been entitled to some or all of the following relief: injunctive relief prohibiting false advertising and/or mandating corrective advertising, disgorgement of Scranton Products' relevant profits, compensatory damages, punitive damages, attorneys' fees and costs, and allowable interest.

28. CPG replaced its president and chief executive officer in June 2016, and Scranton Products replaced its president in December 2016. On December 9, 2016, Scranton Products sought leave of court to dismiss all of its claims against Bobrick with prejudice. Scranton Products explained this request as follows: "Scranton Products' new management has evaluated its claims – both the effects of the conduct of [Bobrick] on Scranton Products' business, and the substantive allegations underpinning the lawsuit – and decided to dismiss them." The Court permitted Scranton Products to dismiss its claims with prejudice on February 10, 2017. Scranton Products neither requested nor received any monetary or other

12

consideration, or any admission of liability, from Bobrick in exchange for the dismissal with prejudice of its claims.

29.    After moving to dismiss its claims in the Action, Scranton Products initiated a "commercial action" in which it informed purchasers of its HDPE toilet partitions sold as NFPA 286-compliant that Scranton Products "can no longer maintain with 100% assurance that all of the current generation of 286 HDPE bathroom partitions [it] sold were NFPA 286-compliant and [it] will provide replacement options." Scranton Products offered purchasers a choice between receiving replacement product at no charge and receiving a full refund. The refund offered by Scranton Products as part of its "commercial action" covers both the full price of the product and the labor cost of installation.

30.    This Action has now been pending for more than three years and has been burdensome for the Court and costly for the Parties. It is Bobrick's hope and intention that the Settlement Agreement, if approved and enforced through the Court's continuing jurisdiction, will resolve the present Parties' disputes and avoid repeating the length and expense of the prior litigation.

### Scranton Products' Statement in Support of the Instant Motion

31.    After six months of negotiation – including back-and-forth drafts of a letter of intent, testing protocols and a final long-form agreement; an in-person meeting between the Parties and Intertek, the independent testing facility that will

conduct the NFPA 286 testing; and a number of lengthy in-person and telephonic meetings between the principals  and their attorneys – Scranton Products and Bobrick have negotiated the submitted Settlement Agreement.  The key terms are described in Paragraph 8, above.  The Court's approval of the Settlement Agreement and retaining jurisdiction to enforce the agreement and resolve disputes is a necessary term.

History of the Action and Reasons for Settlement

32.    This Action involved commercial disputes between two companies that both make bathroom partitions, albeit manufactured from different materials. There is a significant public interest in resolving this dispute, to conserve judicial resources and provide finality to what has been a lengthy and costly business dispute between the parties.  *See Cisco Sys., Inc. v. Telcordia Techs., Inc.*, 590 F. Supp. 2d 828, 831 (E.D. Tex. 2008) (recognizing "the strong public interest" in "conservation of judicial resources" as a factor weighing in favor of settlement).

33.    The requirements of NFPA 286, and which jurisdictions have adopted it as applying to HDPE bathroom partitions, are matters determined by independent third parties, and that change from time to time.  Scranton Products markets and sells some bathroom partitions as NFPA 286-compliant, and markets and sells some bathroom partitions as non-NFPA 286-compliant.

14

34.    It is Scranton Products' position that it filed its complaint in good faith on May 2, 2014 (Dkt. 1), in response to Bobrick's public marketing campaign, alleging that Bobrick's statements regarding Scranton Products' NFPA 286-compliant bathroom partitions violated the Lanham Act and several common-law business torts (including common-law unfair competition, commercial disparagement, and tortious interference with existing or prospective business relations).  Bobrick sought leave to file (and later filed with the permission of the Court) counterclaims (Dkt. 213) related to Scranton Product's initiation and litigation of the Action and related to Scranton Products' advertising of certain of its bathroom partitions.

35.    After taking it upon itself to conduct additional testing of its products in November 2016, Scranton Products decided voluntarily to dismiss its claims against Bobrick, without any admission  of liability or wrongdoing by either party. The Court permitted the dismissal (Dkt. 287).

