# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SCRANTON PRODUCTS, INC.,

    Plaintiff,

v.                              3:14-CV-00853
                                  (JUDGE MARIANI)

BOBRICK WASHROOM
EQUIPMENT, INC.,

    Defendant.

## MEMORANDUM OPINION

### I. INTRODUCTION

Pending before the Court is a motion to intervene from Travelers Property Casualty Company of America ("Travelers"). This matter involves claims between Plaintiff Scranton Products, Inc. ("Scranton Products") and Defendant Bobrick Washroom Equipment, Inc. ("Bobrick"). In May 2014, Scranton Products filed a complaint alleging, among other things, that Bobrick violated the Lanham Act and other state laws when it allegedly represented to other actors in the industry that Scranton Products' toilet partitions are "fire hazards" and "pose health and safety risks if used in building projects." Doc. 1 ¶ 1.

For the past three and a half years the parties have engaged in protracted and highly contentious litigation. However, in September 8, 2017, Scranton Products and Bobrick jointly filed a proposed Settlement Agreement, the approval for which is still pending in this Court. Doc. 411. The Agreement, if approved, would obligate Scranton Products to pay Bobrick $7.5 million. On November 27, 2017, Travelers filed a motion to intervene, asking

the Court to either place the Settlement Proceeds in an escrow account or to place an equitable lien on the Settlement Proceeds. Doc. 421. For reasons that follow, the Court will deny Travelers' motion to intervene.

## II. BACKGROUND

In May 2014, Scranton Products filed a complaint alleging, among other things, that Defendant Bobrick violated the Lanham Act and other state laws when it "carefully orchestrated a campaign to scare architects, product specifiers, procurement representatives, building owners, and others in the construction industry into believing that Scranton Products' toilet partitions are fire hazards, are unsafe and pose health and safety risks if used in building projects across the country." Doc. 1 at ¶ 1. In November 2016, Bobrick filed counterclaims against Scranton Products. Doc. 213. A month later, Scranton Products moved to voluntarily dismiss its claims against Bobrick. Doc. 233. Bobrick filed a brief "in opposition" to Scranton Products' motion for voluntary dismissal, stating that while it does not *per se* oppose Scranton Products' motion, it would ask the Court defer decision until Bobrick files a motion for attorneys' fees under 15 U.S.C. 1117(a) of the Lanham Act. Doc. 245. This Court granted Scranton Products' motion, but held that Bobrick could pursue its claims for attorneys' fees despite the dismissal. Docs. 286, 287. Thereafter, Bobrick continued litigating its counterclaims against Scranton Products, but to date, has not filed a motion for attorneys' fees under 15 U.S.C. 1117(a).

2

On September 8, 2017, Scranton Products and Bobrick filed a joint motion for settlement, and attached a proposed Settlement Agreement. Doc. 411. The Settlement Agreement, if approved, will release any unasserted claims by Scranton Products[1] and Bobrick's counterclaims against Scranton Products. It also stipulates that Scranton Products will pay Bobrick $7.5 million (the "Settlement Proceeds") within five days of the Court's approval of the Settlement Agreement. Doc. 411-1 at 12. The Agreement also includes an attachment titled "Mutual General Releases," which states that as part of the Agreement, Scranton Products and Bobrick mutually agree to release "any and all claims, causes of action, demands, lawsuits, liabilities, controversies, damages, attorney's fees, costs or charges, whether known or unknown, that rise out of or relate to the allegations in the Action." *Id.* at 107. This release does not purport to allocate the Settlement Proceeds with respect to the released claims. *Id.* at 12. Similarly, Section IV(A) of the Settlement Agreement, which sets forth the payment of the Settlement Proceeds, also does not specify whether any portion of the Proceeds is intended to reimburse Bobrick for its attorneys' fees. *Id. See also* Doc. 429 at 4.

