MUNGER, TOLLES & OLSON LLP

350 SOUTH GRAND AVENUE 50TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3426
TELEPHONE (213) 683-9100
FACSIMILE (213) 687-3702

November 27, 2018

Writer's Direct Contact
(213) 683-9151
(213) 683-4051 FAX
lisa.demsky@mto.com

**VIA ECF**

Hon. Robert D. Mariani
United States District Judge
William J. Nealon Federal Building & U.S. Courthouse
235 North Washington Avenue
Scranton, PA  18503

Re:   *Bobrick Washroom Equipment, Inc. v. Scranton Products Inc.*,
      No. 3:14-CV-00853-RDM (Settlement Enforcement)

Dear Judge Mariani:

We write to request Your Honor's assistance in helping the parties select an "independent, mutually agreeable third-party" auditor, as negotiated and detailed in the Settlement Agreement, to perform the audit of the "Customer Letters"—i.e. copies of the negotiated letter, Exhibit D to the Settlement Agreement, to be sent to Scranton Products' customers who purchased non-NFPA 286-compliant toilet partitions.  We regret having to bring this issue to the Court; however, as discussed below, while Scranton Products has offered three names of potential independent auditors (and is willing to propose or consider additional names), Bobrick has offered only one name, and refuses to consider or accept anyone else, a position that directly contradicts the Settlement Agreement's requirement for the auditor to be "independent" and "mutually agreeable."

The terms of the Settlement Agreement[1] between Scranton Products and Bobrick were heavily negotiated, important to both parties, and recorded in detail. In general terms, and among other things, Bobrick negotiated for the right to be intimately involved in the initial testing for Scranton Products' current NFPA 286-compliant product (and a substantial payment),[2] and Scranton Products negotiated

---

[1] Attached as Ex. A is the relevant section of the Settlement Agreement, Section VII.G "Customer Letters."  The entire agreement is at Dkt. 435 in No. 3:14-CV-00853-RDM.

[2] *See, e.g.*, Settlement Agreement ¶ 47 (Bobrick negotiated to be involved in developing the testing protocol, to be present during that testing, observe all aspects of the testing and even "make suggestions to Intertek about the testing process.").

MUNGER, TOLLES & OLSON LLP

Hon. Robert D. Mariani
November 27, 2018
Page 2

for the right, once its current product passed the initial testing and certification process, to run its business going forward with minimal involvement from, or information being provided to, Bobrick.[3]  Scranton Products passed that initial test with flying colors and received its product certification from Intertek in July 2018.

The Settlement Agreement provisions regarding the Customer Letters to be sent out for ten years following the agreement were the result of careful and detailed negotiation.  In addition to negotiating the text of the Customer Letter, *id.* at Ex. D, the parties negotiated a number of details, including who would receive the letter ("the entity that submits the purchase order," *id.* ¶ 81), and  how it would be sent ("in the same manner in which it usually communicates that information to that purchaser," *id.* ¶ 82).  At the same time, because Bobrick is a competitor of Scranton Products, Scranton Products negotiated for, and received, provisions ensuring that Bobrick would have only specific, limited rights to audit and receive information about Scranton Products' compliance.  The parties agreed:

1)  the auditor would be "an independent, mutually agreeable third-party," *id.* ¶ 84;

2)  the auditor will "examine Scranton Products' records of transmission and confirm that Scranton Products has, in fact, sent the required Customer Letters," *id.*; and

3)  the auditor will provide Bobrick "the summary results of the audit – that is, (a) the fact of whether or not Scranton Products is in compliance with its obligations concerning the Customer Letters, and, (b) if the auditor determines that Scranton Products is not in compliance, the number of instances of non-compliance (i) in the aggregate and (ii) for each purchaser (without identifying any purchaser or end user by name); provided, however, that Bobrick will not receive the names or other identifying information concerning Scranton Products' purchasers or end users; the pricing information on any work order; or the content of any communication between Scranton Products and any of its purchasers," *id.* ¶ 86.

---

[3] *See, e.g. id.* ¶ 58 ("[If Scranton Products passes and obtains Product Labeling Certification], Bobrick will not be entitled to any ongoing rights with respect to future NFPA 286 testing of Scranton Products' HDPE toilet partitions.").

MUNGER, TOLLES & OLSON LLP

Hon. Robert D. Mariani
November 27, 2018
Page 3

Bobrick is now seeking to expand its negotiated rights regarding this audit by demanding that *its* chosen auditor perform the audit and refusing to consider any of Scranton Products' multiple options to meet the requirement of an "independent, mutually agreeable third-party auditor." *Id.* ¶ 84.

Bobrick has offered a single proposal: Mr. George Reihner, on the basis that he also served as special master in *Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.* No. 3:96-cv-01794 (M.D. Pa., filed Oct. 1, 1996) (Vanaskie, J.) and therefore has "prior experience with and knowledge of the industry, the parties, and some of the general issues in the case." Ex. B at 2 (Email from C. Hittinger dated 11/17/2018). While Scranton Products does not doubt that Mr. Reihner would aim to be neutral, Bobrick's nomination fails both the "independent" and the "mutually agreeable" requirements because of Mr. Reihner's background in related litigation. His prior experience from the *Santana* litigation both has the potential to prejudice Scranton Products—the party being audited—and is unnecessary for the auditing task.

