# EXHIBIT A

Case 3:14-cv-00853-RDM Document 435-1 Filed 12/29/17 Page 2 of 7

Scott Dillon or a designated replacement on behalf of Scranton Products participating on the call. Neither Party shall have its lawyer(s) participate on such a call.

79. Either Party may provide the Intertek product labeling certification for any Subsequent NFPA 286 Product or the Intertek NFPA 286 test report(s) (with all chemical composition and other similar proprietary information redacted) for any Subsequent NFPA 286 Product to any Person for any reason, without consent by or notice to the other Party and without Court approval, provided that, in accordance with law, neither Party may materially misrepresent the result of any such Intertek test report. In no circumstances may Bobrick provide information concerning the chemical composition of any Subsequent NFPA 286 Product to any Person except as required by law or by court order.

80. Bobrick will not be entitled to advance notice of Scranton Products' introduction of any Subsequent NFPA 286 Product to the market, but Scranton Products will provide Bobrick with the information set forth above in paragraph 77 at the same time that Scranton Products first offers any Subsequent NFPA 286 Product for sale to any Person in the marketplace.

### G. Customer Letters

81. Beginning five (5) business days after the Effective Date, for each and every sale of non-NFPA 286-compliant HDPE toilet partitions (including, but not

limited to, Class A fire-rated HDPE toilet partitions, Class B fire-rated HDPE toilet partitions, and non-fire-rated HDPE toilet partitions), Scranton Products will send the entity that submits the purchase order to Scranton Products (the "purchaser") (regardless of location, because Scranton Products is often not aware of the end user or ultimate locations of installation) a letter in the form of **Exhibit D** (the "Customer Letter").

82.    Scranton Products will send the Customer Letter along with its communication of the purchase order confirmation, in the same manner in which it usually communicates that information to that purchaser (in most cases the dealer) in the ordinary course of business (for example, by email, if that is Scranton Products' usual method of communication with that purchaser, or by Federal Express, United Parcel Service, or U.S. mail if any of those is Scranton Products' usual method of communication with that purchaser).

83.    Scranton Products will retain records of its transmission of the Customer Letters for a period of ten (10) years after the Effective Date.

84.    Scranton Products will permit an audit, at Bobrick's request, but not more frequently than every six months, by an independent, mutually agreeable third-party auditor, to examine Scranton Products' records of transmission and confirm that Scranton Products has, in fact, sent the required Customer Letters.

85.     The audit of the Customer Letters will be performed at Bobrick's expense, provided that if the auditor determines in any particular audit that Scranton Products has not complied with its obligations with respect to sending or keeping records of the Customer Letters, Scranton Products will pay the cost of that particular audit, in addition (if applicable) to any liquidated damages awarded in accordance with the other provisions of this Settlement Agreement.

86.     For each audit of the Customer Letters, Bobrick will receive the summary results of the audit – that is, (a) the fact of whether or not Scranton Products is in compliance with its obligations concerning the Customer Letters, and, (b) if the auditor determines that Scranton Products is not in compliance, the number of instances of non-compliance (i) in the aggregate and (ii) for each purchaser (without identifying any purchaser  or end user by name); provided, however, that Bobrick will not receive the names or other identifying information concerning Scranton Products' purchasers or end users; the pricing information on any work order; or the content of any communication between Scranton Products and any of its purchasers.

87.     After the Effective Date, either Party may provide the Customer Letter to any Person for any reason, without consent by or notice to the other Party and without Court approval.

31

88.    Scranton Products may, at its discretion, modify the Customer Letter from time to time, but only (a) with the prior written agreement of Bobrick, which agreement will not unreasonably be withheld if the changes are non-substantive, or if the changes are substantive but reflect a change in the law or an alteration in the requirements of NFPA 286, or (b) by approval of the Court upon Scranton Products' motion after Bobrick has had notice sufficient to provide it with an opportunity to request to be heard by the Court.

89.    Scranton Products will not include in its marketing materials, advertisements, bulletins, terms and conditions, sales acknowledgements, shipping confirmations, website, or any other document or communication related to the sale of non-NFPA 286 compliant HDPE toilet partitions anything contradicting the substance of the information in the Customer Letter.

## VIII.  BREACHES OF THIS AGREEMENT

### A.  Reasonable Opportunity to Cure

90.    If a Party believes that the other Party has breached the Settlement Agreement, it must provide the other Party with written notice of the breach (consistent with paragraph 156 below) and a reasonable opportunity to cure the breach prior to seeking relief from the Court, which must be sought by filing an Enforcement Motion; provided, however, that no opportunity to cure a breach will

32

Case 3:14-cv-00853-RDM   Document 446-1   Filed 11/27/18   Page 6 of 7

# EXHIBIT D

Thank you for your order with Scranton Products. We appreciate your business and want to make sure you are completely satisfied with your purchase. You have placed an order for one of our products that is not NFPA 286 compliant. NFPA 286 is a fire test that is intended to help evaluate the flammability characteristics of a wall and ceiling interior finish where such materials constitute the exposed interior surfaces of buildings.

The International Code Council ("ICC") publishes a list of states and territories that have adopted a version of the International Building Code ("IBC") that required HDPE bathroom partitions to pass the NFPA 286 test. As of July 2017, according to a chart published by the ICC, at least 43 states and the District of Columbia have adopted a version of the IBC that requires HDPE bathroom partitions to pass the NFPA 286 room corner test, and at least 5 states have adopted versions of the IBC that generally require HDPE bathroom partitions to pass the NFPA 286 room corner test with limitations allowing for local variations. The ICC's current summary of jurisdictions and their adoptions of these regulations can be found at:

https://cdn-web.iccsafe.org/wp-content/uploads/Master-I-Code-Adoption-Chart-latest.pdf

This letter is not intended to provide you with legal advice about your obligations or about building code requirements. You or the architect or designer on your project should consult the local state and building codes in effect in the area where the partitions are intended to be installed to see if the applicable building code requires HDPE bathroom partitions to be NFPA 286 compliant in the area of installation.

If you have placed an order for non-NFPA 286 compliant bathroom partitions in a jurisdiction that requires HDPE bathroom partitions to be NFPA 286 compliant, and you would like to cancel this order for non-NFPA 286 compliant partitions, you may do so within fourteen (14) days of the date of this letter. If you choose to cancel your order, you may apply the amount already paid toward a purchase of our NFPA 286 compliant partitions, or we will refund the amount you have paid for this order.

Please feel free to call me if you have any questions.