# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BOBRICK WASHROOM EQUIPMENT, INC.,

    Plaintiff,

v.

SCRANTON PRODUCTS, INC.,

    Defendant.

:CIVIL ACTION NO. 3:14-CV-853
:(JUDGE MARIANI)

## MEMORANDUM OPINION
## I. INTRODUCTION

Here the Court considers Bobrick Washroom Equipment, Inc.'s Motion to Strike Allegations Regarding Confidential Settlement Negotiations and for a Protective Order (Doc. 465). With the motion, Plaintiff Bobrick Washroom Equipment, Inc. ("Plaintiff") asks the Court to strike five paragraphs from Scranton Products Inc.'s Response to Bobrick Washroom Equipment, Inc.'s Motion to Enforce Settlement Agreement (Doc. 453). Plaintiff asserts that it seeks to strike the material contained in paragraphs 58, 60, 61, 62, and 65[1] because the "allegations disclos[e] and mischaracterize[e] expressly designated confidential settlement communications." (Doc. 466 at 6.) Plaintiff also seeks a protective order to

---

[1] Plaintiff's motion identifies the paragraphs as 58, **50,** 61, 62, and 65. (Doc. 453 at 1.) However, the Court considers this a typographical error in that the supporting brief identifies paragraph 60 rather than paragraph 50 and the substance of paragraph 60 is consistent with the description of the matter at issue.

"prohibit[] Scranton Products from conducting discovery into those settlement communications and further referring to them in pleadings or otherwise before the Court." (*Id.*) For the reasons discussed below, the Court will grant Plaintiff's motion as modified by this Memorandum Opinion.

## II. BACKGROUND

Defendant Scranton Products, Inc. ("Defendant") filed its response to Plaintiff's enforcement motion in accordance with the Settlement Agreement ("SA") which the Court approved with its March 6, 2018, Order (Doc. 444 at 2 (citing revised Settlement Agreement (Doc. 435)). Defendant's filing responded to Plaintiff's allegations that Defendant had violated the Settlement Agreement by not sending the "Customer Letter" the parties had agreed would be sent to each purchaser of Defendant's "non-NFPA 286-compliant HDPE toilet partitions" (Doc. 435 ¶ 81)[2] in the proper manner and form (Doc. 452 at 5-8) and

---

[2] The National Fire Protection Association ("NFPA") has promulgated "Standard Methods of Fire Tests for Evaluating Contribution of Wall and Ceiling Interior Finish to Room Fire Growth," also known as NFPA 286." (Doc. 435 ¶ 1.) In Bobrick Washroom Equipment, Inc.'s Motion to Enforce Settlement Agreement (Doc. 452), Plaintiff states that

> Forty-eight states, the District of Columbia, and several U.S. territories have enacted building codes that include some form of a requirement that toilet partitions made of HDPE comply with the NFPA 286 standard for purposes of fire safety. Nevertheless, SP continues to sell non-NFPA 286-compliant HDPE toilet partitions nationwide.

(Doc. 452 ¶ 1.) In its response, Defendant states the following:

> Scranton admits that certain, but not all, jurisdictions in the United States have adopted building codes requiring HDPE toilet partitions to comply with the NFPA 286 fire-safety standard, and that Scranton sells both NFPA 286-compliant partitions and partitions that do not comply with NFPA 286 but comply with ASTM E 84, the other common fire-safety standard applicable to toilet partitions.

2

Defendant had failed to timely cure the alleged breach retroactively or prospectively (*id.* at 11-20).

