UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**BOBRICK WASHROOM EQUIPMENT, INC.,**

    **Plaintiff,**

v.

**SCRANTON PRODUCTS, INC.,**

    **Defendant.**

CIVIL ACTION NO. 3:14-CV-853
(JUDGE MARIANI)

## MEMORANDUM OPINION

Here the Court considers the parties' divergent positions on the issue of whether the independent auditor in this case, James E. Swetz, Esquire, should be ordered to release information about his audit in addition to his Summary of Audit Findings issued on May 26, 2020 (Doc. 512-1). (*See* Docs. 512, 513, 515, 518.) For the reasons discussed below, the Court concludes that Mr. Swetz has fulfilled his obligation under the Settlement Agreement and Plaintiff Bobrick Washroom Equipment, Inc., ("Bobrick") is not entitled to receive the information now requested which Bobrick describes as a "table" prepared by Mr. Swetz (hereinafter "Table") (*see, e.g.*, Doc. 512 at 2).

### I. BACKGROUND

The Court will not set out a detailed background of this case and will focus on the facts and Settlement Agreement provisions directly relevant to the narrow issue first raised by Bobrick in correspondence of June 23, 2020 (Doc. 512). Bobrick contends it is entitled to

the Table compiled by Mr. Swetz regarding his audit of the customer letters Defendant Scranton Products, Inc., ("Scranton") is required by the Settlement Agreement to send to certain customers. (Doc. 512 at 2.)

Section G of the Settlement Agreement addresses Customer Letters and provides the following:

> 81. Beginning five (5) business days after the Effective Date, for each and every sale of non-NFPA 286-compliant HDPE toilet partitions (including, but not limited to, Class A fire-rated HDPE toilet partitions, Class B fire-rated HDPE toilet partitions, and non-fire-rated HDPE toilet partitions), Scranton Products will send the entity that submits the purchase order to Scranton Products (the "purchaser") (regardless of location, because Scranton Products is often not aware of the end user or ultimate locations of installation) a letter in the form of Exhibit D (the "Customer Letter").
>
> 82. Scranton Products will send the Customer Letter along with its communication of the purchase order confirmation, in the same manner in which it usually communicates that information to that purchaser (in most cases the dealer) in the ordinary course of business (for example, by email, if that is Scranton Products' usual method of communication with that purchaser, or by Federal Express, United Parcel Service, or U.S. mail if any of those is Scranton Products' usual method of communication with that purchaser).
>
> 83. Scranton Products will retain records of its transmission of the Customer Letters for a period of ten (10) years after the Effective Date.
>
> 84. Scranton Products will permit an audit, at Bobrick's request, but not more frequently than every six months, by an independent, mutually agreeable third-party auditor, to examine Scranton Products' records of transmission and confirm that Scranton Products has, in fact, sent the required Customer Letters.
>
> 85. The audit of the Customer Letters will be performed at Bobrick's expense, provided that if the auditor determines in any particular audit that Scranton Products has not complied with its obligations with respect to sending or keeping records of the Customer Letters, Scranton Products will pay the cost

of that particular audit, in addition (if applicable) to any liquidated damages awarded in accordance with the other provisions of this Settlement Agreement.

86. For each audit of the Customer Letters, Bobrick will receive the summary results of the audit – that is, (a) the fact of whether or not Scranton Products is in compliance with its obligations concerning the Customer Letters, and, (b) if the auditor determines that Scranton Products is not in compliance, the number of instances of non-compliance (i) in the aggregate and (ii) for each purchaser (without identifying any purchaser or end user by name); provided, however, that Bobrick will not receive the names or other identifying information concerning Scranton Products' purchasers or end users; the pricing information on any work order; or the content of any communication between Scranton Products and any of its purchasers.

87. After the Effective Date, either Party may provide the Customer Letter to any Person for any reason, without consent by or notice to the other Party and without Court approval.

