THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BOBRICK WASHROOM EQUIPMENT,
INC.,

        Plaintiff,

    v.

SCRANTON PRODUCTS, INC.,

        Defendant.

: CIVIL ACTION NO. 3:14-CV-853
: (JUDGE MARIANI)

## MEMORANDUM OPINION
### I. INTRODUCTION

Bobrick Washroom Equipment, Inc.'s Third Motion to Enforce Settlement Agreement (Doc. 704) is pending before the Court. With this motion, Bobrick alleges that Scranton Products is in breach of the motion on three grounds. First, Bobrick alleges that Scranton Products' refusal to amend the Customer Letter in the form requested by Bobrick breaches paragraphs 5 and 136 of the Settlement Agreement because the Customer Letter contains inaccurate information. (Doc. 704 ¶ 2.) Second, Bobrick alleges that the format of Scranton Products' Color Selection Form violates paragraphs 5 and 89 of the Settlement Agreement because it drives customers towards its non-NFPA 286 compliant products by offering more color and texture options than for its NFPA 286-compliant products and Scranton Products continues to distribute this form despite the alleged change in the need for toilet partitions to be NFPA 286 compliant. (*Id.* ¶ 3.) Third, Bobrick alleges that Scranton Products has made,

and continues to make, false statements about its toilet partitions in its marketing materials regarding fire ratings in violation of paragraphs 5 and 89 of the Settlement Agreement. (*Id.* ¶ 4.)

## II. ANALYSIS

The Court's consideration of the Settlement Agreement begins with the question of whether the Court has jurisdiction to adjudicate the matters raised in Bobrick Washroom Equipment, Inc.'s Third Motion to Enforce Settlement Agreement (Doc. 704). The Court's jurisdiction is addressed in paragraph 19 of the Settlement Agreement.

> The Parties intend that the Court will approve the Settlement Agreement and will retain jurisdiction for a period of ten (10) years from the Effective Date in order to enforce the Settlement Agreement and to adjudicate any dispute regarding or arising out of the Settlement Agreement, including the breach, termination, interpretation, or validity hereof, as well as the assessment and imposition of liquidated damages hereunder.

(Settlement Agreement ¶ 19.)

The Court strictly construes the limitation of the Court's jurisdiction to disputes "regarding or arising out of the Settlement Agreement" and concludes that a dispute does not satisfy this requirement because a party says so. Rather, the dispute is "regarding or arising out of the Settlement Agreement" only if it is plausibly grounded in a provision of the Settlement Agreement. The Court will now address, as a threshold matter, whether Bobrick's alleged breaches satisfy this fundamental jurisdictional requirement.

2

## A. Amendment of the Customer Letter

In support of its allegation that Scranton Products' refusal to amend the Customer Letter in the form requested by Bobrick is a breach of the Settlement Agreement (Doc. 704 ¶¶ 2, 7-44), Bobrick relies on paragraphs 5 and 136 of the Settlement Agreement.

> Bobrick and Scranton Products have a shared interest in protecting public safety, encouraging compliance with fire, life safety, and building codes, educating market participants such as architects, specification writers, and contractors about relevant code requirements, and promoting fair and vigorous competition – including truthful advertising – in the market for toilet partitions.

(Settlement Agreement ¶ 5.)

> The Parties each agree to perform all acts and execute, deliver, lodge, and/or file all documents necessary to carry out the provisions of this Settlement Agreement.

(Settlement Agreement ¶ 136.)

Bobrick asserts that Scranton Products' refusal to amend the Customer Letter violates each of these provisions. As to paragraph 5, Bobrick alleges that

> Scranton Products' refusal to update the Customer Letter undermines the purpose of the Settlement Agreement because Scranton Products' customers who purchase non-NFPA 286-compliant toilet partitions and therefore receive the current version of the Customer Letter are being provided information about the products they purchase from Scranton Products that is out-of-date and inaccurate. The result is that those customers are led to believe by Scranton Products that the NFPA 286 requirement may not apply to them, when Scranton Products knows that it does. This effectively undermines the parties' shared agreed-upon obligation to "encourag[e] compliance with fire, life safety, and building codes, educat[e] market participants such as architects, specification writers, and contractors about relevant code requirements, and promot[e] fair and vigorous competition – including truthful advertising – in the market for toilet partitions." Settlement Agreement ¶5.

3

> ... Annually sending customers tens of thousands of knowingly out-of-date and inaccurate letters about the relevant life safety codes is a blatant disregard of Scranton Products' continuing commitment under ¶5 to "educate" those same customers about the relevant code requirements and against public interest.

