UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BOBRICK WASHROOM EQUIPMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> SCRANTON PRODUCTS, INC., <br><br> Defendant. | Civil Action No. 3:14-CV-00853-RDM <br><br><br> Hon. Robert D. Mariani |

### SCRANTON PRODUCTS' PRE-HEARING MEMORANDUM

Bobrick's Enforcement Action presents a very narrow set of issues relating to Scranton Products' marketing about the fire rating of its bathroom partitions. Bobrick initially attempted to bring a larger set of claims, but the Court narrowed Bobrick's allegations to the sole issue of whether certain specific marketing ***contradicts the substance*** of the Customer Letter. Despite this narrowing, Bobrick's trial brief barely mentions the actual issues and instead devotes pages upon pages trying get a second (or even third) bite at the apple concerning issues far outside of this Enforcement Action. Stripped of Bobrick's recalcitrant attempts to argue issues this Court has already decided are improper, the evidence relevant to ***the actual issues*** in this case is narrow and straightforward.

First, the limited set of Scranton Products' marketing materials at issue here ***do not contradict the Customer Letter***, and in any event, Scranton Products

1

removed or modified those materials upon being put on notice, thus *curing any possible breach*.

Second, many of the alleged breaches relate to materials that Bobrick *never provided notice* about and as such are not within the scope of this Action, but Scranton Products nonetheless modified or deleted these materials.

Bobrick did not even discuss the actual documents at issue in its trial brief and instead devoted its entire argument to issues clearly outside the scope of this Action. Bobrick spent nearly its entire brief seeking to revive a claim that Scranton Products is not permitted to market (or thus sell) non-NFPA 286-compliant products – the very issue this Court already ruled it lacked jurisdiction to hear (and the same issue Bobrick tried unsuccessfully to shoe-horn into its last Enforcement Actions). Scranton Products will ask the Court to prevent Bobrick from seeking to repackage this twice-rejected argument here. Bobrick's anti-competitive argument is not only procedurally improper but plainly wrong because the Customer Letter *expressly contemplates the sale of non-NFPA 286 partitions,* and thus the marketing of such partitions cannot possibly contradict it.

Bobrick's trial brief makes clear that it intends to make other extraneous arguments – about the Harrisburg Courthouse, Scranton's training program, customer emails, and other anti-competitive attacks – having nothing to do with this Action. Scranton Products urges this Court to reject Bobrick's attempts to avoid the issues and waste resources litigating a myriad of issues that have nothing to do with this case.

### A. Jurisdiction

This hearing arises out of the Court's jurisdiction to enforce the settlement agreement between the parties. The Court retained limited jurisdiction "to enforce the Settlement Agreement and to adjudicate any dispute regarding or arising out of the Settlement Agreement, including the breach, termination, interpretation, or validity hereof, as well as the assessment and imposition of liquidated damages hereunder." (Dkt. 435 at 4–68 (the "Settlement Agreement"), ¶ 19.) The hearing is to be conducted "in accordance with the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and the Local Rules of the United States District Court for the Middle District of Pennsylvania." (*Id.* ¶ 122.)

Under the Settlement Agreement, Scranton Products agreed to undertake certain obligations, including sending a "Customer Letter" to customers who order non-NFPA fire rated products to inform those customers about NFPA fire-rating requirements. (*Id.* ¶¶ 81–89.) Bobrick agreed to resolve all claims and cease litigation between the parties over these issues. (*Id.* ¶ 9.)

On August 4, 2022, Bobrick filed this Enforcement Action, raising three categories of alleged breaches, claiming: (1) Scranton Products breached by refusing to update the Customer Letter to reflect what Bobrick claimed were recent changes in state laws related to the applicability of NFPA-286 fire protections (Dkt. 704 ("Enforcement Action") ¶ 2); (2) Scranton Products' color selection form violated the Settlement Agreement because it drove customers toward Scranton Products' non-NFPA-286-compliant partitions by offering more

3

colors and texture options for those non-NFPA-286 partitions (*id.* ¶ 3); and (3) Scranton Products breached the Settlement Agreement by making false statements in its marketing regarding the fire rating of its partitions. (*id.* ¶ 4.)

