# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BOBRICK WASHROOM
EQUIPMENT, INC.,

      Plaintiff,

      v.

SCRANTON PRODUCTS INC.,

      Defendant.

Civil Action No. 3:14-CV-00853-RDM

Hon. Robert D. Mariani

## DEFENDANT SCRANTON PRODUCTS INC.'S PROPOSED
## <u>FINDINGS OF FACT AND PROPOSED CONCLUSIONS OF LAW</u>

# TABLE OF CONTENTS

**Page**

PROPOSED FINDINGS OF FACT ...........................................................................1

I.      The Settlement Agreement and Customer Letter Obligation .........................1

II.     Bobrick's Notice of Breach and Enforcement Action ...................................3

III.    Bobrick's Enforcement Motion Identified Four Former Marketing
        Documents ....................................................................................................5

IV.     The "Fire Prevention Building Codes for Bathroom Partitions"
        Webpage ........................................................................................................6

V.      Scranton Products' Former Color Visualizers ................................................8

VI.     Scranton Products' Current Color Visualizers .............................................10

VII.    Scranton Products' Specification Sheet ........................................................14

VIII.   The Harrisburg Courthouse ..........................................................................15

PROPOSED CONCLUSIONS OF LAW .............................................................16

I.      The Clear and Unambiguous Settlement Agreement Governs this
        Dispute ........................................................................................................16

II.     Bobrick Did Not Meet Their Burden to Establish a Breach of the
        Settlement Agreement ..................................................................................18

III.    Bobrick Cannot Pursue Claims Based on Alleged Breaches That
        Bobrick Did Not Previously Notify Scranton Products About ....................19

IV.     Scranton Products Cured the Only Alleged Breach Raised in
        Bobrick's Notice of Breach and Enforcement Motion ..................................21

V.      Bobrick Failed to Meet Its Burden in Proving Scranton Products
        Breached the Settlement Agreement ............................................................24

        a.      The "Fire Prevention Building Codes for Bathroom Partitions"
                Webpage Did Not Contradict the Customer Letter ...........................26

        b.      The Former Color Visualizers and Current Color Visualizers
                Do Not Contradict the Customer Letter ............................................27

Defendant Scranton Products Inc. ("Scranton Products"), pursuant to Paragraph 124 of the Settlement Agreement (Dkt. 435), as modified by the parties' agreement, hereby submits its proposed findings of fact, proposed conclusions of law, and a proposed order following the evidentiary hearing on Bobrick Washroom Equipment, Inc.'s Third Motion to Enforce Settlement Agreement (Dkt. 704) ("Third Enforcement Motion").[1]

## PROPOSED FINDINGS OF FACT

### I.    The Settlement Agreement and Customer Letter Obligation

1.    On December 28, 2017, Scranton Products and Bobrick Washroom Equipment, Inc. ("Bobrick") fully executed a Settlement Agreement and Mutual General Release (the "Settlement Agreement"). (SP_1.)[2]

2.    The Settlement Agreement contains the following provisions relevant to this dispute:

- "Beginning five (5) business days after the Effective Date, for each and every sale of non-NFPA 286-compliant HDPE toilet partitions (including, but not limited to, Class A fire-rated HDPE toilet partitions, Class B fire-rated HDPE toilet partitions, and non-fire-rated HDPE toilet partitions), Scranton Products will

---

[1] Scranton Products reserves the right to provide additional findings of fact or conclusions of law, if necessary, based upon Bobrick's filings.
[2] References throughout to "SP_##" are exhibits listed in Scranton Products' exhibit list (Dkt. 806-1), and references to "B_##" are exhibits listed in Bobrick's exhibit list (Dkt. 805-2).

send the entity that submits the purchase order to Scranton Products (the 'purchaser') (regardless of location, because Scranton Products is often not aware of the end user or ultimate locations of installation) a letter in the form of Exhibit D (the 'Customer Letter')." (*Id.* ¶ 81.)

- "Scranton Products will not include in its marketing materials, advertisements, bulletins, terms and conditions, sales acknowledgements, shipping confirmations, website, or any other document or communication related to the sale of non-NFPA 286 compliant HDPE toilet partitions anything contradicting the substance of the information in the Customer Letter." (*Id.* ¶ 89.)

- "The Parties agree that three months is a presumptively reasonable amount of time for curing a breach, but the Court may, in its discretion, determine that particular circumstances justify extending the reasonable time period permitted for curing any specific breach." (*Id.* ¶ 92.)

- "If a Party provides written notice of a breach under the Settlement Agreement, and the other Party attempts in good faith to cure the breach but fails to cure the breach, then, following a

subsequent written notice by the non-breaching Party, the breaching Party will have another reasonable period of time to cure the breach; provided that under no circumstances will the consecutive notice and cure periods for the same or substantially the same breach exceed twelve months." (*Id.* ¶ 93.)

3.      This Court approved the Settlement Agreement on March 6, 2018. (Dkt. 444.)

## II.     Bobrick's Notice of Breach and Enforcement Action

4.      On April 20, 2022, Bobrick served Scranton Products with a Notice of Breach that raised three categories of alleged breaches. (SP_2.)

5.      On August 4, 2022, Bobrick filed its Third Enforcement Motion, alleging three breaches. (B_3.)

6.      First, Bobrick argued that Scranton Products breached the Settlement Agreement by refusing to update the Customer Letter, which Bobrick claimed was no longer accurate based on recent changes in the law. (B_3 ¶¶ 7–45.)

7.      Second, Bobrick argued that Scranton Products' continued promotion of its non-NFPA 286-complaint partitions based on this alleged change in the law breached the Settlement Agreement. (B_3 ¶¶ 46–58.)