36.    Additionally, in order to treat its customers fairly, Scranton Products voluntarily initiated a commercial action for certain purchases of some NFPA 286 products.  While Scranton Products had believed that those products were NFPA 286-compliant, it could not provide 100% certainty that all of the products it had sold as NFPA 286-compliant met that standard, and so it offered its customers

replacements at no cost using its current generation NFPA 286-compliant product, which Scranton Products is confident complies with NFPA 286 standards.

37. Both Parties dispute any liability for the claims alleged against them in this Action. Scranton Products has denied and continues to deny and vigorously disputes any allegations of wrongdoing. Scranton Products is confident that it has the ability to manufacture NFPA 286-compliant toilet partitions, as demonstrated by the certification requirements it is agreeing to in the Settlement Agreement (which go beyond NFPA 286's requirements).

38. Nevertheless, further litigation and trial of this case would involve expensive additional fact and expert discovery, dispositive motion practice and a lengthy trial involving highly technical evidence, with uncertain results for both Parties, no matter how strongly each believes in its respective position. Accordingly (and after more than three years of contentious, time-consuming and expensive litigation), the Parties desire to settle and resolve all of the issues and disputes, both known and some unknown, between them so that they can each focus on their respective businesses. The Settlement Agreement does this.

<strong><u>The Parties' Joint Prayer for Relief</u></strong>

**WHEREFORE**, in light of the Parties' intention to settle and dismiss the Action based upon the terms and conditions of the Settlement Agreement, the contingency of the Settlement Agreement upon the Court's approval and retention

16

of jurisdiction for the limited ten-year period for purposes of enforcement, and the

Settlement Agreement's promotion of the conservation of judicial resources, the

Parties hereby respectfully request that the Court enter an order in the form

attached hereto, and that any hearing on this Joint Motion be held at the Court's

earliest possible convenience. [2]

Dated:  September _8_, 2017

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:    /s/ Carl W. Hittinger

Carl W. Hittinger (No. 30250)
Jeffry W. Duffy (No. 81670)
M. Mitchell Oates (No. 315691)
Tyson F. Herrold (No. 314262)
2929 Arch Street
Cira Centre, 12th Floor
Philadelphia, PA 19104-2891
Telephone:  (215) 564-2898
Facsimile:  (215) 568-3439
chittinger@bakerlaw.com
jduffy@bakerlaw.com
moates@bakerlaw.com
therrold@bakerlaw.com

---

[2] The Parties are simultaneously submitting a Joint Motion for Stay Pending Ruling on Approval of Settlement, and have agreed in the Settlement Agreement to a mutual voluntary stay on all discovery, pending the Court's ruling on this Joint Motion.

17

William T. DeVinney (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC  20036
Telephone:  (202) 861-1554
Facsimile:  (202) 861-1783
wdevinney@bakerlaw.com

*Counsel for Plaintiff*
*Bobrick Washroom Equipment, Inc.*

**MUNGER, TOLLES & OLSON, LLP**

By:   /s/ Lisa J. Demsky

Brad D. Brian (*pro hac vice*)
Lisa J. Demsky (*pro hac vice*)
350 South Grand Avenue, 50th Floor
Los Angeles, CA  90071-3426
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702
brad.brian@mto.com
lisa.demsky@mto.com

**ELLIOTT GREENLEAF, P.C.**

John G. Dean (PA 76138)
Matthew G. Boyd (PA 207366)
201 Penn Avenue, Suite 202
Scranton, PA  18503
Telephone:  (570) 346-7569
Facsimile:  (570) 969-2890
jgd@elliottgreenleaf.com
mgb@elliottgreenleaf.com

*Counsel for Defendant*
*Scranton Products Inc.*

## CERTIFICATE OF SERVICE

I, Carl W. Hittinger, hereby certify that the foregoing Joint Motion to Approve Settlement Agreement and Retain Jurisdiction to Enforce Settlement was served on all counsel of record on this date through the Court's electronic filing system.


September 8 , 2017                             /s/ Carl W. Hittinger
                                              Carl W. Hittinger