Throughout the course of the underlying litigation, Travelers was the insurance company for Bobrick's litigation expenses. Travelers issued Bobrick a primary commercial general liability policy, effective from June 1, 2013 to June 1, 2014 (the "Policy"). Doc. 422 at 3. When Bobrick tendered this lawsuit to Travelers, Travelers began paying Bobrick's

---

[1] To the extent Scranton Products asserted claims against Bobrick, those claims were dismissed pursuant to this Court's Order granting Scranton Products' motion for voluntary dismissal of its claims. Docs. 286, 287.

attorneys' fees in the underlying action. *Id.* Due to disputes over choice of counsel and payment issues, Travelers and Bobrick conducted their own litigation in the District Court for the Central District of California. Doc. 429 at 6. The action eventually ended in arbitration, resulting in an award of an additional $4.1 million in legal fees to Bobrick. *Id.* at 6-7.

Travelers paid the $4.1 million arbitration award, but has since sued Bobrick following the filing of the Settlement Agreement in the underlying action. The Travelers suit was filed in the United States District Court in the Central District of California (*Travelers Property Casualty Company of America v. Bobrick Washroom Equipment, Inc.*, No. 3: 18-cv-00094) ("the Travelers Action"), making three claims for relief: "declaratory relief and monetary recovery regarding Travelers' right to the proceeds recovered by insured Bobrick in the Underlying Action" (Count I); "equitable restitution based upon unjust enrichment" (Count II); and "declaratory relief that travelers is entitled to enforce its rights under California Civil Code § 2860(c) to arbitrate all disputes concerning attorney's fees incurred by Bobrick in the Underlying Action" (Count III). Travelers Action, Doc. 9. Upon Bobrick's motion to transfer the action, the Central District of California transferred the case to this Court, given this Court's familiarity with the facts of the underlying action.[2]

Travelers' claims in the Travelers Action are primarily based upon its assertion of

---

[2] In Bobrick's motion to transfer the case to this Court, it also moved to "dismiss the third claim for relief as the parties agree it is subject to arbitration." Travelers Action, Doc. 17 at 1. Travelers' Third Claim for Relief seeks arbitration as to all disputes concerning attorneys' fees incurred by Bobrick in the instant action, Bobrick averred that it "is agreeable to arbitrate such disputes" and therefore the claim should be dismissed. *Id.* at 30. The district court in California did not rule on the motion to dismiss the third claim in its transfer order. Travelers Action, Doc. 26.

4

"Rights of Recovery" under the Policy. In the Commercial General Liability Conditions section, the Policy states:

> **8. Transfer Of Rights Of Recovery Against Others To Us**
> If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

Travelers contends that this clause conferred upon it a right to recover attorneys' fees paid to Bobrick, and that Bobrick cannot impair such a right. Because the Settlement Agreement released, among other things, "any and all claims, causes of action, demands, lawsuits, liabilities, controversies, damages, attorneys' fees, costs, or charges, whether known or unknown, that arise out of or relate to the allegations in the Action," Doc. 411-1 at 107, Travelers contends that Bobrick has improperly impaired Travelers' right to recover attorneys' fees from Scranton Products. Doc. 421 at 15.

Before the filing of the proposed Settlement Agreement, Bobrick had argued to this Court that Scranton Products' conduct satisfies the requirements under 35(a) of the Lanham Act for an award of attorney's fees in "exceptional cases" under 15 U.S.C. § 1117(a). Specifically, Bobrick made that argument in response to Scranton Products' motion to voluntarily dismiss its claims. Doc. 245 at 5. Bobrick requested that the Court "defer decision on the Dismissal Motion to allow Bobrick to move for its costs and attorneys' fees." *Id.* The Court declined to defer ruling on the dismissal of Scranton Products' claims. Doc. 286. But in its memorandum opinion, the Court made clear that its ruling "would in no way

5

affect Bobrick's ability to later seek additional discovery, fees, and costs to its contemplated motion [for attorneys' fees]." *Id.* at 5. The Court further stated that it would "permit Bobrick to file its contemplated motion [for attorneys' fees] until after it has had the opportunity depose" the relevant witnesses. *Id.* at 6. However, before Bobrick brought a proper motion for attorneys' fees, the parties entered into the Settlement Agreement, pending approval of this Court. Doc. 411. Thus, to date, there has been no motion—let alone a court adjudication—as to whether there exists any right to recover attorneys' fees (by Bobrick or any other party) from Scranton Products. Nevertheless, Travelers contends that it has a legal right to recover attorneys' fees from Scranton under the Policy, and that this right "was not Bobrick's to release." Doc. 421 at 15. Travelers argues that Bobrick cannot release "a meritorious and highly valuable claim which [Bobrick] has against Scranton Products for the recovery of approximately $7 million in attorney's fees which Travelers, not Bobrick, paid." *Id.* at 17.