The Customer Letters are a forward-looking invention of the Settlement Agreement, and an understanding of them requires reference only to the four corners of the Settlement Agreement. The letters are not an industry standard; there is no requirement in NFPA 286, or anywhere else, requiring such letters. The required text of the letter is included in the Settlement Agreement, so there is no substantive judgment regarding whether the content of the letters is appropriate and knowledge of the industry is irrelevant. The only issues are whether the letters were sent in accordance with the agreement and whether they are being retained.

The negotiated requirements of an "independent" and "mutually agreeable" third-party auditor were important to Scranton Products, both because of the commercially sensitive nature of the information being reviewed (e.g. customer communications and lists), and so that Scranton Products would not be prejudiced by any alleged past actions. Scranton Products is a separate company from Santana Products, with different management and counsel. Scranton Products has a right to have its compliance with the Settlement Agreement judged by an "independent" "third-party" with no background in the litigation and therefore no potential for preconceived notions on the parties or the prior disputes between

MUNGER, TOLLES & OLSON LLP

Hon. Robert D. Mariani
November 27, 2018
Page 4

them.  At a minimum, "mutually agreeable" must mean something other than the first and only choice of Bobrick, to whom Scranton Products objects.

Further, Bobrick's counsel surely knew of Mr. Reihner *at the time* the parties were negotiating the Settlement Agreement and could have attempted to negotiate for Mr. Reihner to be named as the auditor, or for the auditor to be someone with history in the litigation or experience in the industry, but they chose not to.  Instead, the parties agreed on the opposite of what Bobrick now proposes: the parties negotiated for a requirement that the auditor be an independent third-party, meaning that the auditor should *not* have a background in the parties or litigation.  Bobrick's insistence that only Mr. Reihner is acceptable violates both the spirit and the letter of the Settlement Agreement's requirements.

Scranton Products, on the other hand, has attempted in good faith to find a mutually agreeable auditor.  Scranton Products first proposed (and continues to propose) **Hon. Thomas M. Blewitt (Ret.)** associated with JAMS (profile at Ex. C).  Judge Blewitt served as a magistrate judge for 23 years, across a wide array of subject matters, and is more than qualified to make the determination of whether Scranton Products complied with its obligations under the Settlement Agreement.

Bobrick' only stated objection to Judge Blewitt is that he is associated with JAMS and not a law firm and therefore, according to Bobrick, "would not have the needed resources and support staffing to conduct an audit of the type envisioned under the Settlement Agreement."  Ex. B at 2.  Scranton Products disagrees. The auditor does not need to analyze accounting statements or calculate financial information—he need only confirm whether the Customer Letters were sent and retained and then report that compliance (or not) to Bobrick, per the Settlement Agreement terms.  No formal written report or written analysis is required, and JAMS has administrative support and can provide Judge Blewitt with sufficient resources, at least as comparable to a small law firm.

At the same time Bobrick rejected Judge Blewitt, Bobrick immediately sought to involve Your Honor, despite the "mutually agreeable" requirement of the Settlement Agreement.  *See* Ex. B at 2.  Scranton Products did not want to rush into court and instead suggested that the parties try to resolve the issue amicably by exchanging lists of up to three names.  Scranton Products identified a number of qualified independent individuals, including multiple people with law firm

MUNGER, TOLLES & OLSON LLP

Hon. Robert D. Mariani
November 27, 2018
Page 5

affiliations.  After confirming the absence of conflicts, Scranton Products proposed
three of them, including Mr. Lewis W. Wetzel, who serves both as a Senior Partner
at his law firm and is associated with Keystone Hearings LLC, thus addressing
Bobrick's stated objection with Judge Blewitt.  In addition to Judge Blewitt,
Scranton Products proposed:

- **Mr. Lewis W. Wetzel**, of Wetzel, Caverly, Shea, Phillips & Rodgers and
  Keystone Hearings LLC (profile at Ex. D).  Mr. Wetzel also served as a judge
  in the Pennsylvania court of common pleas from 2010 to 2012.

- **Hon. Joseph Van Jura (Ret.)**, associated with ADR Options (profile at Ex. E).
  Judge Van Jura also has substantial experience in private practice and served on
  the Pennsylvania court of common pleas from 2010 to 2012.

Even though Scranton Products specifically addressed Bobrick's only articulated
concern, Bobrick rejected all of Scranton Products' proposed auditors without
articulating any specific objections—stating only:  "The same issues remain."  Ex.
F at 1.  Bobrick refused to provide any name other than Mr. Reihner.

Scranton Products respectfully requests that Your Honor order the audit to
be conducted by Hon. Thomas M. Blewitt, Mr. Lewis W. Wetzel, or Hon. Joseph
Van Jura.  Scranton Products is also willing to consider other procedures to select
an independent, mutually agreeable third-party auditor, such as the Court providing
three proposed names, with each party getting one 'veto' opportunity.

Respectfully submitted,

By:   /Lisa J. Demsky
LISA J. DEMSKY (State Bar No. 186006)
*(admitted pro hac vice)*
*Attorney for Scranton Products, Inc.*

cc:    All counsel of record (via ECF and email)