Plaintiff alleges the following specific breaches of the Settlement Agreement which took place from "March 2018 until at at least March 2019" (Doc. 452 ¶ 8): 1) Defendant did not send the Customer Letter "along with" a purchase order confirmation as required by the Settlement Agreement (Doc. 435 ¶ 82) but rather sent it as page 3 of the purchase order communication (Doc. 452 ¶¶ 13-16); and 2) Defendant's letter was not in the proper form because the font style and size deviated from the agreed upon form and the communication was not signed by any identifiable person (*id.* ¶¶17-19). Regarding cure, Plaintiff states that Defendant agreed to revise the Customer Letter going forward as to matters of form, but Defendant continues to violate the "along with" requirement of the Settlement Agreement because Defendant will continue to send out the communication as the last page of the purchase order confirmation. (*Id.* ¶¶ 31-32.) Plaintiff also maintains that Defendant refuses to take meaningful retrospective corrective action to address the breach of its obligations for the period of at least a year. (*Id.* ¶ 35.) Plaintiff demanded specific corrective action, i.e., initially demanding that Defendant send a corrective letter to each customer who should have, but did not, receive a compliant Customer Letter and later withdrawing that demand and demanding instead that Defendant retrospectively cure the alleged Customer Letter

---

(Doc. 453 ¶ 1.)

breach by sending each relevant customer a follow-up letter similar to that sent as part of its 2017 "Commercial Action." (*Id.* ¶¶ 40, 43.) Defendant states that the latter "Commercial Action" demand would mean that it "would be required to fully refund or replace *any* non-NFPA 286-compliant partition that *any* customer had purchased since the Settlement Agreement went into effect and wanted to replace, whether or not there was evidence that the customer had in fact overlooked the Customer Letter." (Doc. 453 ¶ 65.)

The Settlement Agreement sets out in detail the procedures the parties are to follow when a party believes a breach has occurred and the procedures for enforcement of the Settlement Agreement. (Doc. 435 ¶¶ 90-129.) Regarding an alleged breach, if a party believes that the other party has breached the Settlement Agreement, it must provide notice of the breach and a reasonable opportunity to cure, three months being the presumptively reasonable time. (*Id.* ¶¶ 90, 92.) Following the exhaustion of the reasonable cure period, the party alleging breach may bring an Enforcement Motion (which Plaintiff has done here (Doc. 452)) to bring the matter before the Court for determination pursuant to the processes set out in the Settlement Agreement. (Doc. 435 ¶ 91.)

The Court is the arbiter of such motions because the parties requested, and the Court agreed as a part of the Settlement Agreement, to

> retain jurisdiction for a period of ten (10) years from the Effective Date in order to enforce the Settlement Agreement and to adjudicate any dispute regarding or arising out of the Settlement Agreement, including the breach, termination, interpretation, or validity hereof, as well as the assessment and imposition of liquidated damages hereunder.

4

(Doc. 435, SA ¶ 19.) The parties further agreed that the enforcement provisions set out in the Settlement Agreement are the only means by which the parties may enforce their rights for a breach of the Settlement Agreement. (*Id.* ¶ 129.)

> Specifically, the Parties are not entitled to file lawsuits or seek relief in any other proceeding or forum to enforce their rights under Part VIII of this Agreement. Nor shall the Parties be entitled to a jury to consider and decide the arguments set forth in support of or in defense to the Enforcement Motion. All decisions and orders of the Court (including orders by the discovery master) arising out of this Settlement Agreement or any Enforcement Motion hereunder, including but not limited to any order compelling or denying requested discovery, any order granting or denying any Enforcement Motion in whole or in part, any order awarding or denying liquidated damages or injunctive relief, any order requiring a Party found to be in breach to pay the other Party's reasonable attorneys' fees and costs, and any order interpreting the terms of this Settlement Agreement or requiring specific performance thereof, shall be non-appealable, and the Parties hereby waive any and all rights to appeal any such decision or order.

(*Id.*)

Thus, in its capacity as sole arbiter of post-settlement disputes, the Court not only has jurisdiction over Bobrick Washroom Equipment, Inc.'s Motion to Enforce Settlement Agreement (Doc. 452) and Bobrick Washroom Equipment, Inc.'s Motion to Strike Allegations Regarding Confidential Settlement Negotiations and for a Protective Order (Doc. 465), but the Court must also set the parameters of the proceedings going forward. At the Status Conference held on February 14, 2020, the Court agreed to address Plaintiff's motion to strike before proceeding with the enforcement procedures set out in the Settlement Agreement. However, in doing so, aspects of Plaintiff's enforcement motion and relevant provisions of the Settlement Agreement must be considered.