88. Scranton Products may, at its discretion, modify the Customer Letter from time to time, but only (a) with the prior written agreement of Bobrick, which agreement will not unreasonably be withheld if the changes are non-substantive, or if the changes are substantive but reflect a change in the law or an alteration in the requirements of NFPA 286, or (b) by approval of the Court upon Scranton Products' motion after Bobrick has had notice sufficient to provide it with an opportunity to request to be heard by the Court.

89. Scranton Products will not include in its marketing materials, advertisements, bulletins, terms and conditions, sales acknowledgements, shipping confirmations, website, or any other document or communication related to the sale of non-NFPA 286 compliant HDPE toilet partitions anything contradicting the substance of the information in the Customer Letter.

(Doc. 452-1.)

On May 26, 2020, having completed an audit requested by Bobrick, Mr. Swetz issued his Summary of Audit Findings ("Report"). (Doc. 512-1.) In his Report, Mr. Swetz

3

provided a brief description of "How the Audit was Conducted," "The Scope of the Audit Under the Settlement Agreement," and "Methodology and Findings," before setting out the following Conclusion:

> Based upon my review of the customer order records for the period of March 13, 2018 through April 1, 2019, I find that Scranton has sent the Customer Letter to purchasers of non-NFPA 286-Compliant HDPE partitions without consideration of the issues the parties are litigating in the enforcement proceedings before Judge Mariani.

(Doc. 512-1 at 4.)

The "enforcement proceedings" referenced is Bobrick Washroom Equipment, Inc.'s Motion to Enforce Settlement Agreement (Doc. 452) filed on June 6, 2019. In the Motion, Bobrick alleges the following specific breaches of the Settlement Agreement which took place from "March 2018 until at least March 2019" (Doc. 452 ¶ 8): 1) Scranton did not send the Customer Letter "along with" a purchase order confirmation as required by the Settlement Agreement (Doc. 435 ¶ 82) but rather sent it as page 3 of the purchase order communication (Doc. 452 ¶¶ 13-16); and 2) Scranton's letter was not in the proper form because the font style and size deviated from the agreed upon form and the communication was not signed by any identifiable person (*id.* ¶¶17-19).

In the "Methodology and Findings" section of his Report, Mr. Swetz stated that

> [i]n reviewing the records, I made no judgment concerning the issues Bobrick has raised in the enforcement proceedings before Judge Mariani. [Doc. 452]. The issues addressed in the enforcement action, including *inter alia*, whether the font size of the Customer Letter was conspicuous, whether the Customer Letter could be appended to the purchase order or whether it had to be sent separately, whether Scranton could change any of the letter's language and

4

whether any breach occurred or was cured, were not relevant to the audit. If the Customer Letter was part of the communication or confirmation of the purchase order to the customer of a partition governed by the Settlement Agreement. [See Doc. 452, Exhibit 3], it passed the audit.

(Doc. 512-1 at 3.)

Bobrick now seeks a Table compiled by Mr. Swetz which summarizes information that it contends falls under paragraph 86(b) of the Settlement Agreement which requires disclosure of the information to Plaintiff. (Doc. 512 at 2.) Scranton contends that Bobrick is not entitled to any further information about the audit under the Settlement Agreement and the Settlement Agreement omits any role for the Court in entertaining appeals or challenges to the auditor's conclusions. (Doc. 513 at 8-12.) In its reply to Scranton's arguments, Bobrick reiterates its position that it was entitled to additional information and points to documents produced by Scranton which it claims provide examples of additional breaches that it "believes will be reflected more systematically in Mr. Swetz's table." (Doc. 515 at 3.) Bobrick's reply does not address Scranton's second point regarding the Settlement Agreement's omission of any provision assigning the Court the role of considering appeals or challenges to the independent auditor's report.