(Doc. 704 ¶¶ 42-43.)

As to paragraph 136, Bobrick alleges that

> In addition, Scranton Products' refusal to update the language in the Customer Letter constitutes a direct breach of ¶136 of the Settlement Agreement. Paragraph 136 of the Settlement Agreement states, "[t]he Parties each agree to perform all acts and execute, deliver, lodge, and/or file all documents necessary to carry out the provisions of this Settlement Agreement." The Settlement Agreement does not preclude ¶136 from applying to Scranton Products' Customer Letter obligations, and, when interpreted in the context of the fire and life safety educational purpose of the Settlement Agreement as set forth in ¶5, Scranton Products' obligation to "perform all acts and ... deliver ... all documents necessary to carry out the provisions of this Settlement Agreement" under ¶136 includes an obligation to update the Customer Letter as needed so that it is accurate and, in fact, provides customers with the up-to-date and accurate information as the parties intended. Scranton Products has not done so.

(Doc. 704 ¶ 44.)

The Court concludes that neither of these general provisions provide the Court with jurisdiction to adjudicate the allegation that Scranton Products breached the Settlement Agreement by failing to change the Customer Letter in the manner requested by Bobrick because specific provisions of the Settlement Agreement directly address the matter at issue. Paragraph 81 requires that Scranton Products send the Customer Letter "in the form of Exhibit D." The relevant text in Exhibit D states as follows:

4

> The International Code Council ("ICC") publishes a list of states and territories that have adopted a version of the International Building Code ("IBC") that required HDPE bathroom partitions to pass the NFPA 286 test. As of July 2017, according to a chart published by the ICC, at least 43 states and the District of Columbia have adopted a version of the IBC that requires HDPE bathroom partitions to pass the NFPA 286 room corner test, and at least 5 states have adopted versions of the IBC that generally require HDPE bathroom partitions to pass the NFPA 286 room corner test with limitations allowing for local variations. The ICC's current summary of jurisdictions and their adoptions of these regulations can be found at:
>
> https://cdn-web.iccsafe.org/wp-content/uploads/Master-I-Code-Adoption-Chart-latest.pdf

(Ex. D to Settlement Agreement (Doc. 435 at 200).)

> Paragraph 88 provides that
>
> Scranton Products may, at its discretion, modify the Customer Letter from time to time, but only (a) with the prior written agreement of Bobrick, which agreement will not unreasonably be withheld if the changes are non-substantive, or if the changes are substantive but reflect a change in the law or an alteration in the requirements of NFPA 286, or (b) by approval of the Court upon Scranton Products' motion after Bobrick has had notice sufficient to provide it with an opportunity to request to be heard by the Court.

(Settlement Agreement ¶ 88.)

> Bobrick urges the Court to adopt the following interpretation of paragraph 88:
>
> ¶88, which allows Scranton Products to update the Customer Letter at its "discretion," when read in the context of the overall purpose set forth in ¶5, obliges Scranton Products to exercise that discretion reasonably and within the stated purpose of the Settlement Agreement. In light of the Settlement Agreement's core purpose to "educate" market participants about relevant codes, Scranton Products' "discretion" cannot be used to flood the market with out-of-date and inaccurate and misleading information in the letter being used.

(Doc. 704 ¶ 35.)

5

The Court rejects Bobrick's interpretation of paragraph 88. As decided in the context of Bobrick's first enforcement motion (Doc. 452), the parties' agreed that Scranton Products violated paragraph 88 and breached the Settlement Agreement by changing the wording of one sentence in the body of the communication set forth in Exhibit D.[1] (Doc. 730 at 16-17.) The Court found that testimony supported "the conclusion that the parties negotiated that a change of wording was prohibited." (*Id.* at 19.)

The determination that the parties bargained for strict adherence to the wording set forth in Exhibit D and the parties bargained for and conferred only on Scranton Products the discretion to modify the wording of the Customer Letter with Bobrick's approval or, in the absence of such approval, to obtain approval of the Court forecloses a finding that Bobrick has a basis to assert a breach of the Settlement Agreement. This is so because Scranton

---

[1] The Court's Memorandum Opinion included the following:

> [Bobrick's chairman and CEO Marc] Loucheim testified that "we negotiated the fact that they weren't allowed to change one word, without our permission, and that was very intentional, from our perspective." (Hr'g. Tr. Day 1, 63:3-6.) On the issue of the word change, an exchange took place between Bobrick's counsel and [Scranton Products' president Scott] Van Winter where Van Winter was asked whether he violated paragraph 88. (Hr'g Tr. Day 2, 63:11-13.) He responded: "I agree paragraph 88 is clear. My point is, I think, in the context of communicating to the customers, the customer letter, as we do in the ordinary course of business, was the back-drop for changing the word [me to Scranton Products]." (*Id.*, 64:13-16.) When the Court ruled that Van Winter had not answered the question of whether he violated paragraph 88, Bobrick's counsel again asked if he had violated paragraph 88 and Van Winter responded, "It is. And again, independent of other things in the agreement that you think provided some flexibility, then, yes." (*Id.* 65:19-20.)
>
> The Court construes this as an admission that the change in wording in the closing line of the Customer Letter from "me" to "Scranton Products" was a breach of the SA.