On August 8, 2023, this Court ruled that it lacked jurisdiction on Bobrick's first two alleged breaches. (Dkt. 732.) The Court ruled that the Settlement Agreement did not "provide the Court with jurisdiction to adjudicate the allegation that Scranton Products breached the Settlement Agreement by failing to change the Customer Letter in the manner requested by Bobrick." (*Id.* at 4.) The Court confirmed that Scranton Products need only comply with the requirements set forth in the Settlement Agreement, nothing more. (*Id.* at 6–9.) Similarly, the Court held it did not have jurisdiction to adjudicate Bobrick's claims about color selection forms because that "alleged breach [was] based on a non-existent version of the Customer Letter and a non-existent version of the Settlement Agreement." (*Id.* at 10.)

The Court retained jurisdiction of the Action only to the extent Scranton Products' marketing conflicts with the substance of the ***current*** Customer Letter pursuant to paragraph 89 of the Settlement Agreement. (*Id.* at 10–12.)

Throughout discovery, Bobrick has ignored the Court's ruling and is seeking to litigate the very issues the Court already rejected.

**B.  Summary Statement of Relevant Contentions and Facts**

Based on its discovery positions and expert report, it appears that Bobrick will be alleging that at least five categories of documents are relevant in this

4

Action. Only one category – consisting of the one document identified in Bobrick's Notice of Breach and Enforcement Action – is properly before the Court. The remaining four categories are not part of this Action, including: marketing that was included in Bobrick's Enforcement Action but not in a notice of breach; marketing Bobrick identified during discovery and thus never put Scranton Products on notice of (and did not include in the Enforcement Action); *every single* Scranton Products' document that mentions non-NFPA 286 partitions; and documents concerning the Harrisburg Courthouse and Scranton Products' email communications.

### a. There is Only One Document at Issue in this Action

Bobrick's Enforcement Action identified only one document, a webpage, from Bobrick's Notice of Breach. Bobrick argued that a Scranton Products' webpage titled "Fire Prevention Building Codes for Bathroom Partitions" is misleading,[1] challenging the statement: "Scranton Products fire rated bathroom partitions are tested in accordance with and meet the acceptance criteria of NFPA 286." (Enforcement Action ¶ 63.) Bobrick argues this statement is misleading because it implies that *all* of Scranton Products' fire rated partitions are tested in accordance with NFPA 286. (*Id*. ¶ 64.) This claim fails for several reasons.

First, this webpage, which was published and last updated in 2013—over 4 years before the execution of the Settlement Agreement—does not state that

---

[1] (Enforcement Action ¶¶ 62–64 and Ex. 12; BOBRICK-3EM_0000211–310 ("Notice of Breach") at BOBRICK-3EM_0000230–31; BOBRICK-3EM_0000299–301 (Ex. 10 to Notice of Breach).)

5

"all" of Scranton Products' fire rated partitions are tested in accordance with NFPA 286. Rather, immediately following a paragraph summarizing NFPA 286, the webpage states that "Scranton Products['] fire rated bathroom partitions are tested in accordance with and meet the acceptance criteria of NFPA 286," and immediately following that comment, states that "[c]opies of test reports from an accredited laboratory are available upon request." (Enforcement Action, Ex. 12.) Scranton Products' expert, Dale Wheeler, will testify that, in his opinion, this statement is not misleading and does not contradict the Customer Letter. Bobrick has no evidence to the contrary: Bobrick's expert, William Koffel, did not even consider this webpage in his analysis.