8.      Third, Bobrick alleged Scranton Products breached the Settlement Agreement by making false and misleading statements in its marketing materials

regarding the fire rating of its partitions. (B_3 ¶¶ 59–73.)

9.     On August 8, 2023, this Court ruled that it lacked jurisdiction on Bobrick's first two alleged breaches. (Dkt. 732 at 3–10.)

10.     First, the Court ruled that the Settlement Agreement did not "provide the Court with jurisdiction to adjudicate the allegation that Scranton Products breached the Settlement Agreement by failing to change the Customer Letter in the manner requested by Bobrick." (*Id.* at 4.) Indeed, the Court rejected Bobrick's argument because "Bobrick did not, and cannot, show that the information in the Customer Letter is inaccurate. This is so because the information in the Customer Letter concerning jurisdictions requiring bathroom partitions to pass the NFPA 286 test is keyed to a date certain agreed upon by the parties ('[a]s of July 2017'), the Customer Letter does not provide information about any specific jurisdiction, and the recipient of the letter is directed to a link where the International Code Council's 'summary of jurisdictions and their adoptions of these regulations can be found.' *See supra* p. 5 (quoting Ex. D to Settlement Agreement)." (*Id.* at 8 n.3.)

11.     Second, the Court held it did not have jurisdiction to adjudicate Bobrick's claims concerning Scranton Products' continued promotion of its non-NFPA 286-complaint partitions in light of the recent change in law, especially with regards to Scranton Products' color selection forms, because that "alleged breach [was] based on a non-existent version of the Customer Letter and a non-existent

version of the Settlement Agreement." (*Id.* at 10.)

12.     With respect to the third allegation, the Court retained jurisdiction of the Action only to the extent Scranton Products' marketing conflicts with the substance of the current Customer Letter pursuant to paragraph 89 of the Settlement Agreement. (*Id.* at 10–12.)

## III.   Bobrick's Enforcement Motion Identified Four Former Marketing Documents

13.     Bobrick's Third Enforcement Motion identified only one of the alleged breaches from its Notice of Breach—a webpage on Scranton Products' website with an article titled "Fire Prevention Building Codes for Bathroom Partitions." Bobrick attached this webpage to its Notice of Breach as Exhibit 10 (SP_2) and Bobrick's Third Enforcement Motion as Exhibit 12. (B_3.)

14.     Scranton Products assumed that Bobrick's failure to include the other documents it had raised in its Notice of Breach meant Bobrick accepted Scranton Products' cure of those documents. (7/25/2024 Donlon Tr. at 152:22–153:6.)

15.     In addition to the one website that Bobrick had previously raised, Bobrick's Third Enforcement Motion newly identified former color visualizer charts for three different partition product lines ("Former Color Visualizers"). Bobrick argued that Scranton Products' labeling of "Class B" as "Fire Rated" in the Former Color Visualizers was misleading. (B_3 ¶ 60–61, Exs. 9–11.) Bobrick did not identify these Color Visualizers in its Notice of Breach. (7/25/2024 Donlon Tr. at

168:4–11, 168:19–23, 169:5–8.)

16.     During the evidentiary hearing, Bobrick did not discuss any of the four documents specifically identified in their Third Enforcement Motion.

17.     Likewise, Bobrick's expert, Bill Koffel, testified that he did not review any of the four marketing documents identified in the Enforcement Motion before issuing an opinion in this case. (Koffel, 7/25/2024 Tr. 91:1–13.)

**IV.    The "Fire Prevention Building Codes for Bathroom Partitions" Webpage**

18.     Scranton Products posted the "Fire Prevention Building Codes for Bathroom Partitions" article on its website in or around September 2013. (Donlon, 7/25/2024 Tr. 153:18–23; B_5 ¶ 9.)

19.     Since the launch of Scranton's new website in the fall of 2017, the Fire Prevention article was not publicly available through search or linking on Scranton Products' website, including at the time of Bobrick's Notice of Breach and Third Enforcement Motion. (Donlon, 7/25/2024 Tr. 159:14–20; B_5 ¶¶ 10–11.)

20.     Bobrick argued that the statement on the Fire Prevention webpage that "Scranton Products [sic] fire rated bathroom partitions are tested in accordance with and meet the acceptance criteria of NFPA 286" is misleading because it implies that all of Scranton Products' fire rated partitions are tested in accordance with NFPA 286. (B_3 ¶¶ 63–64.)

21.     Immediately following the allegedly offending language, the Fire

Prevention webpage provides additional language summarizing NFPA 286, and an offer for "[c]opies of full test reports from an accredited laboratory showing NFPA 286 test results are available upon request." (B_3 at Ex. 12.)

22.     Scranton Products' expert, Dale Wheeler, testified none of the statements on the webpage are technically wrong or contradictory to the Customer Letter because the article does not state "all" of Scranton Products' partitions are fire rated. Mr. Wheeler also did not believe this webpage instructed the customer to do anything inconsistent with or contradict the Customer Letter. (Wheeler, 7/25/2024 Tr. 219:2–220:8.)

23.     Bobrick's expert, William Koffel, testified that he did not consider the "Fire Prevention Building Codes for Bathroom Partitions" webpage when issuing his opinion. (Koffel, 7/25/2024 Tr. 90:16–22, 91:1–14.) And none of Bobrick's witnesses or lawyers mentioned this document at the hearing.

24.     Although Scranton Products disagreed with Bobrick that this webpage breached the Settlement Agreement, following receipt of Bobrick's Notice of Breach on April 20, 2022, Scranton Products acted to remove the Fire Prevention webpage from Scranton Products' website. (Donlon, 7/25/2024 Tr. 153:12–154:12.)