Travelers also points to Bobrick's purported breach of California Civil Code § 2860(d), which obligates Bobrick to "disclose to [Travelers] all information concerning the action except privileged materials relevant to coverage disputes, and timely to inform and consult with the insurer on all matters relating to the action." *Id.* at 13. Travelers claims that "Bobrick and its counsel refused, for years, to share information with Travelers about the case." *Id.* Finally, Travelers claims that Bobrick breached the "cooperation clause" under the Policy, which allegedly requires Bobrick to "cooperate with [Travelers] in the

investigation or settlement of the claim or defense against the 'suit'" and to "[a]ssist Travelers, upon [its] request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply." *Id.* at 14. Travelers argues that Bobrick has breached these relevant provisions by refusing to "provide Travelers a single written assessment of the case," which has "made it impossible for Travelers to meaningfully participate in the defense of the Scranton Lawsuit," or "to determine which portion of the attorney's fees and costs were reasonably and necessarily incurred so that Travelers should pay them."

Travelers seeks only equitable relief in its motion to intervene: asking the Court to either issue a "judgment of interpleader of the disputed portion of the settlement funds" and place the disputed amount in an escrow account, or to place an equitable lien on $7 million of the $7.5 million in Settlement Proceeds, until Travelers' "rights to them are determined by [the court in the Travelers Action]." Doc. 421, at 16-18.

Bobrick has countered that Travelers is "putting the proverbial cart before the proverbial horse." Doc. 429 at 16. It argues that Travelers has not shown "an actual protectable interest" in the underlying action, which is required for intervention as of right; rather, Travelers has merely demonstrated "an interest contingent on another pending suit," i.e. the Travelers Action. *Id.* at 6. Bobrick further argues that Travelers' requested relief should be separately denied because such equitable relief is unavailable to Travelers when it has an adequate remedy at law. *Id.* at 20-25.

7

## III. Discussion

Federal Rule of Civil Procedure 24 governs a nonparty's right to intervene in litigation. The Rule provides, in pertinent part, as follows:

**(a) Intervention of Right.** On timely motion, the court must permit anyone to intervene who:

> **(1)** is given an unconditional right to intervene by a federal statute; or
>
> **(2)** claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

In this Circuit, a non-party may intervene as of right if it can satisfy four factors:

(1) The application for intervention is timely;
(2) The applicant has a sufficient interest in the litigation;
(3) The interest may be affected or impaired, as a practical matter by the disposition of the action; and
(4) The interest is not adequately represented by an existing party in the litigation.

*Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995) (citations omitted).

The parties do not dispute that Travelers' motion is timely or the adequacy of representation of their interests by Bobrick. Rather, the parties' briefs primarily focus on the second requirement—whether Travelers has shown it has a sufficient interest in the underlying action between Scranton Products and Bobrick, and to a lesser extent, on the third requirement—whether Travelers' interest may be impaired as a

8

practical matter by the disposition of the action that would be effectuated by the Settlement Agreement.