## III. ANALYSIS

As noted above, with Bobrick Washroom Equipment, Inc.'s Motion to Strike Allegations Regarding Confidential Settlement Negotiations and for a Protective Order (Doc. 465), Plaintiff asks the Court to strike certain settlement-discussion material and to issue a related protective order.

### A. Motion to Strike

Plaintiff seeks to strike the identified material pursuant to Federal Rule of Civil Procedure 12(f), material which it characterizes as "allegations regarding confidential settlement negotiations." (Doc. 465 at 1.) Plaintiff asserts that Defendant's disclosures contravene "the policies underlying Federal Rule of Evidence 408 and controlling caselaw applying those principles at the pleading stage and during discovery." (Doc. 466 at 6.) Defendant refutes Plaintiff's argument on several grounds: Rule 408 generally does not cover pleadings; the disputed statements do not constitute settlement communications under Rule 408; and, even if the statements were settlement negotiations, they are being offered for a permissible purpose, "not to disprove the validity of Bobrick's claim of breach, but to show that Scranton acted in 'good faith' within the meaning of the Agreement such that it is contractually entitled to a second opportunity to cure the alleged breach." (Doc. 467 at 7.)

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P.

6

12(f). A district court possesses "considerable discretion in disposing of a motion to strike under Rule 12(f)," but such motions are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." *Krisa v. Equitable Life Assur. Soc.*, 109 F.Supp.2d 316, 319 (M.D. Pa.2000) (quotations and citations omitted).

Federal Rule of Evidence 408 addresses "Compromise Offers and Negotiations" and provides as follows:

> **(a) Prohibited Uses.** Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> **(1)** furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
>
> **(2)** conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
>
> **(b) Exceptions.** The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408.

First, the Court concludes that, with limited exceptions, the material Plaintiff wants to strike from Defendant's response to its enforcement motion relates to Plaintiff's offer of a cash settlement in lieu of a retrospective cure for Defendant's alleged breach of the Settlement Agreement. Because the pending enforcement action requires the Court to

initially determine whether a breach occurred and, if so, whether Defendant cured the breach, Plaintiff's settlement offer is not relevant to the objective inquiry into these matters. Rather than the parties' subjective expectations and interpretations of the Settlement Agreement and breach issues, the Court will compare Defendant's *actions* which Plaintiff allege constitute breaches of the Settlement Agreement with the terms of the Settlement Agreement. Likewise, the Court will compare Defendant's *actions* taken in attempting to cure the alleged breach with the requirements of the Settlement Agreement. As the Court explained at the February 14, 2020, Status Conference, in determining whether there was a breach and whether there were appropriate and required efforts to cure, the Court does not need to know the exchanges of statements between the parties. Rather, the Court needs to know what the parties did. (*See* Doc. 476 at 28.)

Defendant maintains that it may establish its good faith effort to cure "with evidence that it engaged in lengthy and sincere dialogue with Bobrick over the form of the cure, and that Bobrick made a series of unreasonable, shifting cure demands" and this is relevant to whether it is entitled to another reasonable period of time to cure. (Doc. 467 at 18 (citing Doc. 435 § 93).) The Court does not dispute that the forms of cure discussed by the parties may be relevant to whether Defendant's actions were good faith attempts to cure. However, this conclusion does not render the settlement negotiations relevant to the court's Enforcement Action inquiry for numerous reasons.

8

Paragraph 93 of the Settlement Agreement is a pre-Enforcement Action provision and states in pertinent part as follows:

> If a Party provides written notice of a breach under the Settlement Agreement, and the other Party attempts in good faith to cure the breach but fails to cure the breach, then, following a subsequent written notice by the non- breaching Party, the breaching Party will have another reasonable period of time to cure the breach.