## II. ANALYSIS

Pursuant to the Settlement Agreement, the third-party auditor, Mr. Swetz, was "to examine Scranton Products' records of transmission and confirm that Scranton Products has, in fact, sent the required Customer Letters." (Doc. 452-1 ¶ 84.) Mr. Swetz did not consider the matters currently before the Court in the Motion to Enforce Settlement

5

Agreement (Doc. 452) relevant to the audit. (Doc. 512-1 at 2.) He specifically stated in his Report that "[i]f the Customer Letter was part of the communication or confirmation of the purchase order to the customer of a partition governed by the Settlement Agreement . . . , it passed the audit." (Doc. 512-1 at 3.) Mr. Swetz did not find that any Customer Letter did not pass the audit. (See Doc. 512-1.)

The Court concludes that Mr. Swetz properly fulfilled his role auditor's role. The Court approves of his limitation of the scope of his function and his determination that it was not his role to decide whether the letters themselves were "in the form of Exihibit D" (Doc. 452-1 ¶ 81), the exemplary "Customer Letter" attached to the Settlement Agreement. The Court further approves of Mr. Swetz' conclusion that it was not his position to interpret the "along with" language of paragraph 82 which is at issue in the pending enforcement motion. (See Doc. 512-1 at 3.) He appropriately limited his role to determining whether the "Customer Letter was part of the communication or confirmation of the purchase order to the customer of a partition governed by the Settlement Agreement." (Id.)

Notably, long before he issued his Report, Mr. Swetz apprised the parties of what he would look at when conducting the audit. (Doc. 513-2 at 4-5.) He did so during a telephonic conference conducted on July 12, 2019, which followed lengthy correspondence from Bobrick setting out its interpretation of the auditor's role and included Bobrick's assessment that the audit is

> a qualitative inquiry into whether SP has performed its obligation to actually send the required Customer Letters in a form and manner that (a) was agreed

6

> upon by the parties and (b)serves the parties' stated purpose of encouraging the purchase and installation of code-compliant HDPE partitions and, conversely, discouraging the purchase and installation of non-code-compliant—and potentially hazardous—HDPE partitions.

(Doc. 513-1 at 3.) Mr. Swetz rejected Bobrick's interpretation of his role (*see, e.g.*, Doc. 513-2 at 4), yet Bobrick proceeded with the audit and raised no issue about Mr. Swetz' limitations at the time.

Beyond providing the general observations concerning the propriety of Mr. Swetz' interpretation of his role viewed in the context of paragraph 84 of the Settlement Agreement, the Court finds no basis in the Settlement Agreement for the Court to review the methodology used by Mr. Swetz or determine the accuracy of his findings based on his evaluation of the relevant material. Bobrick does not dispute Scranton's argument on this point. (Doc. 513 at 11-12; Doc. 515.) Thus, insofar as either party finds fault with Mr. Swetz' Report, the Court will not function in an appellate capacity.

Finally, the Court notes that Bobrick has access through discovery in the pending enforcement action to obtain the information it now seeks. If Bobrick wants to know precisely when a Customer Letter was sent, including the relationship between the letter and purchase order with which it is associated, that information is discoverable. If, through discovery, Bobrick finds what it considers a breach of the Settlement Agreement not previously identified, it is not precluded from raising that issue in an appropriately filed

motion. Therefore, the determinations regarding Mr. Swetz' role and the Court's role do not hamper Bobrick's right to enforce the Settlement Agreement.[1]

### III. CONCLUSION

For the foregoing reasons, the Court will not order the independent auditor to release any additional information about his audit. He has provided his Summary of Audit Findings and this fulfills the role he was assigned under the Settlement Agreement. A separate Order is filed simultaneously with this Memorandum Opinion.

Robert D. Mariani
United States District Judge

---

[1] Mr. Swetz' audit will not be considered by the Court for any purpose beyond its narrow findings that "Scranton has sent the Customer Letter to purchasers of non-NFPA 286-Compliant HDPE partitions" (Doc. 512-1 at 4).