(Doc. 730 at 16-17.)

6

Products did not exercise the discretion afforded it in paragraph 88. The parties could have bargained for future changes in the law regarding NFPA 286 testing to be reflected in the Customer Letter and/or the parties could have bargained for Bobrick to initiate modifications in the Customer Letter and/or seek Court approval of the requested modification following a refusal of Bobrick's request by Scranton Products, but the Settlement Agreement demonstrates that they did not do so.

Further, paragraph 88 specifically addresses the modification at issue here, i.e., a change in the Customer Letter to "reflect a change in the law or an alteration in the requirements of NFPA 286," and makes it *discretionary* for Scranton Products to request such a modification. Thus, any request to make the bargained-for discretion on this issue mandatory, as Bobrick seeks to do in this case, is not a dispute that legitimately is "regarding or arising out of the Settlement Agreement" (Settlement Agreement ¶ 19).

To the extent that Bobrick requests the Court to elevate the Settlement Agreement's general provisions set out in paragraphs 5 and 136 over the specific provisions found in paragraphs 81 and 88 and alter the Court's previous determinations regarding the interpretation of these specific provisions,[2] well-established principles of contract law require otherwise. "It is well-established in contract law that specific and exact terms are given

---

[2] The Court recognizes that Bobrick did not have the benefit of the Court's analysis of the relevant provisions before filing its third enforcement motion under consideration here given that the Court had not issued its decision regarding Bobrick's first enforcement motion (Doc. 452) when Bobrick filed its third motion.

greater weight than general language." *Petroleos Mexicanos Refinacion v. M/T KING A*, 554 F.3d 99, 113 (3d Cir.2009) ("[T]he more specific term should usually be held to prevail over the more general term." 5 Corbin on Contracts § 24.23 (2007)); *see also* Joel Prentiss Bishop, Commentaries on the Written Laws and Their Interpretation § 112a 106-07 (1882) ("[T]he general and specific in legal doctrine may mingle without antagonism, the specific being construed simply to impose restrictions and limitations on the general."). "If there is a conflict between a general provision and a specific provision, the specific provision prevails," a rule that applies to contradictory provisions in a single statue and contradictory provisions in a contract. Antonin Scalia & Bryan A. Garner, Reading Law: The Interpreting of Legal Texts 183-184 (2012) (explaining "General/Specific Canon," i.e.,).[3]

Based on the foregoing, the Court finds no authority in the Settlement Agreement to compel Scranton Products to do anything other than that required by paragraph 88 when it comes to modifying the Settlement Agreement. Because the parties specifically bargained for the method to modify the language in the Customer Letter related to changes in the law

---

[3] Bobrick recognized the specific-over-general principle of construction in the context of Bobrick Washroom Equipment, Inc.'s Motion to Enforce Settlement Agreement. (*See* Doc. 671 ¶ 188.)

Bobrick's contrary position here is grounded in its assertion that the Customer Letter is now inaccurate. *See supra* p. 5. However, Bobrick did not, and cannot, show that the information in the Customer Letter is inaccurate. This is so because the information in the Customer Letter concerning jurisdictions requiring bathroom partitions to pass the NFPA 286 test is keyed to a date certain agreed upon by the parties ("[a]s of July 2017"), the Customer Letter does not provide information about any specific jurisdiction, and the recipient of the letter is directed to a link where the International Code Council's "summary of jurisdictions and their adoptions of these regulations can be found." *See supra* p. 5 (quoting Ex. D to Settlement Agreement).

8

and the requirements of NFPA 286, the Court does not find any basis to conclude that it has the authority to amend the Settlement Agreement to impose a different obligation on Scranton Products or otherwise require a modification of the language specifically agreed upon, i.e., a letter containing the language set out in Exhibit D.