Second, even if this could be a breach, Scranton Products cured it by deleting it from its website. The webpage was removed on July 14, 2022, following Bobrick's Notice of Breach. And it is important to note that this URL was not even publicly available through search or linking on Scranton Products' website at the time of Bobrick's Notice and Enforcement Action. Nevertheless, Scranton Products removed this webpage to cure any alleged breach. Although Scranton Products believed removing the webpage resolved this issue, Scranton Products learned from Bobrick that someone could still access this outdated webpage if they retained the exact URL to access that webpage (as Bobrick had apparently done). Immediately upon learning this, on August 18, 2022, Scranton Products took additional steps to ensure that no one could access that webpage in even if they retained the exact URL.

### b. Bobrick's Action Raises Alleged Breaches That Bobrick Did Not Identify in its Notice of Breach

Bobrick's Action identifies three marketing materials that were not contained in its Notice of Breach. Specifically, Bobrick alleges that Scranton Products' labelling of "Class B" as "Fire Rated" in three color visualizer charts is misleading. (Enforcement Action ¶ 60, Exs. 9–11). Because Scranton Products was not provided notice of these alleged breaches, these three items are not part of this Enforcement Action. (Settlement Agreement ¶¶ 90, 92 (nonbreaching party must provide "written notice of the breach … and a reasonable opportunity to cure the breach prior to seeking relief from the Court").)

Even if these color charts had been properly noticed, they do not constitute a breach because the reference to "Class B" partitions as being "fire rated" does not contradict the substance of the Customer Letter. ASTM E84 Class B *is a* fire rating. Thus, if a partition meets the testing requirements of ASTM E84, that partition is fire rated. This is commonly understood fire-rating terminology that also tracks the Settlement Agreement, which refers to "non-NFPA 286-compliant HDPE toilet partitions" as including "**Class B fire-rated** HDPE toilet partitions." (Settlement Agreement ¶ 81.) Saying "Class B fire-rating" does not contradict the Customer Letter – the Settlement Agreement, which was approved by Bobrick and the Court, says the same thing.

But even if these color charts had been properly noticed and even if they had contradicted the Customer Letter, Bobrick *still* loses. ***Before Bobrick filed***

7

*this Action*, in a (now well worn) path to accommodate Bobrick's gripes, Scranton replaced these materials with versions that do not make any reference to "fire rated." Scranton thus, without question, "cured" any possible breach.

### c. Bobrick Attempts to Bolster its Action with "Marketing Materials" Obtained Through Discovery

It appears Bobrick will be arguing that certain emails it obtained through discovery contradict the Customer Letter. That argument too fails. These emails are not part of this Action because Bobrick never provided notice, as required. (Settlement Agreement ¶¶ 90–93.) Nor are any of these emails referenced or discussed in Bobrick's Enforcement Action. Nor do the emails contradict the Customer Letter, which is received by any customer who orders a non-NFPA 286 partition, thus curing any potential misstatement made prior to the order.

### d. Bobrick Argues that Scranton Products' Marketing of Non-286 Partitions Breaches the Settlement Agreement

The real crux of Bobrick's Action – center stage in its trial brief – is a recalcitrant demand that Scranton Products discontinue marketing non-NFPA 286-compliant partitions. Bobrick's argument is that state laws changed such that no jurisdiction now allows the marketing/sale of non-NFPA-286 partitions. As discussed, the Court has already concluded that it lacks jurisdiction to hear *this exact same argument*. In August 2023, this Court specifically rejected this very argument, holding that "Bobrick did not, and cannot, show that the information in the Customer Letter is inaccurate. This is so because the information in the Customer Letter concerning jurisdictions requiring bathroom partitions to pass

8

the NFPA 286 test *is keyed to a date certain agreed upon by the parties ('[a]s of July 2017')*, the Customer Letter does not provide information about any specific jurisdiction, and the recipient of the letter is directed to a link where the International Code Council's "'summary of jurisdictions and their adoptions of these regulations can be found.'" (Dkt. 732 at 8 n.3.; *see also* Dkt. 732 at 10.) In other words, Scranton Products is prohibited from contradicting the version of the Customer Letter – written in 2017 – that the parties (and the Court) agreed to; the Customer Letter is not a living document that Bobrick can update at its will to try to force Scranton to comply with new and evolving obligations. Stripped of its rhetoric, Bobrick is defiantly re-arguing that the Customer Letter *should be changed* despite the Court's clear ruling on this exact issue.