25.     Scranton Products completed this cure within the three-month reasonable opportunity period set forth in the Settlement Agreement. (Donlon, 7/25/2024 Tr. 136:13–137:13, 156:3–8; Koffel, 7/25/2024 Tr. 96:12–14.)

26.     Although Scranton Products had already removed the webpage identified as the issue, Bobrick nevertheless pursued this same "Fire Prevention" webpage claim in Bobrick's Third Enforcement Motion. (B_3 at Ex. 12.)[3]

27.     Soon thereafter, Scranton Products learned that, although this webpage was unavailable to the general public through searching or linking at the time Bobrick complained about it, someone could still access this outdated webpage if they retained the exact URL to access that webpage (as Bobrick had apparently done). (Donlon, 7/25/2024 Tr. 137:4–9, 159:14–20; B_5 ¶¶ 13–14.)

28.     Immediately upon learning that someone could access this outdated article if they retained the exact URL, on August 18, 2022, Scranton Products took additional steps to ensure that no one could access that webpage in the future even if they retained the exact URL. (B_5 ¶ 15; Donlon, 7/25/2024 Tr. 137:1–13, 159:21–160:22; SP_9.)

29.     As of August 18, 2022 and through the present, this webpage is inaccessible from the internet. (B_5 ¶ 15; Donlon, 7/25/2024 Tr. 160:3–22; SP_9.)

**V.     Scranton Products' Former Color Visualizers**

30.     The Settlement Agreement requires written notice of an alleged breach. (SP_1 ¶¶ 90, 93.)

---

[3] Before filing its Third Enforcement Motion, Bobrick did not notify Scranton Products that Bobrick did not believe Scranton Products adequately cured this webpage. (Donlon, 7/25/2024 Tr. 158:24–159:1, 159:11–13.)

31.     While Bobrick's Third Enforcement Motion identified three Color Visualizers that Bobrick argued were misleading based on Scranton Products' labelling of "Class B" as "Fire Rated," Bobrick did not identify those Color Visualizers in their Notice of Breach. (B_3 ¶ 60, Exs. 9–11; Donlon, 7/25/2024 Tr. 168:4–169:8.)

32.     As a result, Scranton Products was not given an appropriate opportunity to cure these alleged breaches.

33.     Bobrick's expert, William Koffel, testified that he did not consider the Former Color Visualizers when issuing his opinion. (Koffel, 7/25/2024 Tr. 90:16–22, 91:1–14.) And none of Bobrick's witnesses or lawyers discussed any of the Former Color Visualizers during the evidentiary hearing.

34.     Even so, Scranton Products presented evidence that the Former Color Visualizers were not a breach in the first instance and were in any event cured. (Donlon, 7/25/2024 Tr. 168:4–169:14; Wheeler, 7/25/2024 Tr. 226:15–229:14; SP_17; SP_19 at 2–5.)

35.     Scranton Products' witness Dale Wheeler is an expert in fire ratings and codes with over 50 years of relevant experience. (Wheeler, 7/25/2024 Tr. 202:10–204:9.) Mr. Wheeler testified that he reviewed the Former Color Visualizers and found them to be accurate in the manner in which they discussed fire ratings. (Wheeler, 7/25/2024 Tr. 212:16–23, 214:6–217:24, 226:15–229:14; SP_19 at 2–5.)

Mr. Wheeler offered his opinion that the Former Color Visualizers did not contradict the Customer Letter. (Wheeler, 7/25/2024 Tr. 227:5–229:14.) As discussed above, Bobrick offered no contrary evidence or opinions.

36.     Even though these Former Color Visualizers did not contradict the Customer Letter, on July 15, 2022, Scranton Products removed the original versions of the Color Visualizers from Scranton Products' website *before* Bobrick filed its Third Enforcement Motion. (Donlon, 7/25/2024 Tr. 161:21–162:13, 163:12–19, 164:5–165:21, 166:5–13, 168:6–169:14; B_5 ¶ 17; S_17.)

37.     The Current Color Visualizers were modified within 90 days of Scranton Products receiving Bobrick's Notice of Breach on April 20, 2022, related to these items. (SP_1 ¶ 92 (three-month cure period); SP_2.)

**VI.     Scranton Products' Current Color Visualizers**

38.     On July 15, 2022, Scranton Products issued new Color Visualizers for each of its three bathroom partition product lines, which remain in effect today. (Donlon, 7/25/2024 Tr. 161:21–162:13, 163:12–19, 164:5–165:21, 166:5–13, 168:6–169:14.) Bobrick did not specifically identify the Current Color Visualizers in its Notice of Breach or Third Enforcement Motion but spent the majority of the hearing arguing that these documents violate the Settlement Agreement.

39.     The new Color Visualizers, and related marketing documentation, all contain the same allegedly offending language – "Tested to Meet ASTM E84, Class

B" – and were marked as various exhibits at the hearing. (SP_10, SP_11, SP_12, B_15, B_16, B_17, B_45, B_46 (collectively, the "Current Color Visualizers"); Wheeler, 7/26/2024 Tr. 3:10–4:12; SP_19 at 2–5.)

40.     Bobrick's expert, William Koffel, offered at times confusing opinions as to why he believes the Current Color Visualizers contradict the Customer Letter:

- Mr. Koffel opined that references to "Class B E84 fire-tested" products are inconsistent with the Customer Letter because the Customer Letter does not specifically reference ASTM E84. (Koffel, 7/26/2024 Tr. 18:14–19:6.)