As to the second requirement, the Supreme Court has held that in order to intervene as of right, the proposed intervenor's interest must be "significantly protectable." *Donaldson v. United States*, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971). The Third Circuit has instructed that a "significantly protectable" interest "must be a legal interest as distinguished from interests of a general and indefinite character." *Mountain Top*, 72 F.3d at 318 (internal citation and quotation marks omitted). Specifically, "[t]he applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene." *Id.*

Travelers argues that it has an interest in this action because it has the right to recover attorney's fees from Scranton, which Bobrick contemplated pursuing prior to entering into the Settlement Agreement. The Settlement Agreement contains a provision that releases the parties' right to pursue any "attorney's fees, costs or charges...that rise out of or relate to the allegations in the Action." Doc. 411-1 at 107. Travelers argues that "[t]he release of the right to recover [] is not Bobrick's to give." Doc. 421 at 10. Thus, Travelers claims that it is entitled to $7 million of the Settlement Proceeds, which it claims is the amount of attorneys' fees it advanced to Bobrick for this litigation. *Id.* at 15.

In *Liberty Mutual Ins. Co. v. Treesdale, Inc.*, the Third Circuit reiterated *Mountain Top*'s general guideline that "[a]n intervenor's interest must be one that is significantly

protectable." 419 F.3d 216, 220 (3d Cir. 2005) (citing *Mountain Top,* 72 F.3d at 366).

*Liberty Mutual* went on to explain:

> [This means that] the interest must be a legal interest as distinguished from interests of a general and indefinite character. The applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene....In general, a mere economic interest in the outcome of litigation is insufficient to support a motion to intervene. Thus, the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene....While a mere economic interest may be insufficient to intervene, an intervenor's interest in a *specific* fund is sufficient to entitle intervention in a case affecting that fund. Thus, when a particular fund is at issue, an applicant claims an interest *in the very property that is the subject matter of the suit.*

*Id.* at 220–21 (quoting *Mountain Top,* 72 F.3d at 366) (emphasis added). The nature of the "fund" at issue and Travelers' "interest" in this action do not satisfy the principles outlined by *Liberty Mutual.* Travelers claims that it had a protectable right in attorneys' fees, which it claims was bargained away in the Settlement Agreement in the form of the Settlement Proceeds. The Settlement Agreement, however, does not purport to compensate Bobrick in exchange for a release of the right to pursue attorneys' fees. The Settlement Proceeds are without restriction or specification as to how, or whether, the Proceeds are to be allocated. In fact, the Settlement Agreement does not state whether *any* portion of the Proceeds is intended to reimburse Bobrick for its attorneys' fees. Doc. 411-1 at 12.

Travelers cannot read into the Agreement what is not there—that its purported interest in attorneys' fees is tied to the Settlement Proceeds. Rather, it has merely

10

demonstrated that it would like to recover $7 million in attorneys' fees that it paid Bobrick for the underlying action. Given that money is a fungible item, Travelers cannot specifically affix its claim of $7 million in attorneys' fees to a "particular fund" at issue, i.e. the Settlement Proceeds, especially since the Settlement Agreement is silent as to which rights, if any, the Proceeds were meant to compensate. In other words, Travelers has demonstrated "a mere economic interest in the outcome of litigation," which "is insufficient to support a motion to intervene." *Liberty Mutual*, 419 F.3d at 221.

Moreover, Travelers' purported interest was never "a legally cognizable interest." The question of whether Bobrick *actually* had a right to recovery of attorneys' fees under the Lanham Act was never adjudicated in this action. It was merely an argument mentioned in Bobrick's briefing on Scranton Products' motion for voluntary dismissal of its claims. When this Court dismissed Scranton Products' claims, it expressly deferred the determination of whether there was a right to recovery of attorneys' fees from Scranton Products until Bobrick brought the proper motion for attorneys' fees. Bobrick never filed that motion. Instead, the parties jointly filed a motion for settlement on September 8, 2017. Doc. 411. To say that there existed a definitive, non-theoretical right to recovery of attorneys' fees in this case is inaccurate. It is thus doubly conjectural to say that the Settlement Proceeds are tied to a legal right for recovery of attorneys' fees, not only because the Agreement is silent on whether the Proceeds are intended to reimburse Bobrick for its attorneys' fees, but also because the existence of such a right has never been judicially determined in the first place.