(Doc. 435 ¶ 93.) Because the dispute between the parties is now at the enforcement stage, the relevance of this provision is not apparent.

In Scranton Products Inc.'s Response to Bobrick Washroom Equipment, Inc.'s Motion to Enforce Settlement Agreement (Doc. 453), Defendant asserted that "[b]ecause Scranton (1) never breached the Settlement Agreement in the first place and (2) indisputably cured the minor purported 'breaches' that Bobrick identified, the Court should deny the motion." (Doc. 453 at 4.) Defendant did not assert in its response that Plaintiff's enforcement motion was premature because Defendant was entitled to another cure period, nor has Defendant made such an argument since.

Further, even if the Court had reason to decide whether Defendant's actions were "attempts in good faith to cure the breach," (Doc. 435 ¶ 93), the Court would do so based on a comparison of actions themselves with the requirements of the Settlement Agreement. While Defendant's subjective motivation for undertaking the actions it took in attempting to cure the breach may be relevant to whether it attempted *in good faith* to cure

9

the alleged breach, Plaintiff's settlement offers are not indicative of whether Defendant attempted in good faith to cure a breach.

Importantly, Defendant would not be deprived of demonstrating its good faith to cure by showing that it "engaged in lengthy and sincere dialogue with Bobrick over the form of the cure, and that Bobrick made a series of unreasonable, shifting cure demands" (Doc. 467 at 18) because the course of conduct between the parties regarding cure remains of record after settlement-related material is stricken. Considered in this context, Defendant will not be not deprived of evidence which could support its assertion that its good faith performance is relevant to the matters at issue under the Restatement (Second) of Contracts § 205 cmt. A (1981) (Doc. 467 at 18-19).

Finally, the Court notes that "good faith" is relevant to the Court's determination of the amount of liquidated damages should the Court conclude that such damages are warranted. (Doc. 435 ¶ 100.) However, the controlling provision does not relate to cure. Rather, it states that "the Court may consider whether there was a good faith dispute as to whether there was a breach, or whether the breach was willful." (*Id.*) This provision involves pre-cure conduct and the settlement discussions involve conduct which occurred after the breach. Therefore, those discussions are not relevant to the "good faith" of the parties to be considered pursuant to paragraph 100.

The foregoing analysis indicates that settlement discussions are not relevant to any issue raised with Plaintiff's underlying enforcement action. In Rule 12(f) terms, the

10

settlement discussions which occurred after the alleged breach are immaterial and impertinent to the matters at issue. Therefore, insofar as paragraphs 58, 60, 61, 62, and 65 contain material related to settlement, that material will be stricken. The Court concludes that this is the appropriate course of action here because evidence related to settlement confuses the matters at issue, i.e., the Court is concerned with whether Defendant breached the Settlement Agreement and whether Defendant cured the breach--the Settlement Agreement does not contain any provision related to attempts to settle an alleged breach and, therefore, the Court is not concerned with the parties' settlement discussions. Because such extraneous evidence serves only to obfuscate the real issues and unnecessarily complicate proceedings going forward, the Court will exercise its discretion and strike the following material: the last sentence of paragraph 58; and paragraphs 60, 61, 62, and 65 in their entirety.[3]

---

[3] With immaterial and impertinent matter stricken from paragraph 58, it reads as follows:

Following Scranton's March 14, 2019 letter, Scranton's counsel and Bobrick's counsel had a telephone call on March 18, 2019. On the call, Scranton's counsel confirmed that Scranton was willing to address Bobrick's complaints about the Customer Letter, and that it would do so by taking both prospective and retrospective actions. Scranton's counsel explained to Bobrick's counsel that Scranton would need to continue to have an automated process for sending the Customer Letters along with the purchase order confirmations, to minimize the risk of human error. . . .

(Doc. 453 ¶ 58 (ellipsis indicating stricken material).)