## B. Scranton Products' Color Selection Form

The second alleged breach regarding Scranton Products' Color Selection Form relies on paragraphs 5 and 89, the latter of which prohibits documents and communications that contradict the substance of the information in the Customer Letter.[4] (Doc. 704 ¶¶ 3, 46-57.) Paragraph 89 states that

> Scranton Products will not include in its marketing materials, advertisements, bulletins, terms and conditions, sales acknowledgements, shipping confirmations, website, or any other document or communication related to the sale of non-NFPA 286 compliant HDPE toilet partitions anything contradicting the substance of the information in the Customer Letter.

(Settlement Agreement ¶ 89.)

Bobrick specifically alleges that Scranton Products'

> Color Selection Form contradicts the Customer Letter's substance, which includes the imbedded ICC link as a substantive part of the Customer Letter, and is intended to educate customers about the applicability of the NFPA 286 requirement. Scranton Products' failure to maintain an up-to-date and accurate Customer Letter does not absolve it of its obligation under ¶89 to continue to maintain marketing and other materials *that do not contradict the intended (accurate) substance* of the information in the Customer Letter. And, if and when the Customer Letter is finally rendered accurate, that limited local jurisdictions could, but don't, as far as Scranton Products is aware, adopt a less

---

[4] For the reasons set forth previously in the text, the Court considers the specific provision, ¶ 89, over the general, ¶ 5. *See supra* pp. 7-8.

9

> stringent code does not give Scranton Products the latitude to prominently encourage its national customer base to select material that is only acceptable hypothetically, but not in fact. This commercially motivated scheme has resulted in tens of thousands of non-compliant and dangerous HDPE toilet partitions being installed every year in private and public buildings nationwide, including schools, office buildings and courthouse.

(*Id.* ¶ 57 (emphasis added).)

Bobrick's argument shows that the alleged breach of paragraph 89 is not based on the Customer Letter as it is but on a customer letter proposed by Bobrick. An alleged breach based on a non-existent version of the Customer Letter and a non-existent version of the Settlement Agreement is not "a dispute regarding or arising out of the Settlement Agreement" (Settlement Agreement ¶ 19). Therefore, Bobrick's second alleged breach does not present a dispute over which the Court has jurisdiction.

## C. Other Documents

Bobrick alleges that Scranton Products has made, and continues to make, false statements about its toilet partitions in its marketing materials regarding fire ratings in violation of paragraphs 5 and 89 of the Settlement Agreement.[5] (Doc. 704 ¶¶ 4, 46-72.)

Regarding the alleged breach of paragraph 89, Bobrick specifically argues that the misleading conduct

> expressly violates ¶89 of the Settlement Agreement because, by falsely telling customers that its Class B material is also "Fire Rated" and falsely telling customers in its marketing materials that all of its "Fire Rated" options "meet

---

[5] For the reasons set forth previously in the text, the Court considers the specific provision, paragraph 89, over the general, paragraph 5. *See supra* pp. 7-8.

> NFPA 286" when its Class B material does not, Scranton Products has contradicted the substance of the agreed upon information in the Customer Letter. Specifically, these false statements confuse and mislead customers as to whether the customer actually purchased non-compliant toilet partitions and creates the false impression that Class B material is just as fire-code compliant as the NFPA 286 product when it is not.

(Doc. 704 ¶ 68.)

In this threshold jurisdictional review, the Court finds that Bobrick's allegations present a claim of a violation of paragraph 89 which may proceed. For example, Bobrick alleges that assertions made by Scranton Products in various documents about the fire rating of its bathroom partition products and statements indicating that its fire-rated bathroom partitions "meet the acceptance criteria of NFPA 286" (Doc. 704 ¶¶ 60-64) contradict "the substance of the information in the Customer Letter" (Settlement Agreement ¶ 89). Because the Customer Letter says that the recipient of the letter has placed an order "for one of our products that is not NFPA 286 compliant" (Ex. D), Scranton Products' documents indicating that all fire-rated products "meet the acceptance criteria of NFPA 286" may be in conflict with the Customer Letter. Therefore, unlike the previous two asserted grounds for relief where the Court could determine on the face of the motion to enforce that it did not have jurisdiction to adjudicate the dispute, in this instance, the Court has a basis to exercise jurisdiction.

### III. CONCLUSION

For the reasons set forth above, Bobrick Washroom Equipment, Inc.'s Third Motion to Enforce Settlement Agreement (Doc. 704) will be denied for lack of jurisdiction as to

Bobrick's alleged breach based on Scranton Products' refusal to amend the Customer Letter and Bobrick's alleged breach based on the format of Scranton Products' Color Selection Form. The motion will go forward as to Bobrick's alleged breach based on Scranton Products' statements concerning fire ratings of bathroom partitions in its marketing materials. A separate Order will be entered.

_____
Robert D. Mariani
United States District Judge