If Bobrick is claiming that Scranton Products' marketing and sale of non-NFPA 286 products contradicts the *operative* Customer Letter, that argument is non-sensical at best.[2] As the Court knows all too well, the *central consideration* in the Settlement Agreement—and the Customer Letter—is that Scranton Products *can continue to sell* non-NFPA 286 partitions but has to send a Customer Letter "along with" each order. (*See, e.g.*, Settlement Agreement ¶¶ 81–89.) Yet Bobrick's argument seems to be premised on a theory that the Customer Letter somehow precludes the marketing/sale of non-NFPA 286-

---

[2] At worst, this argument would follow Bobrick's counsel's pattern, noted by the Courts, of being sanctioned for advancing claims "entirely without merit," "bordering on frivolous," and "so obviously false they suggest bad faith." *See* Dkt. 715–1 at 3–6.

9

complainit partitions. That is preposterous. The "substance of the Customer Letter"—specifically drafted, negotiated, and agreed upon by Bobrick—is to notify the customer that they are purchasing a non-NFPA 286-compliant partition. (*Id.* ¶¶ 81–82.) Neither Bobrick's employees nor its expert disagree with that proposition.[3] The Customer Letter itself plainly instructs the purchaser or to "consult with the local state and building codes in effect in the area where the partitions are intended to be installed to see if the applicable building code requires HDPE bathroom partitions to be NFPA 286 compliant in the area of installation." (BOBRICK-3EM_0000004.) And the Settlement Agreement recognizes that the Customer Letter is only required *when* Scranton sells non-NFPA 286 products. (Settlement Agreement ¶ 81 (for every "sale of non-NFPA 286-compliant HDPE toilet partitions (including, but not limited to, Class A fire-rated HDPE toilet partitions, Class B fire-rated HDPE toilet partitions, and non-fire-rated HDPE toilet partitions), Scranton Products will send the entity that submits the purchase order" the Customer Letter).) It is beyond the bounds of good faith (or reason) to claim, as Bobrick's counsel is apparently doing here,

---

[3] Gettelman Dep. Tr. at 26:14–24 ("Q. Is it your understanding of the substance of this customer letter is that when Scranton Products sells non-NFPA 286 HDPE partition that it notifies and educates the customer? A. I understand that Scranton Products, by the terms of the settlement agreement, must send the customer a letter that advises customers that they have ordered a non-286 compliant material, that they are ordering a noncompliant material, and there are apparently some options that they have if they want to change it. Yes."); Matt Louchheim Dep. Tr. at 171:1–20 (agreeing that the Customer Letter "specifically contemplates Scranton Products selling non-286 products," and also agreeing that the Customer Letter is sent with every non-NFPA 286 partition sale, informing management about NFPA 286 to determine if it complies with the jurisdiction where it will be installed); Koffel Dep. Tr. at 130:11–131:9 (agreeing that the Customer Letter is intended to inform and educate a customer that orders a non-NFPA 286 partition).

that marketing non-NFPA 286 products contradicts the substance of the Customer letter, when both the Settlement Agreement and the Customer Letter itself specifically contemplate that Scranton would continue to market and sell non-NFPA 286 products.

While the Court need not, and should not, go any further, Bobrick's argument for *why* the Customer Letter should be modified is wrong as well. Bobrick's own expert, William Koffel, took the factual legs out of that argument when he unequivocally testified that NFPA 286 is not universally required for HDPE bathroom partitions. Koffel Dep. Tr. at 144:23–145:1. In other words, even if Bobrick could change the Customer Letter, its own expert does not agree with the changes that Bobrick proposes because ***not all jurisdictions*** in the United States require the use of NFPA-286 bathroom partitions.