- Mr. Koffel opined that the Customer Letter contemplated only "two categories" of products – NFPA 286-compliant products and non-NFPA 286-compliant products – and Scranton's use of "Class B" marketing fell into a third category. (Koffel, 7/26/2024 Tr. at 18:14–20:1, 20:16–13.)

- Although unclear, Mr. Koffel implied the Current Color Visualizers are confusing because most jurisdictions require HDPE partitions to comply with NFPA 286, but Mr. Koffel definitively testified that NFPA 286 is not universally required for HDPE bathroom partitions. (Koffel, 7/25/2024 Tr. 101:15–21.)

- Mr. Koffel attempted to issue a legal opinion that Scranton Products has breached the Settlement Agreement because its marketing materials do not communicate the exact same language from the Customer Letter. (Koffel, 7/25/2024 Tr. 85:11–86:9.)

41.     Mr. Koffel was not a credible witness. He has been a paid consultant for Bobrick for over 20 years and has been paid hundreds of thousands of dollars by Bobrick. (Koffel, 7/26/2024 Tr. 23:3–8, 23:16–19.) Mr. Koffel's three factual opinions are not supported by the evidence, for the reasons set forth below. His fourth opinion is addressed in the Conclusions of Law below, as he misstates the applicable standard required under the Settlement Agreement.

42.     First, ASTM E84 is a fire rating test. If a partition meets the testing requirements of ASTM E84, it is correct to say that the partition is "fire rated." (Wheeler, 7/25/2024 Tr. 215:1–20.)

43.     The facts unequivocally demonstrate that Scranton's use of the phrase "Class B" in the context of the Current Color Visualizers is not inconsistent with the Customer Letter. The Settlement Agreement, which was agreed to by Bobrick (and blessed by the Court) specifically defines "non-NFPA 286-compliant HDPE toilet partitions" as including "Class B fire-rated HDPE toilet partitions." (SP_1 ¶ 81.) When faced with this damning fact under cross-examination, Mr. Koffel had to

admit that "[i]f Scranton Products makes a statement on their website that they sell E84 toilet partitions," "[t]hat statement, in and of itself, does not contradict the customer letter." (Koffel, 7/25/2024 Tr. 83:24–84:4.)

44.     No lawyer or witness for Bobrick even tried to explain why the use of the "Class B" language in the Settlement Agreement did not entirely undermine Mr. Koffel's opinions (and Bobrick's claims).[4]

45.     Second, Mr. Koffel's opinions about the specific Customer Letter itself are factually wrong. For starters, Mr. Koffel admitted that there are no "specific words" in the Current Color Visualizers that contradict the Customer Letter. (Koffel, 7/25/2024 Tr. 95:16–96:2.)

46.     The Settlement Agreement's definition of "non-NFPA 286-compliant HDPE toilet partitions" to include "Class B" also disproves Mr. Koffel's "two-categories" theory. By definition (in the binding Settlement Agreement), Scranton's marketing of "Class B" products falls into Mr. Koffel's "non-NFPA 286" category under the Customer Letter.

47.     The Customer Letter specifically states to the customer that they "have

_____

[4] This is not the only example of Mr. Koffel attempting to redefine or reinvent the Settlement Agreement. He also testified that Scranton Products should be required to send the Customer Letter downstream in the commercial chain, despite the Settlement Agreement explicitly stating otherwise. (Koffel, 7/25/2024 Tr. 99:2–14; SP_1 ¶ 81.) The Settlement Agreement is clear that "for each and every sale of non-NFPA 286-compliant HDPE toilet partitions … Scranton Products will send the entity that submits the purchase order to Scranton Products…(regardless of location, because Scranton Products is often not aware of the end user or ultimate locations of installation) a letter in the form of Exhibit D (the 'Customer Letter')." (*Id.*)

placed an order for one of [Scranton Products'] products that is not NFPA 286 compliant." (B_8.) As such, Scranton Products' use of the phrase "Class B" in its Current Color Visualizers to refer to certain non-NFPA 286-compliant HDPE partitions that the Customer Letter specifically contemplates does not "contradict[] the substance of the information in the Customer Letter." (SP_1 ¶ 89; Wheeler, 7/25/2024 Tr. 222:21–224:11.)

48.     Third, Mr. Koffel's suggestion that there is a universal requirement for NFPA 286 bathroom partitions is factually not well-founded. The evidence presented at the hearing, from both parties' experts, is that there is no such universal requirement. (Wheeler, 7/25/2024 Tr. 215:21–216:18; Koffel, 7/25/2024 Tr. 101:15–21.)

49.     The Court finds the testimony of Scranton's expert, Dale Wheeler, regarding the meanings and the technical fire terms in the Current Color Visualizers to be persuasive, helpful, and accurate. (Wheeler, 7/25/2024 Tr. 226:15–230:17; SP_19 at 2–5.)

## VII.   Scranton Products' Specification Sheet

50.     Mr. Koffel testified that Scranton Products' Specification Sheet (B_18), contradicts the Customer Letter because it lists "International Code Council (ICC): Class B" as a "Material Fire Rating" option. (Koffel, 7/25/2024 Tr. 101:1–102:9.) This opinion rests on the same faulty facts as Mr. Koffel's opinion regarding the

Current Color Visualizers discussed above.

51.     Bobrick did not specifically allege in its Notice of Breach or in its Third Enforcement Motion that Scranton Products' Specification Sheet contradicted the substance of the Customer Letter.

52.     Scranton Products' Specification Sheet is a tool used by architects and designers to create a specification for their projects. The Specification Sheet lists features and options and instructs users to delete the specifications that are not needed. (Donlon, 7/25/2024 Tr. 148:18–149:25; Wheeler, 7/26/2024 Tr. 4:13–6:15.)