In any event, Travelers has repeatedly stated that it does *not* dispute or challenge any term in the Settlement Agreement; rather, its main concern is the *allocation* of the Settlement Proceeds *once the Settlement Agreement is executed*. *See e.g.* Doc. 421 at 17 ("Travelers is not suing here to attack the terms of the settlement agreement between Scranton and Bobrick."); Doc. 436 ("Travelers is not asking the Court to alter a single word of the substance of the settlement agreement."). At its core, Travelers' motion aims to preserve its right to get a "piece of the pie" once Bobrick receives $7.5 million from its negotiated settlement with Scranton Products. In that respect, Travelers certainly has the right to bring an action against Bobrick to recover the attorneys' fees it paid Bobrick pursuant to the Policy—and it has done so by bringing the Travelers Action. In fact, Travelers' own brief admits that "[t]he adequacy of that settlement in protecting Travelers' rights is one of the subjects of the [Travelers Action]; Travelers will hold Bobrick accountable for its conduct there." Doc. 421 at 17. The claims in the Travelers Action arise from the Policy between Bobrick and Travelers; they have little relevance to the negotiation and execution of a Settlement Agreement between Scranton Products and Bobrick in the underlying action. The only connection between the two actions is that Travelers would like to be reimbursed for the $7 million that it has advanced to Bobrick in attorneys' fees in the underlying action. Such an economic interest is insufficient to satisfy the interest requirement for intervention. *See e.g. Selective Way Ins. Co. v. Head*, 2011 WL 1459000, at *5 (E.D. Pa. Apr. 14, 2011) (denying intervention because movant "merely has an indirect

economic interest in the outcome of this litigation, to the extent it impacts his ability to collect a hypothetical future judgment against the insured").

In sum, if the Agreement had specified the Settlement Proceeds (in whole or in part) were to be paid in exchange for the right of recovery of attorneys' fees from Scranton Products, and if the existence of such a right had been adjudicated by the Court, then this motion would present a closer question. For in that hypothetical case, the Agreement would have acknowledged that Bobrick had a right to recovery of attorneys' fees, which Bobrick would release in exchange for a certain amount of Settlement Proceeds. However, that hypothetical case is not before this Court. Travelers has demonstrated, at most, an indirect economic interest in the outcome of the underlying action, which is insufficient to satisfy the second requirement of intervention. Its motion to intervene must therefore be denied.

Though the Court need not address the other requirements for intervention, it notes that Travelers would not have been able to satisfy the third requirement of the Rule 24(a)(2) analysis. The third factor requires the movant to demonstrate an interest that may be affected or impaired, as a practical matter, by the disposition of the action. "In order to meet the requirements of Rule 24(a)(2), proposed intervenors must also demonstrate that their interest might be affected or impaired, as a practical matter, by the disposition of the action in their absence." *Am. Farm Bureau Fed'n v. United States Enviro. Protection Agency*, 278 F.R.D. 98, 107 (M.D. Pa. 2011) (citing *Mountain Top*, 72 F.3d at 368). In determining whether the Travelers' interest may be impaired, the Court must consider the nature of the

relief sought as well as the practical consequences of such a ruling. *Id.* at 109 (citing *Dev. Fin. Corp. v. Alpha Housing & Health Care, Inc.*, 54 F.3d 156, 162 (3d Cir.1995)).

According to the Travelers, "it is critical that entitlement to the funds get addressed before the funds are lost." Doc. 422 at 8. This dire prediction is unsupported by any basis in fact. Again, money being a fungible article, there is no reason that Travelers should be entitled to the specific funds paid in the Settlement Proceeds as opposed to any other funds.

Indeed, Travelers has not argued that Bobrick is insolvent or illiquid. Absent such findings, there is no reason why Travelers cannot proceed in a separate action in order to recover portions of the attorneys' fees it has paid to Bobrick—in fact, it has done so, by initiating the Travelers Action in the Central District of California before it moved to intervene in this case. Travelers Action, Doc. 1. Bobrick, for its part, has averred that it "stands ready and able to pay any future judgment in the unlikely event Travelers prevails in the [Travelers] Action." Doc. 429 at 7; *see also id.*, at 25 (averring that "Bobrick's current sales and revenues are more than sufficient to pay any judgment that Travelers may obtain"). Travelers has failed to offer any evidence (or even speculation) that Bobrick cannot satisfy such future judgments. Indeed, should the Settlement Agreement be executed as planned, Bobrick would stand to gain $7.5 million from the Agreement, which should only improve its liquidity position. However, at this stage, when Travelers has not yet obtained a judgment against Bobrick in the Travelers Action, the motion to intervene is a classic case of "putting the proverbial cart before the proverbial horse." *Liberty Mutual*, 419 F.3d at 224. Because