This conclusion is bolstered by the Court's consideration of settlement-related matters in the Federal Rule of Evidence 408 context. As set out in Plaintiff's supporting brief, courts have looked to Rule 408 in determining whether allegations related to settlement negotiations should be stricken from pleadings and briefs and have concluded that the material is properly stricken when it is not relevant to a claim or defense. (Doc. 466 at 17-18 & n.4 (citing *inter alia Kibbie v. BP/Citibank*, Civ. A. No. 08-1804, 2009 WL 2950365, *8 (M.D. Pa. Sept. 9, 2009); *Terrana v. Nationwide Insurance Co.*, Civ. A. No. 3:13-0861, 2013 WL 12109460, *1-2 (M.D. Pa. May 5, 2013); *DiPietro v. Department of Corrections*, Civ. A. No. 15-1137, 2016 WL 6728297, *2 (M.D. Pa. Nov. 15, 2016)).) As set out above, here the Court has determined that the settlement negotiations are not relevant to the issues before the Court and the conclusion that settlement-related material should be stricken is consistent with the decisions cited.

Although Defendant argues that the cited cases are inapposite because the stricken statements were irrelevant to the parties' claims or defenses and here the disputed statements "are clearly *relevant* to establishing Scranton's good faith in attempting to cure the alleged breaches, regardless of their ultimate admissibility" (Doc. 467 at 17-18), the argument is without merit. As previously discussed in detail, the Court unequivocally does not find the parties' conversations about settlement relevant to whether there was a breach of the Settlement Agreement or an adequate cure. Similarly, the Court does not find the discussions relevant to any aspect of good faith contemplated in the Settlement Agreement.

Notwithstanding these findings, the Court notes that, as an evidentiary rule, Rule 408(b), which provides that "[t]he court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, [or] negating a contention of undue delay" may be invoked in an appropriate circumstance. In other words, if Defendant later seeks to admit evidence of settlement discussions under an exception identified in Rule 408(b), the Court will appropriately entertain the argument.

## B. Protective Order

Plaintiff asks that the Court enter a protective order regarding settlement discussions if the Court grants its request to strike the identified material. (Doc. 466 at 20.) While Defendant views this request as premature, the Court anticipates that the issue will arise if discovery is conducted regarding Bobrick Washroom Equipment, Inc.'s Motion to Enforce Settlement Agreement (Doc. 452). Because the Court has determined that settlement discussions do not relate to any matter which it will consider as the sole arbiter of Bobrick Washroom Equipment, Inc.'s Motion to Enforce Settlement Agreement (Doc. 452), discovery related to settlement discussions is not warranted[4] and the Court's Order will prohibit it.

---

[4] Should the circumstance arise where Defendant seeks to admit evidence of settlement discussions under an exception identified in Rule 408(b), the Court would appropriately entertain the argument as to the discussions alone and NOT as to any additional evidence gained in the course of discovery.

## IV. CONCLUSION

For the reasons discussed above, the Court will grant Bobrick Washroom Equipment, Inc.'s Motion to Strike Allegations Regarding Confidential Settlement Negotiations and for a Protective Order (Doc. 465) as modified by this Memorandum Opinion. Paragraph 58 will be stricken in part and paragraphs 60, 61, 62, and 65 will be stricken in their entirety.[5] Defendant will be prohibited from conducting any discovery related to settlement discussions. An appropriate Order is filed simultaneously with this Memorandum Opinion.

Robert D. Mariani
United States District Judge

---

[5] As noted previously, see supra p. 11 n.3, with immaterial and impertinent matter stricken from paragraph 58, it reads as follows:

> Following Scranton's March 14, 2019 letter, Scranton's counsel and Bobrick's counsel had a telephone call on March 18, 2019. On the call, Scranton's counsel confirmed that Scranton was willing to address Bobrick's complaints about the Customer Letter, and that it would do so by taking both prospective and retrospective actions. Scranton's counsel explained to Bobrick's counsel that Scranton would need to continue to have an automated process for sending the Customer Letters along with the purchase order confirmations, to minimize the risk of human error.

(Doc. 453 ¶ 58.)

14