### e. Bobrick Also Raises Irrelevant Arguments About the Harrisburg Courthouse

As attempted at the last hearing, Bobrick wants to spend a lot of time talking about the Harrisburg Courthouse. (Enforcement Action ¶ 70.) To try to gain a hook in this Action, Bobrick argues that Scranton Products breached the Settlement Agreement by selling non-NFPA 286-compliant partitions for this project. (Enforcement Action ¶ 70.) As a starting point, that argument makes no sense: As discussed above, selling non-NFPA 286-compliant products does not contradict the Customer Letter. But like Bobrick's other arguments, this one too is not only legally invalid but is also factually wrong: Discovery has established

11

that Scranton Products ***did not provide*** a non-NFPA 286 product to the Harrisburg Courthouse.

Bobrick's other Harrisburg arguments are incorrect as well. *First*, Scranton Products' specification sheet, which was allegedly confusing to someone involved in the Harrisburg project, is not mentioned in Bobrick's Enforcement Action, so it is not at issue here. *Second*, Bobrick's argument that Scranton breached by not providing the Customer Letter to GSA ignores the plain language of the Settlement Agreement, which only requires Scranton Products to send the Customer Letter to the entity that submits the purchase order (which Scranton unquestionably did). [4] (Settlement Agreement ¶¶ 81–82.)

### C. Description of Damages

There are no damages.

### D. Witnesses

Scranton Products predicted that without guardrails from this Court, Bobrick would seek to extend this Action well beyond the relevant grounds, requiring more than the one-day hearing originally planned. In response, Bobrick assured this Court that "despite Scranton Products' dire predictions, Bobrick continues to believe that the evidentiary hearing can be concluded in one day, with ***four witnesses at most for both parties***, and is prepared to proceed on July 25, 2024." (Dkt. 795 at 1.) That "dire prediction" turned out to be true because

---

[4] Again, in the vein of not letting the facts get in the way of their arguments, Bobrick ignores that GSA *did* actually receive a copy of the Customer Letter.

Bobrick has identified **6 *live witnesses that Bobrick intends to call*** and 55 exhibits. Most of these witnesses and exhibits have no relevance to the issues here.

### a. Bobrick's Proposed Live Witnesses:

Below is a list of fact and expert witnesses tendered by Bobrick:

1. Mark Louchheim, Chairman and CEO, Bobrick
2. Alan Gettelman, Vice President – External Affairs, Bobrick
3. Robert Donlon, Vice President and General Manager, Scranton Products
4. Greg Borgia, Product Specialist, Scranton Products
5. William Koffel, Bobrick's Expert
   a. Fire code expert that has been on Bobrick's retainer for over 10 years. Mr. Koffel did not review or consider any of the alleged misstatements specifically alleged in the Enforcement Action. His opinions regarding fire codes are entirely irrelevant to the issues here.
6. Dale Wheeler, Scranton Products' Rebuttal Expert
   a. Scranton Products does not believe it is proper for Bobrick to call Scranton Products' rebuttal expert in their case-in-chief.

### b. Scranton Products' Proposed Live Witnesses:

1. Robert Donlon, Vice President and General Manager, Scranton Products
2. Dale Wheeler, Scranton Products' Rebuttal Expert

13

    a. A fire code expert that was retained by Scranton Products to rebut Mr. Koffel's opinions. Mr. Wheeler concluded that Scranton Products' marketing of non-NFPA 286 bathroom partitions does not contradict the substance of the Customer Letter. He also opined that Scranton Products' marketing materials do not use fire rating terminology in a misleading way or in a way that contradicts the substance of the Customer Letter. Mr. Wheeler also concluded that many of the "opinions" contained in Mr. Koffel's report are unrelated to his expertise and training.