## VIII.  The Harrisburg Courthouse

53.     Bobrick's Third Enforcement Motion alleges that the Harrisburg Federal Courthouse is an example of the "real-world consequences" of Scranton Products' supposed breach of the Settlement Agreement. Specifically, Bobrick argued that Scranton Products breached the Settlement Agreement by selling Class B partitions for the Harrisburg Courthouse project. (B_3 ¶ 70.)

54.     Bobrick's allegation is factually wrong. Scranton Products ultimately sold NFPA 286 partitions for the Harrisburg Courthouse. (Donlon, 7/25/2024 Tr. 173:23–174:25, 176:4–7; SP_13; SP_14.) While it appears that entities working on the Harrisburg Courthouse project initially ordered non-NFPA 286 toilet partitions, they ultimately corrected their order before installation. (Donlon, 7/25/2024 Tr. 173:23–174:25, 176:4–7.) That is the very purpose of the Customer Letter.

(Wheeler, 7/26/2024 Tr. 6:16–7:15.)

55.    The Customer Letter is clear that Scranton Products does not "provide [the customer] with legal advice about [their] obligations or about building code requirements." (B_8.) Instead, the Customer Letter notifies the customer they placed an order for a non-NFPA 286-compliant product and encourages the customer "or the architect or designer on [the] project should consult the local state and building codes in effect in the area where the partitions are intended to be installed to see if the applicable building code requires HDPE bathroom partitions to be NFPA 286 compliant in the area of installation." (*Id.*)

56.    There is no dispute that Scranton Products sent the Customer Letter to the entity that purchased toilet partitions for the Harrisburg Courthouse project. (Donlon, 7/25/2024 Tr. 173:15–22.) That is all the Settlement Agreement requires. (SP_1 ¶¶ 81, 82.)

## PROPOSED CONCLUSIONS OF LAW

### I.    The Clear and Unambiguous Settlement Agreement Governs this Dispute

1.    The Settlement Agreement is governed by and construed in accordance with Pennsylvania law. (SP_1 ¶ 151.)

2.    To prevail on a breach of contract claim under Pennsylvania law, a plaintiff must prove the following elements: (1) the existence of a contract; (2) a breach of a duty imposed by contract; and (3) resultant damages. *Pennsy Supply, Inc.*

*v. Am. Ash Recycling Corp.*, 895 A.2d 595, 600 (Pa. Super. Ct. 2006).

3.      "The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties." *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001).

4.      "The best evidence of what parties to a written agreement intend is what they say in their writing." *Camp Ne'er Too Late, LP v. Swepi, LP*, 185 F. Supp. 3d 517, 545 (M.D. Pa. 2016) (quoting *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 59 F. Supp. 3d 654, 660 (D. Del. 2014), *aff'd*, 622 F. App'x 169 (3d Cir. 2015); *E. Crossroads Ctr., Inc. v. Mellon-Stuart Co.*, 205 A.2d 865, 866 (Pa. 1965) ("Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence.").

5.      "Under Pennsylvania law, where contract language is clear and unambiguous, the Court must follow it." *Lomma v. Ohio Nat'l Life Assurance Corp.*, 2021 WL 772237, at *5 (M.D. Pa. Feb. 26, 2021); *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1010 (3d Cir. 1980) ("When a written contract is clear and unequivocal, its meaning must be determined by its contents alone." (quoting *E. Crossroads Ctr., Inc.*, 205 A.2d at 866)).

6.      "Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed." *Murphy*, 777 A.2d at 429.

7.      The Settlement Agreement states that it "constitutes the entire agreement of the Parties" and that "[i]n executing this Settlement Agreement, no Party is relying upon any promise, representation, or statement made orally or in any document or context other than the text of this Settlement Agreement itself." (SP_1 ¶ 152.)

8.      "An integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004).

9.      Integration clauses are "strictly enforced, absent evidence of fraud, accident or mistake." *O'Connor v. Certainteed Corp.*, 1990 WL 223180, at *5 (E.D. Pa. Dec. 17, 1990).

## II.    Bobrick Did Not Meet Their Burden to Establish a Breach of the Settlement Agreement

10.     Under Pennsylvania law, the party asserting a breach of contract claim bears the burden of proof on the elements of his claim and must establish them by a preponderance of evidence. *Bohler–Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 102 (3d Cir. 2001) (applying Pennsylvania law); *see In re Estate of Dixon*, 233 A.2d 242, 244 (Pa. 1967) ("In any contract action ... the claimant bears the burden of proving the terms of the contract."); *Snyder v. Gravell*, 666 A.2d 341, 343

(Pa. Super. Ct. 1995) ("[T]he party having the burden of proof in a contract matter must sustain it by a 'preponderance of the evidence.'" (quoting *Ragnar Benson, Inc. v. Bethel Mart Ass'n*, 454 A.2d 599, 602 (Pa. 1982)).

11.     During the evidentiary hearing, Bobrick failed to offer ***any evidence*** that ***any marketing document*** identified in Bobrick's Third Enforcement Motion breached the Settlement Agreement.

12.     Scranton Products, although without being required to do so given Bobrick's failure to meet its burden, offered convincing testimony and evidence establishing that none of Scranton Products' marketing documents constituted a breach under the Settlement Agreement.