there is no reason to believe that Bobrick would be unable to satisfy any future judgment rendered against it, Travelers has failed to show how its interest may be "affected or impaired, as a practical matter, by the disposition of the [underlying] action." *Am. Farm Bureau Fed'n*, 278 F.R.D. at 107.

**Travelers Is Not Entitled to the Equitable Relief It Seeks in Its Motion**

Separately, the Court notes that the equitable relief requested by Travelers—in the form of an interpleader judgment ordering that the Settlement Proceeds be deposited in an escrow account or an order imposing an equitable lien on the Settlement Proceeds—is not warranted. Doc. 421 at 16-18 (Travelers' motion to intervene listing "interpleader of settlement funds" and/or "declaratory relief and equitable lien" as its only two claims for relief).

"The equitable remedy of interpleader allows 'a person holding property to join in a single suit two or more persons asserting claims to that property.'" *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 275 (3d Cir. 2007) (citing *NYLife Distrib., Inc. v. Adherence Group, Inc.*, 72 F.3d 371, 372 n. 1 (3d Cir.1995)). "There are two methods for bringing an interpleader in federal court." *Id.* "The first is the interpleader statute, 28 U.S.C. § 1335...[t]he second is Federal Rule of Civil Procedure 22." *Id.* Section 1335 applies to an interpleader "filed by any person, firm, or corporation, association, or society *having in his or its custody or possession* money or property of the value of $500 or more." 28 U.S.C.A. § 1335 (emphasis added). Similarly, Federal Rule of Civil Procedure 22 allows interpleader

by a plaintiff facing "claims that may expose a plaintiff to double or multiple liability" or by a "defendant exposed to similar liability [to] seek interpleader through a crossclaim or counterclaim." Fed. R. Civ. P. 22(a). Travelers falls under neither of these interpleader methods for the simple reason that it is not in custody or possession of the funds at issue, nor is it claiming that it is exposed to multiple liability in the underlying action. Its motion for interpleader relief is therefore inapposite.

As for Travelers' request for an equitable lien on the $7 million of contested attorneys' fees, the Court must begin with the "well-established general rule that a judgment establishing the debt was necessary before a court of equity would interfere with the debtor's use of his property." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 321, 119 S. Ct. 1961, 1969, 144 L. Ed. 2d 319 (1999). As discussed above, Travelers has not yet obtained a judgment against Bobrick for the recovery of attorneys' fees. And it has failed to show that the extraordinary relief of deviating from this general rule is warranted in this case.

In its motion to intervene, Travelers' main argument relies on a term of the Policy, which states that "[i]f the insured has rights to recover all or part of any payment [Travelers has] made under this Coverage Part, those rights are transferred to [Travelers]. The insured must do nothing after loss to impair them." Doc. 421 at 15 (citing the Policy, Section IV – Commercial General Liability Conditions). The parties agree that California law should

apply to the interpretation of the Policy.[3] Thus, the Court looks to California law to interpret whether—and how—this term may have conferred a right on Travelers such that an equitable lien may be warranted in this case.

In California, "[e]quitable liens can arise from a contract that reveals the intent to charge a particular property with a debt." *Kennedy Funding, Inc. v. Chapman*, 2010 WL 2528729, at *8 (N.D. Cal. June 18, 2010) (citing *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 453-454 (3rd Dist., 1997)).