    **c. Scranton Products' Fact Witnesses Testifying by Deposition:**

1. Matthew Louchheim, President, Bobrick
2. Sarah Schanke, Former Marketing Communications Manager, Scranton Products
3. Alan Gettelman, Vice President – External Affairs, Bobrick (unless called live by Bobrick)

**7.     Pleadings and Discovery**

The principal pleading that governs this action is Bobrick's Enforcement Action. Discovery was overseen by Judge Vanaskie, to whom Scranton Products is thankful and grateful for his assistance. Despite Judge Vanaskie's efforts to rein in excesses sought throughout discovery, Bobrick repeatedly attempted to expand the scope of discovery beyond the relevant issues. In the instances where Judge Vanaskie allowed discovery beyond the narrow issue of whether marketing

14

documents contradict the substance of the Customer Letter, those discovery rulings were premised on the notion that more lenient areas of inquiry would be permitted during discovery than during the hearing.[5]

Incredibly, as was the case at the last trial, Bobrick's trial brief misrepresents the status of discovery. Bobrick claims that Scranton's delinquent discovery productions necessitate Bobrick's expert ***being able to offer new opinions at trial***. We encourage the Court to speak with Judge Vanaskie who will no doubt set the record straight: Scranton Products complied with each and every discovery ruling and deadline in this case. And Bobrick confirmed to Judge Vanaskie on the record that no open discovery issues remain.

Consistent with the previous enforcement hearings and the Settlement Agreement, Scranton Products is intent on asking the Court to strictly enforce the Federal Rules of Evidence.

---

[5] *See, e.g.,* July 8, 2024 Hearing Tr. at 20–21 (in response to Scranton Products' motion to strike portions of Mr. Koffel's report, Judge Vanaskie denied that motion, but he noted: "SPECIAL MASTER VANASKIE: ***Well, Frank, I'll say you make compelling arguments as to why some of Koffel's opinions aren't relevant to the narrow issue being tried by Judge Mariani***, but that's really not an issue for me to decide. Respectfully, I believe it is an issue ultimately for Judge Mariani to determine. ***I think you have the better of the argument***, but I don't think it's an issue that would be for the discovery master to determine. I do think essentially you're going to have to raise the issue with Judge Mariani and let him decide it. I'm afraid I don't have the authority to decide it. That's not something that I say lightly or take lightly, but I'm operating within the constraints of adjudicating discovery disputes, not admissibility issues.") (emphasis added). *See also* Mar. 29, 2024 Tr., Dkt. 765–1, at 25–26 (Judge Vanaskie overruled Bobrick's improper discovery requests seeking documents on the fire-rating laws in every jurisdiction throughout the United States because the Court lacked jurisdiction on that issue. And Judge Vanaskie agreed with Scranton Products, noting that he was "having trouble understanding how [those requests were] relevant to the scope of the inquiry here," and ruled Scranton Products did not have to respond to those interrogatories.).

8. **Legal Issues in Dispute**

If either party believed the other had breached the Settlement Agreement, the nonbreaching party was required to provide "written notice of the breach … and a reasonable opportunity to cure the breach ***prior to seeking relief from the Court***." (Settlement Agreement ¶ 90) (emphasis added). The Settlement Agreement provides that "three months is a presumptively reasonable amount of time for curing a breach." (*Id.* ¶ 92.) The Settlement Agreement also provides "another reasonable period of time to cure the breach," if the allegedly breaching party "attempts in good faith to cure the breach but fails to cure the breach." (*Id.* ¶ 93.)