## III.   Bobrick Cannot Pursue Claims Based on Alleged Breaches That Bobrick Did Not Previously Notify Scranton Products About

13.     The Settlement Agreement is a valid and enforceable contract.

14.     Under the Settlement Agreement, if either party believed the other had breached the Settlement Agreement, the nonbreaching party must provide "written notice of the breach … and a reasonable opportunity to cure the breach prior to seeking relief from the Court." (SP_1 ¶ 90.)

15.     The Settlement Agreement does not provide for the shortening of the presumptively reasonable three-month cure period. *See Angino v. Wells Fargo Bank, N.A.*, 666 F. App'x 204, 207 (3d Cir. 2016) ("Here the written agreement is unambiguous; hence we cannot read in its silence an additional legal

obligation ….”); *U.S. Fid. & Guar. Co. v. Lehigh Valley Ice Arena, Inc.*, 121 F. App’x 976, 980 (3d Cir. 2005) (“Because section I(2)(f)(1)(d) is an unambiguous exclusion, we will not read into it additional provisions, as Appellants invite us to do.”).

16.    Bobrick was only permitted to bring an enforcement action “[f]ollowing the exhaustion of any reasonable cure period.” (SP_1 ¶ 91.)

17.    Bobrick’s Third Enforcement Motion identified three Former Color Visualizers (B_3 ¶ 60, Exs. 9–11) and a Specification Sheet (B_18) that Bobrick did not identify in its Notice of Breach.

18.    Because Bobrick did not provide Scranton Products with the contractually mandated notice and a reasonable opportunity to cure, Bobrick cannot maintain a breach of the Settlement Agreement against Scranton Products based on these Former Color Visualizers and Specification Sheet.

19.    Similarly at the evidentiary hearing, Bobrick argued that Scranton Products’ Current Color Visualizers—which addressed the alleged breaches Bobrick improperly raised concerning the original Color Visualizers in its Enforcement Motion—also breached the Settlement Agreement. Because Bobrick did not provide Scranton Products with the contractually mandated notice and a reasonable opportunity to cure, Bobrick cannot maintain a breach of the Settlement Agreement against Scranton Products based on the Current Color Visualizers, which were not

part of the Notice of Breach or the Enforcement Action.

## IV.   Scranton Products Cured the Only Alleged Breach Raised in Bobrick's Notice of Breach and Enforcement Motion

20.   The Settlement Agreement requires a non-breaching party to provide "written notice of the breach … and a reasonable opportunity to cure the breach prior to seeking relief from the Court." (SP_1 ¶ 90.)

21.   The Settlement Agreement provides that "three months is a presumptively reasonable amount of time for curing a breach." (*Id*. ¶ 92.)

22.   On top of that three-month cure period, "[i]f a Party provides written notice of a breach under the Settlement Agreement, and the other Party attempts in good faith to cure the breach but fails to cure the breach, then, following a subsequent written notice by the nonbreaching Party, the breaching Party will have another reasonable period of time to cure the breach." (*Id.* ¶ 93.)

23.   Bobrick's Third Enforcement Motion only identified one of the alleged breaches from its Notice of Breach—Scranton Products' webpage titled "Fire Prevention Building Codes for Bathroom Partitions." (SP_2 at Ex. 10.)

24.   Despite disagreeing with Bobrick's claims, following receipt of Bobrick's Notice of Breach on April 20, 2022, Scranton Products immediately acted to remove that webpage from Scranton Products' website. (Donlon, 7/25/2024 Tr. 153:12–154:12)

25.   Scranton Products completed this cure during the three-month

reasonable opportunity period set forth in the Settlement Agreement. (Donlon, 7/25/2024 Tr. 136:13–137:13, 156:3–8; Koffel, 7/25/2024 Tr. 96:12–14.)

26.     Before filing its Third Enforcement Motion, Bobrick did not notify Scranton Products that Bobrick did not believe Scranton Products adequately cured this alleged breach. (Donlon, 7/25/2024 Tr. 158:24–159:1, 159:11–13.)

27.     Despite Scranton Products' good-faith efforts to cure this alleged breach, Bobrick identified this webpage in its Third Enforcement Motion. (B_3 ¶¶ 63–64.)

28.     Soon thereafter, Scranton Products learned that, although this webpage was unavailable to the general public through searching or linking at the time Bobrick complained about it, someone could still access this outdated webpage if they retained the exact URL to access that webpage (as Bobrick had apparently done). (Donlon, 7/25/2024 Tr. 137:4–9, 159:14–20; B_5 ¶¶ 13–14.)

29.     Immediately upon learning this information, on August 18, 2022, Scranton Products took additional steps to ensure that no one could access that webpage in the future even if they retained the exact URL. (B_5 ¶ 15; Donlon, 7/25/2024 Tr. 137:1–13, 159:21–160:22; SP_9.)

30.     As of August 18, 2022 and through the present, this webpage is inaccessible from the internet. (B_5 ¶ 15; Donlon, 7/25/2024 Tr. 160:3–22; SP_9.)

31.     All parties to a contract are required to act in good faith. *Kaplan v.*

*Cablevision of Pa., Inc.*, 671 A.2d 716, 722 (Pa. Super. Ct. 1996) ("Every contract imposes on each party a duty of good faith and fair dealing in its performance and its enforcement." (quoting Restatement (Second) of Contracts, § 205)).

32.    Parties to a contract must act reasonably and in good faith in evaluating a proposed cure to an alleged breach. *Diodato v. Wells Fargo Ins. Servs., USA, Inc*., 44 F. Supp. 3d 541, 559 (M.D. Pa. 2014) ("Pennsylvania courts have adopted Section 205 of the Restatement (Second) of Contracts, which provides that every contract imposes a 'limited duty' of good faith and fair dealing on each party in performing and enforcing the same.").