> [I]n the specific context of insurer reimbursement, the insurer's obligation to pay [] benefits in the first place exists *regardless of any third party recovery*— so there is no detrimental reliance on the part of the insurer. Nor do considerations of unjust enrichment justify imposing (or creating) a lien: There is no reason the insurer cannot seek reimbursement from the parties who

---

[3] According to Travelers' motion to intervene, "Bobrick and Travelers have agreed that their respective rights and obligations regarding Bobrick's defense in this action would be governed by California law." Doc. 421 at 12. Bobrick has not disputed this fact. Additionally, in their previous arbitration regarding attorneys' fees payments related to this action, Bobrick and Travelers agreed that Bobrick's rights would be controlled by California law. Travelers Action, Doc. 18 at 11. However, the Court notes that it has conducted an independent review of the Insurance Policy, given the briefs' silence on whether the Policy contains an express choice of law provision. The Court's review found that the Insurance Policy does not appear to contain any express choice of law provisions. Doc. 422-1.

But even if the Court were to conduct a choice of law analysis instead of taking the parties at their word, California law would still apply. Under Pennsylvania choice of law principles, the court must first "apply Section 188(2) of the Restatement (Second) of Conflict of Laws (1971) to identify the relevant contacts between each state, the parties, and the subject matter." *Toll v. Tannenbaum*, 596 F. App'x 108, 112 (3d Cir. 2014). Section 188(2) of the Restatement states that "[i]n the absence of an effective choice of law by the parties," the court should consider (a) "the place of contracting;" (b) "the place of negotiation of the contract;" (c) "the place of performance;" (d) "the location of the subject matter of the contract;" and (e) "the domicile, residence, nationality, place of incorporation and place of business of the parties." Restatement (Second) of Conflict of Laws § 188 (1971). These factors clearly militate towards applying California law, as the Insurance Policy was presumably entered into and negotiated, at least in part, in California; the bulk of the parties' performance under the Policy, including their dispute and arbitration over Travelers' performance under the Policy, took place in California; and the subject matter of the Policy concerned the general commercial liability of Bobrick, which is domiciled in California and has its principal place of business in California. Doc. 421 at 11.

17

really are unjustly enriched—the policyholders who collected for the same injury from both the insurer and the third party tortfeasor.

*Farmers Ins. Exch. v. Smith*, 71 Cal. App. 4th 660, 665 (1999) (citing *Zerin*, 53 Cal. App. 4th at 454-55) (emphasis added); *see also Zerin*, 53 Cal. App. 4th at 454 (holding that insured's obligation to hold third party recoveries "in trust" for the insurer was no more than a "bare promise to reimburse" the insurer, and that "[a] promise to hold property in trust for another, standing alone, will not create an equitable interest in that property").

Given that the Travelers Action is based primarily on the legal theory of unjust enrichment, *see, e.g.*, Travelers Action, Doc. 9, that theory is foreclosed by *Smith* and *Zerin*. In dicta, the *Smith* court reasoned that "[a]n equitable remedy, such as an equitable lien, after all, has no independent existence by itself," and cautioned that it is a "semantic trap" to "assume that a lien has already come into being merely because an insurer has a contract right with its policyholder to be reimbursed for first party medical payments." *Id.* at 671. The *Smith* court then went on to find that "actual equities simply do not favor creation of an equitable lien in this context," based in part on the fact that "the insurer has a perfectly adequate remedy at law." *Id.*

The same reasoning applies in this case—Travelers has a perfectly adequate remedy at law, which it has already taken advantage of by initiating the Travelers Action in California. That Action has since been transferred to this Court. Travelers Action, Doc. 26. To allow Travelers to both proceed in the Travelers Action and to intervene in the underlying action would result in duplication of judicial proceedings. Furthermore, Travelers has

18

offered no reason why its remedies in the Travelers Action would be inadequate to achieve the relief it seeks—especially in light of the lack of any claim that Bobrick is insolvent or illiquid. Thus, Travelers has not shown that either an equitable lien or an escrow account holding the Settlement Proceeds would be a just or necessary equitable solution in this action.

### III. CONCLUSION

For the reasons set forth above, the Court will deny the Travelers' Motions to Intervene. A separate Order follows.

Robert D. Mariani
United States District Judge