The principles of contract construction dictate that this Court should interpret the plain meaning of paragraphs 90 through 93. The Settlement Agreement states that "all claims arising out of or relating in any way to this Settlement Agreement, will be governed by and/or construed in accordance with the laws of the Commonwealth of Pennsylvania, without regard to principles or rules concerning conflicts or choice of law." (Settlement Agreement ¶ 151.) As previously set forth by this Court (Dkt. 730 at 9–10), pursuant to Pennsylvania law, it is:

> [W]ell established that under the law of contracts, in interpreting an agreement, the court must ascertain the intent of the parties. *Robert F. Felte, Inc. v. White*, 451 Pa. 137, 302 A.2d 347, 351 (1973).
>
> In cases of a written contract, the intent of the parties is the writing itself. If left undefined, the words of a contract are to be given their ordinary meaning. *Pines Plaza Bowling, Inc. v.*

> *Rossview, Inc.*, 394 Pa. 124, 145 A.2d 672 (1958). When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385, 390 (1986). When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances. *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659, 663 (1982); *Herr's Estate*, 400 Pa. 90, 161 A.2d 32, 34 (1960). A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. *Hutchison*, 519 A.2d at 390. While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact. *Community College v. Society of the Faculty*, 473 Pa. 576, 375 A.2d 1267, 1275 (1977).

*Kripp v. Kripp*, 849 A.2d 1159, 1163–64 (Pa. 2004). This Court added that "[i]n interpreting a contract, the provisions must be construed as a whole and harmonized, if possible, so that all of the terms are given effect." (Dkt. 730 at 10 (citing *Contrans, Inc. v. Ryder Truck Rental, Inc.*, 836 F.2d 163, 169 (3d Cir.1987).)

Here, Bobrick's action centers on alleged breaches of which Bobrick did not provide Scranton Products notice and an opportunity to cure. Allowing Bobrick to proceed with alleged breaches that were not properly noticed would render the notice and cure provisions of the Settlement Agreement meaningless. Scranton asks that this Court follow its prior ruling: "A contract should not be interpreted in a manner that renders provisions meaningless, superfluous, unreasonable, contradictory, or would lead to absurd results." (Dkt. 730 at 10

17

(citing *Lesko v. Frankford Hosp.-Bucks Cnty.*, 609 Pa. 115, 15 A.3d 337, 343 (Pa. 2011).)

9. **Estimated Number of Trial Days**

Scranton Products believes that if this hearing is confined to relevant issues and witnesses that it can be completed in one day, on July 25, 2024. That said, if more time is needed, Scranton Products requests a maximum of two hearing days total, with the second day being July 26, 2024.

10. **Other Matters**

N/A

11. **Scranton's Exhibit List**

Much like the previous enforcement action, and consistent with its approach to expansively pursue unrelated issues during discovery, Bobrick has put forward **_55 exhibits as well as sought to incorporate dozens of other uncited exhibits from an expert report._** Nearly all these exhibits have no bearing on the narrow issues before the court.

Scranton's exhibit list, which contains less than 20 exhibits, is attached as Exhibit A.

12. **Special Verdict Form**

Not applicable.

13. **Settlement Authority**

Scranton Products has complied with its obligations to explore potential settlement of this matter.

18

14. **Meet and Confer**

The parties met and conferred regarding the foregoing. Any agreement reached between the parties is referenced herein.

15. **Findings of Fact and Law**

Per agreement, the parties will not file or serve proposed findings of fact or conclusions of law before the hearing.

        Respectfully submitted,

        **WINSTON & STRAWN LLP**

        */s/ Steven Grimes*
        Steven Grimes (admitted *pro hac vice*)
        Frank A. Battaglia (admitted *pro hac vice*)
        35 W. Wacker Drive
        Chicago, IL 60601-9703
        T: 312-558-5600
        F: 312-558-5700
        sgrimes@winston.com
        fbattaglia@winston.com

        *Counsel for Defendant Scranton Products, Inc.*

Dated: July 18, 2024

## **CERTIFICATE OF SERVICE**

      I hereby certify that a correct copy of the foregoing *Scranton Products, Inc.'s Pre-Hearing Memorandum* has been served on all counsel of record for Bobrick Washroom Equipment, Inc. through the Court's ECF system.

Dated: July 18, 2024                                */s/ Steven Grimes*
                                                                                        Steven Grimes