33.    The purpose of a "cure" is to give a party "another chance to perform substantially" and "a second chance to perform according to the contract." *Volvo Trucks N. Am. v. State, Dep't of Transp*., 2010 WI 15, ¶ 43 (quoting 8 Catherine M.A. McCauliff, *Corbin on Contracts*, § 36.7 at 349 (1999)); *see also Helpin v. Trustees of Univ. of Pennsylvania*, 10 A.3d 267, 270 (Pa. 2010) ("The purpose of a damage award is to place the non-breaching party 'as nearly as possible in the same position [it] would have occupied had there been no breach.'" (citing *Lambert v. Durallium Prods. Corp.*, 72 A.2d 66, 67 (Pa. 1950))); *see also Nationwide Mut. Ins. v. United Comput. Capital Corp.*, 1994 WL 78640, at *4 (Ohio Ct. App. March 16, 1994) ("[T]he concept of a 'cure' embodies the requirement that the wrongdoer's curative action puts the innocent party in as good a position as he would have been

23

had the wrongdoing not occurred.").

34.     The Court credits Scranton Products' good-faith efforts to avoid senseless litigation by attempting to remove the subject webpage from the internet during the initial reasonable opportunity period, as Scranton Products did with the other alleged breaches in Bobrick's Notice of Breach that Bobrick did not raise in its Third Enforcement Motion (presumably because Scranton Products cured those alleged breaches to Bobrick's satisfaction).

35.     The Court also holds that because Scranton Products made a good-faith effort to cure the alleged breach, Bobrick was required to provide Scranton Products with subsequent written notice and another reasonable opportunity to cure the alleged breach, in accordance with paragraph 93 of the Settlement Agreement.

36.     Even though Bobrick did not provide Scranton Products with the subsequent reasonable opportunity to cure, Scranton Products cured the alleged breach during that subsequent reasonable opportunity to cure.

37.     Bobrick's claims related to the "Fire Prevention Building Codes for Bathroom Partitions" webpage (B_3 at Ex. 12) thus lack merit.

## V.     Bobrick Failed to Meet Its Burden in Proving Scranton Products Breached the Settlement Agreement

38.     Bobrick alleges that various statements in Scranton Products' marketing documents about the fire rating of Scranton Products' partitions contradict the substance of the Customer Letter and breach paragraph 89 of the Settlement

Agreement. (B_3 ¶¶ 59–64.)

39.     Paragraph 89 of the Settlement Agreement states, "Scranton Products will not include in its marketing materials, advertisements, bulletins, terms and conditions, sales acknowledgements, shipping confirmations, website, or any other document or communication related to the sale of non-NFPA 286 compliant HDPE toilet partitions anything contradicting the substance of the information in the Customer Letter." (SP_1 ¶ 89.)

40.     When an agreement's language is clear and unambiguous, courts will not read additional legal obligations into it. *See Angino*, 666 F. App'x at 207 ("Here the written agreement is unambiguous; hence we cannot read in its silence an additional legal obligation …."); *U.S. Fid. & Guar. Co.*, 121 F. App'x at 980 ("Because section I(2)(f)(1)(d) is an unambiguous exclusion, we will not read into it additional provisions, as Appellants invite us to do.").

41.     A phrase in an agreement is to be given its ordinary, objective meaning. *Mellon Bank*, 619 F.2d at 1013; *United Servs. Auto. Ass'n v. Elitzky*, 517 A.2d 982, 986 (Pa. Super. Ct. 1986).

42.     A court may consult a dictionary to inform its understanding of terms. *E.g.*, *Vale Vista Assocs., L.P. v. Cincinnati Cas. Co.*, 442 F. Supp. 3d 896, 899 (W.D. Pa. 2020).

43.     The Merriam-Webster Dictionary definition of "contradict" (as well as

its present participle, "contradicting") is: "to assert the contrary of" or "to imply the opposite or a denial of." *Contradict*, Merriam-Webster, https://www.merriam-webster.com/dictionary/contradict (last visited Aug. 22, 2024).

44.    The Court has previously interpreted this term in holding that "allegedly false or misleading information about fire ratings in marketing documents or communications would not be relevant unless that information demonstrably conflicts with the substance of the Customer Letter." (Dkt. 801 at 3 n.1; *see also* Dkt. 800 at 5 n.2 ("Enforcement of [paragraph 89] does not entail consideration of evidence of the fire rating of Scranton Products' partitions contained in documents or communications which a party may characterize as false or misleading but is not in conflict with the substance of the information in the Customer Letter.").)

45.    Here, the Court finds that the word "contradicting" means saying or doing something that is the opposite.

### a. The "Fire Prevention Building Codes for Bathroom Partitions" Webpage Did Not Contradict the Customer Letter

46.    This Court already found that Scranton Products cured this alleged breach, but this claim also fails because the webpage does not contradict the substance of the Customer Letter.

47.    Bobrick challenged the following statement: "Scranton Products['] fire rated bathroom partitions are tested in accordance with and meet the acceptance criteria of NFPA 286." (B_3 ¶ 63.) That statement is followed by additional language

summarizing NFPA 286, and an offer to provide Scranton Products' NFPA 286 test reports upon request. (*Id.* at Ex. 12.)

48.    Neither Mr. Koffel nor Bobrick considered this webpage at the evidentiary hearing. Mr. Koffel also testified that he did not consider this webpage when issuing his opinion. (Koffel, 7/25/2024 Tr. 90:16–22, 91:1–14.)

49.    The Court credits Mr. Wheeler's testimony on this webpage. Mr. Wheeler testified that none of the statements on the webpage are technically wrong or contradictory to the Customer Letter because the article does not state "all" of Scranton Products' partitions are fire rated. Mr. Wheeler also did not believe this webpage instructed the customer to do anything inconsistent with or contradicting the Customer Letter. (Wheeler, 7/25/2024 Tr. 219:2–220:8.)

50.    The Court finds that Bobrick failed to meet its burden in proving a breach of the Settlement Agreement based on the "Fire Prevention Building Codes for Bathroom Partitions" webpage.

**b. The Former Color Visualizers and Current Color Visualizers Do Not Contradict the Customer Letter**

51.    Bobrick argues that Scranton Products' Former Color Visualizers and Current Color Visualizers breach the Settlement Agreement because they contradict the substance of the Customer Letter.

52.    Bobrick's Motion argued that the original Color Visualizers breached the Settlement Agreement by labeling Scranton Products' "Class B" material as

"Fire Rated." (B_3 ¶¶ 60.)

53.     Bobrick argued at the evidentiary hearing that the Current Color Visualizers contradict the substance of the Customer Letter because they state which colors are "Tested to Meet ASTM E84, Class B."

54.     The central premise of Bobrick's argument concerning the Color Visualizers is that the Customer Letter refers to non-NFPA 286-compliant partitions, but it does not reference "Class B" partitions. As a result, Bobrick argues that Scranton Products' promotion of Class B partitions contradicts the Customer Letter.

55.     Paragraph 81 of the Settlement Agreement defines "non-NFPA 286-compliant HDPE toilet partitions" as including "Class B fire-rated HDPE toilet partitions." (SP_1 ¶ 81.)

56.     Bobrick's interpretation and proposed definition of "Class B" would require this Court to rewrite the Settlement Agreement, but "[t]he court may not rewrite the contract … or remake a contract, under the guise of construction, because it later appears that a different agreement should have been consummated in the first instance." *Steuart v. McChesney*, 444 A.2d 659, 662 (Pa. 1982) (quoting 17A C.J.S. *Contracts* § 296(3)); *Robert F. Felte, Inc. v. White*, 302 A.2d 347, 351 (Pa. 1973) ("The parties [have] the right to make their own contract, and it is not the function of this Court to re-write it, or to give it a construction in conflict with . . . the accepted and plain meaning of the language used.") (citation omitted).

57.     If Scranton Products' use of a defined term in the Settlement Agreement constituted a contradiction with the Customer Letter, then paragraph 81 of the Settlement Agreement would be rendered ineffectual and illusory. *Com. ex rel. Kane v. UPMC*, 129 A.3d 441, 467–68 (Pa. 2015) ("[W]e do not countenance the interpretation of a contract which would render it illegal or incapable of performance, but, rather, construe a contract to give legal effect to every provision therein …."); *see also M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 440 (2015) (noting the illusory promises doctrine "instructs courts to avoid constructions of contracts that would render promises illusory ….").

58.     This Court rejects Bobrick's attempts to rewrite the Settlement Agreement by redefining "Class B." Indeed, Bobrick's own expert, Mr. Koffel, testified that Scranton Products' use of those words does not contradict the Customer Letter. (Koffel, 7/25/2024 Tr. 83:15–84:4.) Scranton Products' expert, Mr. Wheeler, came to the same conclusion. (Wheeler, 7/25/2024 Tr. 221:20–222:11, 224:2–11.)

59.     The Court also rejects Bobrick's argument, through its expert Mr. Koffel, to require Scranton Products' marketing materials to contain the same language as the Customer Letter. (Koffel, 7/25/2024 Tr. 68:25–70:4, 85:23–86:9.) The Settlement Agreement requires only that marketing materials do not ***contradict*** the Customer Letter. That does not mean that Scranton Products' marketing materials must contain all the same information as the Customer Letter, and nothing

more (as Bobrick contends). That would be a wholly new requirement, which the parties did not negotiate for.

60.     When an agreement's language is clear and unambiguous, courts will not read additional legal obligations into it. *See Angino*, 666 F. App'x at 207 ("Here the written agreement is unambiguous; hence we cannot read in its silence an additional legal obligation …."); *U.S. Fid. & Guar. Co.*, 121 F. App'x at 980 ("Because section I(2)(f)(1)(d) is an unambiguous exclusion, we will not read into it additional provisions, as Appellants invite us to do.").

61.     Bobrick's claim that Scranton Products breached the Settlement Agreement by using the phrase "Class B" in the Former and Current Color Visualizers lacks merit.

62.     Finally, the Court must comment on the abusiveness of this litigation. Bobrick's claims in this matter are facially without merit, and yet Bobrick has spun up years of expensive litigation over patently frivolous arguments. The Court puts Bobrick on notice that this type of conduct is in direct contradiction to the intended purpose of the Settlement Agreement.


Respectfully submitted,

**WINSTON & STRAWN LLP**

*/s/ Steven Grimes*
Steven Grimes (admitted *pro hac vice*)

Frank Battaglia (admitted *pro hac vice*)
Carly L. Pace (admitted *pro hac vice*)
35 W. Wacker Drive
Chicago, IL 60601-9703
T: 312-558-5600
F: 312-558-5700
sgrimes@winston.com
fbattaglia@winston.com
clpace@winston.com


*Counsel for Defendant Scranton Products, Inc.*

DATED: August 23, 2024

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a correct copy of the foregoing Defendant Scranton Products Inc.'s Proposed Findings of Fact and Proposed Conclusions of Law has been served on counsel of record for Bobrick Washroom Equipment, Inc. through the Court's ECF system.


Dated: August 23, 2024                    */s/ Steven Grimes*
                                          Steven Grimes