## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BOBRICK WASHROOM EQUIPMENT, INC., | : |
| | : |
| | : CIVIL ACTION NO. 3:14-CV-853 |
| Plaintiff, | : (JUDGE MARIANI) |
| | : |
| v. | : |
| | : |
| SCRANTON PRODUCTS, INC., | : |
| | : |
| Defendant. | : |
| | : |

### MEMORANDUM OPINION
#### I. INTRODUCTION

Bobrick Washroom Equipment, Inc.'s Third Motion to Enforce Settlement Agreement ("Bobrick's Third Enforcement Motion") (Doc. 704) is pending before the Court. The Motion relates to the Settlement Agreement ("SA") which the parties filed on December 29, 2017, and the Court approved on March 6, 2018. (Docs. 435, 444.)

The Court previously considered Bobrick's Third Enforcement Motion in the August 8, 2023, Memorandum Opinion and Order (Docs. 732, 733) and concluded that the Court lacked jurisdiction to consider two of the three claims set out in the Motion. (Doc. 732 at 3-10; Doc.733 ¶ 1.) As filed, Bobrick's Third Enforcement Motion alleged that Scranton Products was in breach of the SA on three grounds. First, Bobrick alleged that Scranton Products' refusal to amend the Customer Letter in the form requested by Bobrick breached paragraphs 5 and 136 of the Settlement Agreement because the Customer Letter contains

inaccurate information. (Doc. 704 ¶ 2.) Second, Bobrick alleged that the format of Scranton Products' Color Selection Form violated paragraphs 5 and 89 of the Settlement Agreement because it drives customers towards its non-NFPA 286 compliant products by offering more color and texture options than for its NFPA 286-compliant products and Scranton Products continues to distribute this form despite the alleged change in the need for toilet partitions to be NFPA 286 compliant. (*Id.* ¶ 3.) Third, Bobrick alleged that Scranton Products has made, and continues to make, false statements about its toilet partitions in its marketing materials regarding fire ratings in violation of paragraphs 5 and 89 of the Settlement Agreement. (*Id.* ¶ 4.) After concluding that Bobrick's Third Enforcement Motion was properly "denied for lack of jurisdiction as to Bobrick's alleged breach based on Scranton Products' refusal to amend the Customer Letter and Bobrick's alleged breach based on the format of Scranton Products' Color Selection Form" (Doc. 732 at 11-12), the Court stated that Bobrick's Third Enforcement Motion would "go forward as to Bobrick's alleged breach based on Scranton Products' statements concerning fire ratings of bathroom partitions in its marketing Materials" (*id.* at 12). (*See also* Doc. 733 ¶¶ 1, 2.)

Based on this determination, the only issue now before the Court is whether Scranton Products is in breach of the SA because false statements about its toilet partitions in its marketing materials regarding fire ratings are in violation of paragraphs 5 and 89 of the Settlement Agreement (*see* Doc. 704 ¶ 4). The remaining issue was addressed at the evidentiary hearing held on July 25, 2024, and July 26, 2024 (*see* Docs. 810, 811) following

which the parties filed proposed findings of fact and conclusions of law (Docs. 814, 815).[1]

For the reasons that follow, the Court will deny Bobrick's Third Motion Enforcement Motion

(Doc. 704).

## II. BACKGROUND

Bobrick and Scranton Products are indirect competitors in the toilet partition market.

(Doc. 671, ¶ 5.)  In the underlying litigation, Scranton Products filed a five-count complaint

against Bobrick on May 2, 2014, alleging violations of the Lanham Act, 15 U.S.C. § 1125(A),

for "Literally False Advertising" and "Deceptive and Misleading Advertising," Common Law

Unfair Competition, Commercial Disparagement, and Tortious Interference with Existing or

Prospective Business Relations.  (Doc. 1.)  These claims were related to Bobrick's alleged

statements that Scranton Products did not sell a high-density polyethylene ("HDPE") toilet

partition that complied with 2009 and 2012 International Building Codes, in particular NFPA

286, a test developed by the National Fire Protection Association ("NFPA").

As explained in the SA,

> Bobrick disputed the material allegations in, and liability arising from,
> the claims alleged against it in the Action. On December 9, 2016,

---

[1] Scranton Products, Inc. ("Scranton Products") thereafter filed a motion to strike certain paragraphs and exhibits in Bobrick's proposed findings of facts and conclusions of law.  (Doc. 817.) This motion will be addressed by separate order. For present purposes, the Court notes that only those exhibits admitted into evidence at the evidentiary hearing will be considered in determining the merits of Bobrick's third enforcement motion and factual assertions and/or testimony grounded in exhibits not admitted will not be relied upon. The following are the admitted exhibits: Bobrick's exhibits B_1, B_5, B_15, B_16, B_17, B_18, B_45, and B_46; and Scranton Products' exhibits SP-1, SP-2, SP-3, SP-9, SP-10, SP-11, SP-12, SP-13, SP-14.

Scranton Products sought leave of court to dismiss all of its claims against Bobrick with prejudice, without any payment of money, settlement, admission of liability, or other consideration from Bobrick. On February 10, 2017, the Court permitted Scranton Products to dismiss its claims against Bobrick.

Bobrick filed counterclaims against Scranton Products in the Action, seeking damages and injunctive relief based on claims under the Lanham Act, 15 U.S.C.§ 1501 et seq.; under Pennsylvania's Dragonetti Act, 42 Pa. C.S.A. § 8351; and for common-law unfair competition and abuse of legal process. Scranton Products disputes the material allegations in, and liability arising from, the claims filed against it in the Action.

(SA ¶¶ 7-8.)

Bobrick's counterclaims were settled in the SA in exchange for, among other things, $7,500,000.  (Doc. 671, ¶ 31.)  As part of the SA approved by the Court, the parties agreed that Scranton Products would send a customer letter to certain Scranton Products' customers (the "Customer Letter").  (SA, ¶¶ 81-88.)  Regarding breaches of the SA, the SA provides for reasonable opportunities to cure,(SA, ¶¶ 90-93), defines various breaches (*id.* ¶¶ 95-97) and identifies available relief (*id.* ¶¶ 98-103).

The pending motion is the fourth enforcement motion filed in this case and the third filed by Bobrick.  On August 8, 2023, the Court denied Bobrick Washroom Equipment, Inc.'s Motion to Enforce Settlement Agreement (Doc. 452), Bobrick Washroom Equipment, Inc.'s Amended Second Motion to Enforce Settlement Agreement (Doc. 548), and Defendant Scranton Products' Motion to Enforce Settlement Agreement, (Doc. 550).  (Docs. 730, 731.)

As set out above, Bobrick's Third Enforcement Motion is now limited to Bobrick's

allegation that Scranton Products has made, and continues to make, false statements about

its toilet partitions in its publicly available marketing materials regarding fire ratings in

violation of Paragraphs 5 and 89 of the SA. (Doc. 704 ¶ 4.)

Several SA provisions concerning the customer letter are relevant to the pending

motion.

> Beginning five (5) business days after the Effective Date, for each and every sale of non-NFPA 286-compliant HDPE toilet partitions (including, but not limited to, Class A fire-rated HDPE toilet partitions, Class B fire-rated HDPE toilet partitions, and non-fire-rated HDPE toilet partitions), Scranton Products will send the entity that submits the purchase order to Scranton Products (the "purchaser") (regardless of location, because Scranton Products is often not aware of the end user or ultimate locations of installation) a letter in the form of **Exhibit D** (the "Customer Letter").

(SA, ¶ 81.)

> Scranton Products may, at its discretion, modify the Customer Letter from time to time, but only (a) with the prior written agreement of Bobrick, which agreement will not unreasonably be withheld if the changes are non-substantive, or if the changes are substantive but reflect a change in the law or an alteration in the requirements of NFPA 286, or (b) by approval of the Court upon Scranton Products' motion after Bobrick has had notice sufficient to provide it with an opportunity to request to be heard by the Court.

(SA, ¶ 88.)

> Scranton Products will not include in its marketing materials, advertisements, bulletins, terms and conditions, sales acknowledgements, shipping confirmations, website, or any other document or communication related to the sale of non-NFPA 286 compliant HPDE toilet partitions anything contradicting the substance of the information in the Customer Letter.

(SA, ¶ 89.)

The SA contains provisions allowing a party a reasonable opportunity to cure an alleged breach.

> If a Party believes that the other Party has breached the Settlement Agreement, it must provide the other Party with written notice of the breach (consistent with paragraph 156 below) and a reasonable opportunity to cure the breach prior to seeking relief from the Court, which must be sought by filing an Enforcement Motion; provided, however, that no opportunity to cure a breach will be afforded to a Party following that Party's third breach, within any twelve-month period, arising from the same or substantially similar acts or omissions.

(SA, ¶ 90.)

> Following the exhaustion of any reasonable cure period afforded under the preceding paragraph, the Party alleging breach may bring an Enforcement Motion, as defined in paragraph 104 below, to bring the matter before the Court for determination, pursuant to the process described in paragraphs 104–112 below. If the Court finds that there has been a breach of the Settlement Agreement, the breaching Party will pay the other Party liquidated damages as set forth in this Settlement Agreement. The Party determined to be in breach will also pay the other Party's reasonable attorneys' fees and costs incurred in enforcing the Settlement Agreement, in an amount determined by the Court.

(SA, ¶ 91.)

> The Parties agree that three months is a presumptively reasonable amount of time for curing a breach, but the Court may, in its discretion, determine that particular circumstances justify extending the reasonable time period permitted for curing any specific breach.

(SA, ¶ 92.)

> If a Party provides written notice of a breach under the Settlement Agreement, and the other Party attempts in good faith to cure the breach but fails to cure the breach, then, following a subsequent written notice by the non- breaching Party, the breaching Party will have another reasonable period of time to cure the breach; provided that under no circumstances will the consecutive notice and cure periods for the same or substantially the same breach exceed twelve months.

(SA ¶ 93.)

The SA also has several provisions defining different levels of breach and their associated consequences. (SA ¶¶ 95-103.) Further consideration of these provisions is not warranted here.

The Customer Letter is Exhibit D to the SA.  (Doc. 435 at 114-115.)  It provides:

Thank you for your order with Scranton Products.  We appreciate your business and want to make sure you are completely satisfied with your purchase.  You have placed an order for one of our products that is not NFPA 286 compliant. NFPA 286 is a fire test that is intended to help evaluate the flammability characteristics of a wall and ceiling interior finish where such materials constitute the exposed interior surfaces of buildings.

The International Code Council ("ICC") publishes a list of states and territories that have adopted a version of the International Building Code ("IBC") that required HPDE bathroom partitions to pass the NFPA 286 test.  As of July 2017, according to a chart published by the ICC, at least 43 states and the District of Columbia have adopted a version of the IBC that requires HDPE bathroom partitions to pass the NFPA 286 room corner test, and at least 5 states have adopted versions of the IBC that generally require HPDE bathroom partitions to pass the NFPA 286 room corner test with limitations allowing for local variation.  The ICC's current summary of jurisdictions and their adoptions of these regulations can be found at:

https://cdm-web.iccsafe.org/wp-content/uploads/Master-I-Code-Adoption-Chart-latest.pdf

This letter is not intended to provide you with legal advice about your obligations or about building code requirements.  You or the architect or designer on your project should consult the local state and building codes in effect in the area where the partitions are intended to be installed to see if the applicable building code requires HDPE bathroom partitions to be NFPA 286 compliant in the area of installation.

If you have placed an order for non-NFPA 286 compliant bathroom partitions in a jurisdiction that requires HDPE bathroom partitions to be NFPA 286 compliant, and you would like to cancel this order for non-NFPA 286 compliant partitions, you may do so within fourteen (14) days of the date of this letter. If you choose to cancel your order, you may apply the amount already paid toward a purchase of our NFPA 286 compliant partitions, or we will refund the amount you have paid for this order.

Please feel free to call me if you have any questions.

(SA Ex. 5, Doc. 435 at 115.)

## III. ANALYSIS[2]

The Court has previously summarized the limited scope of the claimed breach over

which the Court now exercises jurisdiction:

Bobrick alleges that Scranton Products has made, and continues to make, false statements about its toilet partitions in its marketing materials regarding fire ratings in violation of paragraphs 5 and 89 of the Settlement Agreement. (Doc. 704 ¶¶ 4, 46-72.)

Regarding the alleged breach of paragraph 89, Bobrick specifically argues that the misleading conduct

expressly violates ¶ 89 of the Settlement Agreement because, by falsely telling customers that its Class B material is also "Fire Rated" and falsely telling customers in its marketing materials

---

[2] The Court's findings of fact and conclusions of law which are to be set out with the Court's order resolving an enforcement motion (*see* SA ¶ 127) are incorporated in the analysis of the pending motion. Setting out herein the facts and law which the Court finds directly relevant to the disposition of the pending motion, the Court does not separately address the proposed findings of fact and conclusions of law submitted by Bobrick (Doc. 814) and Scranton Products (Doc. 815).

Five individuals testified at the Evidentiary Hearing held on July 25 and July 26, 2024. William Koffel testified as Bobrick's expert and Dale Wheeler testified as Scranton Products' expert. Alan Gettelman, Bobrick's Vice-president of External Affairs, Greg Borgia, a product specialist at Scranton Products, and Robert Donlon, vice-president and general manager of Scranton Products at the time of the evidentiary hearing, also testified. The Court has considered the testimony offered by these witnesses. The Court's analysis reflects what, if any, of their testimony was found relevant and credible.

8

that all of its "Fire Rated" options "meet NFPA 286" when its Class B material does not, Scranton Products has contradicted the substance of the agreed upon information in the Customer Letter. Specifically, these false statements confuse and mislead customers as to whether the customer actually purchased non-compliant toilet partitions and creates the false impression that Class B material is just as fire-code compliant as the NFPA 286 product when it is not.

(Doc. 704 ¶ 68.)

(Doc. 732 at 10-11.) The Court has further found that these allegations presented a viable

claim of a violation of paragraph 89, citing the following by way of example:

Bobrick alleges that assertions made by Scranton Products in various documents about the fire rating of its bathroom partition products and statements indicating that its fire-rated bathroom partitions "meet the acceptance criteria of NFPA 286" (Doc. 704 ¶¶ 60-64) contradict "the substance of the information in the Customer Letter" (Settlement Agreement ¶ 89). Because the Customer Letter says that the recipient of the letter has placed an order "for one of our products that is not NFPA 286 compliant" (Ex. D), Scranton Products' documents indicating that all fire-rated products "meet the acceptance criteria of NFPA 286" may be in conflict with the Customer Letter.

(Doc. 732 at 11.)[3]

The SA states that "all claims arising out of or relating in any way to this Settlement

Agreement, will be governed by and/or construed in accordance with the laws of the

---

[3] The Court determined in a previous Memorandum Opinion addressing jurisdiction related to Bobrick's third enforcement motion that the Court considers the specific provision, paragraph 89, over the general provision, paragraph 5. (See Doc. 732 at 10 n.5.) The Court reiterated this principle at the outset of the evidentiary hearing (Hr'g Tr. 7/25/24 6:3-9) and Bobrick confirmed that it was not claiming a breach of paragraph 5 (id. 9:8-16).

Commonwealth of Pennsylvania, without regard to principles or rules concerning conflicts or

choice of law." (SA, ¶ 151).

To state a claim for breach of contract under Pennsylvania law, a plaintiff must plead

the following elements: (1) the existence of a contract, including its essential terms; (2) the

defendant's breach of duty imposed by the terms; and (3) actual loss or injury as a direct

result of the breach. *See Ware v. Rodale Press, Inc.,* 322 F.3d 218, 225 (3d Cir. 2003)

(citing *CoreStates Bank, N.A. v. Cutillo,* 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

Pursuant to Pennsylvania law, it is

> well established that under the law of contracts, in interpreting an agreement, the court must ascertain the intent of the parties. *Robert F. Felte, Inc. v. White,* 451 Pa. 137, 302 A.2d 347, 351 (1973).
>
> In cases of a written contract, the intent of the parties is the writing itself. If left undefined, the words of a contract are to be given their ordinary meaning. *Pines Plaza Bowling, Inc. v. Rossview, Inc.,* 394 Pa. 124, 145 A.2d 672 (1958). When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. *Hutchison v. Sunbeam Coal Corp.,* 513 Pa. 192, 519 A.2d 385, 390 (1986). When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances. *Steuart v. McChesney,* 498 Pa. 45, 444 A.2d 659, 663 (1982); *Herr's Estate,* 400 Pa. 90, 161 A.2d 32, 34 (1960). A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. *Hutchison,* 519 A.2d at 390. While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact. *Community College v. Society of the Faculty,* 473 Pa. 576, 375 A.2d 1267, 1275 (1977).

*Kripp v. Kripp*, 849 A.2d 1159, 1163–64 (Pa. 2004).

Pennsylvania courts may consult dictionary definitions to determine the "ordinary meaning" of a term. *True R.R. Assocs., L.P. v. Ames True Temper, Inc.*, 152 A.3d 324, 339 (Pa. Super. Ct. 2016) (quoting *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 108 (Pa. 1999)) (a court "may inform [its] understanding of [contractual] terms by considering their dictionary definitions").

In interpreting a contract, the provisions must be construed as a whole and harmonized, if possible, so that all terms are given effect. *Contrans, Inc. v. Ryder Truck Rental, Inc.,* 836 F.2d 163, 169 (3d Cir.1987). A contract should not be interpreted in a manner that renders provisions meaningless, superfluous, unreasonable, contradictory, or would lead to absurd results. *Lesko v. Frankford Hosp.-Bucks Cnty.,* 609 Pa. 115, 15 A.3d 337, 343 (Pa.2011); *Contrans,* 836 F.2d at 169.

The party asserting a breach of contract claim bears the burden of proof concerning the elements of the claim and must establish them by a preponderance of evidence. *Bohler–Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 102 (3d Cir. 2001) (applying Pennsylvania law). Thus, to prevail on its enforcement motion, Bobrick must show by a preponderance of the evidence that Scranton Products breached Paragraph 89 of the SA by making and/or continuing to make statements about its fire-rated toilet

partitions on Scranton Products' website and in its marketing materials that contradict the Customer Letter and failed to cure the breach within a reasonable time.[4]

Based on Bobrick's third enforcement motion (Doc. 704), various pre-evidentiary hearing filings, including Bobrick's April 20, 2022, notice of breach correspondence (*see* Doc. 702-1), hearing testimony and evidence, and post-evidentiary hearing filings (Docs. 814, 815), Bobrick's claimed violations of the SA fall into two categories: 1) materials covered by paragraph 89 of the SA which Bobrick claims contain assertions or representations about the fire-rating of non NFPA 286 rated bathroom partitions that contradict the SA; and 2) a webpage assertion that all of Scranton Products' fire rated products meet or are tested in accordance with the NFPA 286 standard.

## A. Webpage Violation Allegation

Bobrick contends that two statements found in the article on Scranton Products' "Fire Prevention Building Codes for Bathroom Partitions" webpage violate paragraph 89 of the SA because they are false and misleading and contradict the substance of the Customer Letter. (Doc. 704, ¶¶ 62-64.) The statements are 1) "Scranton Products fire rated bathroom partitions are tested in accordance with and meet the acceptance criteria of NFPA 286"; and 2) "Scranton Products' fire-rated bathroom partitions meet the acceptance criteria of NFPA 286." (*Id.*) For the reasons discussed below, the Court concludes that Bobrick has not

---

[4] As the Court noted in a prior memorandum opinion, (Doc. 732 at 10 n.5), the Court considers the specific provision of Paragraph 89 over the general provision in Paragraph 5.

satisfied its burden of showing an uncured breach of the SA based on the webpage information identified in paragraph 63 of Bobrick's Third Enforcement Motion.

As set out above, paragraph 89 provides that Scranton Products "will not include in its marketing materials, advertisements, bulletins, terms and conditions, sales acknowledgments, shipping conformations, website, or any other document or communication related to the sale of non-NFPA compliant HPDE toilet partitions anything contradicting the substance of the information in the Customer Letter." (SA ¶ 89.) The Cambridge dictionary defines contradicting, which is the present participle of contradict, as "to say the opposite of what someone else has said, or (of one fact or statement) to be so different from another fact or statement that one of them must be wrong." https://dictionary.cambridge.org/dictionary/english/contradicting (last visited Oct. 24, 2025).

The Court agrees with Bobrick's assessment that the "only reasonable interpretation of Scranton Products' 'Fire Prevention Building Codes for Bathroom Partitions' webpage is that all of Scranton Products' 'Fire Rated' HDPE toilet partitions, which its marketing materials and communications claim include its Class B material, 'meet' or 'were tested in accordance with' NFPA 286." (*Id.* ¶ 64.) While Scranton Products maintains that "none of the statements on the webpage are technically wrong or contradictory to the Customer Letter because the article does not state 'all' of Scranton Products' partitions are fire rated" (Doc. 815 ¶ 49 (citing Wheeler testimony, 7/25/24 Hr'g Tr. 219:2-220:8)), the lack of limiting

13

language in the two specific statements at issue does not support Scranton Products' position.

The Court further finds that the statements "Scranton Products fire rated bathroom partitions are tested in accordance with and meet the acceptance criteria of NFPA 286" and "Scranton Products fire rated bathroom partitions meet the acceptance criteria of NFPA 286" are statements "contradicting the substance of the information in the Customer Letter" (SA ¶ 89) and, therefore, violate paragraph 89 of the SA. The Customer Letter states: "You have placed an order for one of our products that is not NFPA 286 compliant." (SA Ex. D.) Because the Customer Letter is only sent to purchasers of non-NFPA 286 compliant toilet partitions (SA ¶ 81), this language in the Customer Letter necessarily implies to the purchaser of a Class B ASTM E84 fire-rated product that the product it purchased was not NFPA 286 compliant. Thus, the statements on the webpage implying that ALL fire rated products are NFPA 286 compliant contradict the substance of the customer letter which tells the customer that the product purchased is not NFPA 286 compliant.

The question now becomes whether Scranton Products timely cured the breach. For the reasons discussed below, the Court concludes that Scranton Products cured the breach within the timeframe set forth in the SA and acted reasonably and in good faith.  As set out above, paragraph 92 of the SA states:

> The Parties agree that three months is a presumptively reasonable amount of time for curing a breach, but the Court may, in its discretion, determine that particular circumstances justify extending the reasonable time period permitted for curing any specific breach.

14

(SA ¶ 92.)

Robert Donlon, vice-president and general manager of Scranton Products at the time

of the evidentiary hearing, testified that he was surprised to see the reference to this

website in Bobrick's Third Enforcement Action because he thought Scranton Products "had

cured this and deleted it." (7/25/24 Hr'g Tr. 158:24-159:1.) In his November 2023

Declaration, Mr. Donlon provided a detailed explanation of his assessment of the alleged

website breach and relevant actions taken by Scranton Products.

> 10. That website was generally unavailable to the public at the time of Bobrick's Notice of Breach and Third Enforcement Action.

> 11. Specifically, in or around the fall of 2017, Scranton launched a new website. Since the launch of the new website, that article has not been accessible through Scranton's website.

> 12. As a result, it was my understanding that at the time of Bobrick's Notice of Breach and Third Enforcement Action, that article was not available to the general public because it was no longer maintained on Scranton's website.

> 13. That said, following communication with Bobrick on August 17, 2022 concerning the article, I learned that although this webpage was unavailable to the general public through searching or linking at the time Bobrick complained about it, it was available to someone that retained the exact URL to access that webpage:https://www.scrantonproducts.com/wp-content/uploads/2017/06/BP-03_2013_09_23_Fire_Prevention_Building_Codes_for_Bathroom_Partitions_2_pages-2.pdf.

> 14. The URL was unavailable through any other channel, including Scranton's website, when Bobrick served its Notice of Breach and Third Enforcement Action. That URL was instead only accessible through Scranton's old website server if someone retained the exact URL to access the document.

15. Immediately upon learning that someone could access this outdated article if they retained the exact URL, on august 19, 2022, Scranton took additional steps to ensure that no one could access that webpage in the future even if they retained the exact URL (as Bobrick apparently had done).

(Donlon Dec. ¶¶ 10-15, Doc. 740-3 at 4-5; Bobrick's Ev. Hr'g Ex. 5 at 4-5.)

Bobrick does not dispute that Scranton Products took additional steps to ensure the total unavailability of the website the day after communication about it from Bobrick. However, Bobrick seeks to undermine Scranton Products' efforts to cure the breaches alleged in Bobrick's Third Enforcement Motion by pointing to a chart created by Robert Donlon indicating the responsive actions taken by Scranton Products as evidence that Scranton Products' actions were not good faith cures. (*See, e.g.*, Doc. 814 ¶ 126.) Regarding three entries in the chart, including the entry related to the "Fire Prevention Building Codes for Bathroom Partitions" article, Bobrick asserts that,

while [these] entries in the chart have URLs that are no longer valid, the substance of those deleted webpages appears to have simply been moved to different webpages on Scranton Products' website. For example, entry two on the chart is a webpage Scranton Products calls "Hiny Hiders Partition Brochure." While Scranton Products claims that brochure was "deleted," it strongly resembles Hiny Hiders literature that fits the description of a "brochure" currently on Scranton Products' website, as downloaded by Bobrick's expert Mr. Koffel on October 30, 2023 and confirmed to be on Scranton Products' website as of May 13, 2024. *See* Exhibit 45. As such, it appears Scranton Products did not delete these webpages, but rather only moved the information therein, with undisclosed modifications, to new webpages. That is not a good faith cure.

(Doc. 814 ¶ 126.)

16

Bobrick's quoted assertion does not put forth any evidence of bad faith related to the "Fire Prevention Building Codes for Bathroom Partitions" article webpage. None of the claims in this paragraph have anything to do with statements on Scranton Products' webpage at issue. Absolutely nothing in the record suggests that Scranton Products "did not delete th[is] webpage[ ], but rather only moved the information therein, with undisclosed modifications, to new webpages," (*id.*). Therefore, the Court finds that Bobrick has not shown that Scranton Products' attempt to cure the webpage breach was not a good faith cure.

Given Mr. Donlon's credible explanation of Scranton Products' assessment of the alleged breach, Scranton Products' good faith efforts to cure, and the unavailability of the article containing the alleged breach on Scranton Products' website for approximately four years before Bobrick's Third Enforcement Motion, the Court concludes that the "particular circumstances justify extending the reasonable time period permitted for curing any specific breach." (SA ¶ 92.) The Court further finds that a reasonable time to cure the breach extended beyond the communication between Bobrick and Scranton Products on August 17, 2022, and Scranton Products' August 18, 2022, cure was well within an extended cure time period pursuant to paragraph 92.[5]  Based on this determination, the Court concludes

_____

[5] In making this determination, the Court notes that Bobrick relies on a highly unlikely occurrence as the foundation of this alleged breach, i.e., a situation where a customer looking for information about Scranton Products' toilet partitions would bypass Scranton Products' current website and, to obtain fire prevention building code information which the user would presumably understand to be time sensitive, the potential customer would use an old and cumbersome URL of which it was somehow aware. It would not take a sophisticated potential purchaser to recognize that a toilet partition customer would be ill-advised to

that Scranton Products cured the breach related to the "Fire Prevention Building Codes for Bathroom Partitions" article webpage in a timely fashion. [6] (SA ¶ 92). Accordingly, Bobrick has failed to show a breach of the Settlement Agreement based on the "Fire Prevention Building Codes for Bathroom Partitions" article webpage.

## B. "Other Documents" Allegations

In addition to the webpage discussed above, Bobrick's Third Enforcement Motion claims that "other documents available on Scranton Products' website mislead customers about the applicable fire code-compliance of its products." (Doc. 704 ¶ 59.) By way of example, Bobrick states that "certain product specification materials clearly label its "Class B" material as "Fire Rated." (*Id.* ¶ 60.) Bobrick's Third Enforcement Motion's only assertion that the offending conduct violates paragraph 89 by "*contradicting* the substance of the information in the Customer Letter" (SA ¶ 89 (emphasis added), is the conclusory assertion that "by falsely telling its customers that its Class B material is also 'Fire-Rated,' . . . Scranton Products has contradicted the substance of the agreed upon information in the Customer Letter. Specifically, these false statements confuse and mislead customers as to whether the customer actually purchased non-compliant toilet partitions and creates the

---

rely on archived information in a 2013 article titled "Fire Prevention Building Codes for Bathroom Partitions" when assessing code requirements for a project involving bathroom partitions.

[6] Although the facts of this case potentially support the application of paragraph 93 of the SA triggering the need for a subsequent written notice by Bobrick, the Court need not decide this issue based on its determination that the cure period was properly extended pursuant to paragraph 92.

false impression that Class B material is just as fire-code compliant as the NFPA 286

product when it is not." (*Id.* ¶ 68.)

Bobrick Washroom Equipment, Inc.'s Proposed Findings of Fact and Conclusions of

Law in Support of its Third Enforcement Motion to Enforce the Settlement Agreement

("Bobrick's FOF/COL") (Doc. 814), allege similar contradictions:

> Scranton Products' marketing and advertising contradicts the substance of the
> information in the Customer Letter in violation of ¶ 89, as read in the context of
> ¶ 5, because the Customer Letter recognizes only two categories of HDPE
> toilet partitions: (i) those that are "NFPA 286-compliant" and (ii) those that are
> "not NFPA 286 compliant." (or "non-NFPA 286 compliant"). Dkt. 435, Ex. D. By
> contrast, Scranton Products' current marketing and advertising represents to
> customers that there is a third category—toilet partitions that are tested under
> the "ASTM E84" test and are classified by Scranton Products as "Class B" fire
> rated.

(Doc. 814 ¶ 80.)

The Court rejects Bobrick's position that use of the terms "ASTM E84," "Class B,"

and "fire rated" in materials and communications covered in paragraph 89 of the SA violates

the SA by "contradicting the substance of the information in the Customer Letter" (*id.* ¶ 89)

regarding the rating of HDPE bathroom partitions because the Customer Letter refers only

to "not NFPA 286 compliant" or "non-NFPA 286 compliant" HDPE partitions. In so doing, the

Court also rejects Bobrick's conclusion that paragraph 81 of the SA, which includes

information about "Class B" toilet partitions, is not relevant to the disposition of Bobrick's

Third Enforcement Motion. (*See* Doc. 814 ¶¶ 91-93.)

19

The Court has previously established a framework for considering whether

documents or communications "related to the sale of non-NFPA 286 compliant HDPE toilet

petitions include . . . anything contradicting the substance of the information in the

Customer Letter" (SA ¶ 89): "Enforcement of [paragraph 89] does not entail consideration of

evidence of the fire rating of Scranton Products' partitions contained in documents or

communications which a party may characterize as false or misleading but is not in conflict

with the substance of the information in the Customer Letter" (Doc. 800 at 5 n.2); "allegedly

false or misleading information about fire ratings in marketing documents or

communications would not be relevant unless that information demonstrably conflicts with

the substance of the Customer Letter" (Doc. 801 at 3 n.1).

Neither the Settlement Agreement nor the Customer Letter require that the precise

language used in the Customer Letter be used in the materials and communications

identified in paragraph 89 of the SA, i.e., those related to the sale of non-NFPA 286

compliant HDPE toilet partitions. To read such a requirement into the SA, as Bobrick has

done, is without legal or logical foundation.[7]

---

[7] William Koffel, Bobrick's expert, testified extensively, focusing primarily on what he found
confusing and inconsistent about language used in Scranton Products' marketing materials and why he
believed the Customer Letter should be more broadly distributed.

By way of example, in consideration of a statement that "[t]he Eclipse partitions can be provided,
either, as a Class B or NFPA 286," Mr. Koffel stated: "So there is the confusion, there is the conflict. Either,
a partition passes 286, per the customer letter, or it does not. The inclusion of this ASTM E84 Class B
reference, which is not included in the customer letter, creates confusion in the marketplace and, therefore,
a conflict." (7/25/24 Hr'g Tr. 58:5-11.) Confusing does not equate with conflicting. Moreover, the SA does

not require paragraph 89 documents and communications to use language identical to that used in the Customer Letter.

Mr. Koffel agreed that "the words, non-NFPA 286-compliant, are defined in the Settlement Agreement to include the words, Class B fire-rated" (*id.* 95:1-7) and when pressed to articulate what words on the website contradict what words in the customer letter, the following exchange occurred:

> Q. Tell the Judge what specific words on Exhibit 45 contradict specific words in the customer letter? Specifically, please.
> A. With all due respect, this is not about specific words, this is about how I understand, how a user of this website understands the information that they see and how they're going to order a product, and are they ordering a product that is compliant or not compliant with NFPA 286. I am prepared to explain that.
> Q. There are no other specific words that are contradictory, in your opinion; right?
> A. Specific words? No.

(7/25/24 Hr'g Tr. 95:16-96:2.)

When asked if his "opinion, in this case, is if an architect made a mistake, for example, in the Harrisburg situation, that that must mean Scranton Products has breached the Settlement Agreement?" (*id.* 98:9-12), the following discussion of the issue ensued:

> A. In the context that their communication is to communicate the substance of the information in the customer letter, yes.
> Q. So if an architect makes a mistake, if they read the customer letter and they don't order 286, even though, they should have, it's your testimony that Scranton Products did something wrong?
> A. That architect did not read the customer letter, it was never provided to the architect.
> Q. Thank you. Here's the breakdown, sir. Do you understand that Scranton Products, under the Settlement Agreement, isn't required to give the customer letter to the architect? You know that; right?
> A. They are not required to, the Settlement Agreement does not say, they may not.
> Q. Okay, but you criticize them because they don't do what the Settlement Agreement doesn't require them to do, that's why you have the opinion you have in this case?
> A. Consistent with the Settlement Agreement, the distribution of that customer letter should be broader than what it is. And Scranton Products can do that.

(*Id.* 98:9-99:7.) Shortly thereafter, Mr. Koffel reiterated his opinion on what the Customer Letter should be:

> Q. . . . [Y]ou don't like the way that Settlement Agreement was structured to set it up so that only the purchaser and not the downstream people get that, you don't like that requirement, do you?

In paragraph 89, the parties chose to prohibit the inclusion of "anything *contradicting* the substance of the information in the Customer Letter" from use in listed materials and communications which related to the sale of non-NFPA 286 compliant toilet partitions. (SA ¶ 89 (emphasis added).) Essentially, Bobrick asks the Court to read the exclusion of 'anything contradicting the substance of the Customer Letter' to mean the exclusion of 'anything not using the precise language of the Customer Letter when referring to a non-NFPA 286 compliant toilet partition.'" This type of alteration, fundamentally writing out "contradicting" from the paragraph 89 of the SA, is not something the Court can do and it is disingenuous at best for a party to suggest otherwise.

Though the issue has been cloaked in complexity, the analysis here is simple: Testifying experts agreed that ASTM E84 is a fire rating (7/25/24 Hr'g Tr. 42:10-43:1; 215:1-1-20); Bobrick does not dispute that an ASTM E84 fire-rated Class B toilet partition is a non-NFPA 286 compliant toilet partition; given these facts, the use of "ASTM E84, "Class B" and "fire rated" as descriptors of non-NFPA 286 products in materials and communications

_____

A. Again, I'm not criticizing the Settlement Agreement, I'm saying that consistent with the Settlement Agreement and consistent with Paragraph 89, Scranton Products should be more broadly distributing the content of the customer letter.

(7/25/24 Hr'g Tr. 111:8-15.)

Clearly, Mr. Koffel's opinions do not address whether the materials reviewed contained anything *contradicting* the Customer Letter as that word is defined in the text. Mr. Koffel provided opinion about what he thought the Settlement Agreement should require but not what it actually requires. His proffered recipe for the revision of the Settlement Agreement is far beyond the scope of the issues now before the Court, and his opinions are therefore irrelevant.

identified in paragraph 89 cannot be something "contradicting the substance of the

Customer Letter" (SA ¶ 89). which indicates that the customer has purchased a product

"that is not NFPA 286 compliant" (SA Ex. D).

The conclusion that the SA does not prohibit the allegedly offending language is

bolstered by the SA's specific inclusion of "Class B fire-rated HDPE toilet partitions" as an

example of a non-NFPA 286-compliant HDPE toilet partition in paragraph 81 of the SA. As

set out above, paragraph 81 provides:

> Beginning five (5) business days after the Effective Date, for each and every
> sale of non-NFPA 286-compliant HDPE toilet partitions (including, but not
> limited to, Class A fire-rated HDPE toilet partitions, Class B fire-rated HDPE
> toilet partitions, and non-fire-rated HDPE toilet partitions), Scranton Products
> will send the entity that submits the purchase order to Scranton Products (the
> "purchaser") (regardless of location, because Scranton Products is often not
> aware of the end user or ultimate locations of installation) a letter in the form of
> **Exhibit D** (the "Customer Letter").

(SA ¶ 81.)

Bobrick attempts to negate any application of the identification of Class B fire-rated

toilet partitions as non-NFPA 286-compliant toilet partitions in paragraph 81 to the alleged

breaches under consideration here with the following argument:

> To the extent Scranton Products argues that ¶ 81 defines the term "non-
> compliant" for advertising and marketing purposes, as well as for sales, neither
> ¶ 89 nor the dispositive Customer Letter has similar "Class B" language as ¶
> 81. This shows that the parties did not intend the same definition to apply to
> Scranton Products' marketing or advertising, much less to permit Scranton
> Products to market its products using a fire testing standard that is not identified
> in the Customer Letter, thus contradicting its plain language and violating ¶ 89.

(Doc. 814 ¶ 93.)

Bobrick's argument flies in the face of the well-accepted principle of contract interpretation that "'[a] word used by the parties in one sense is to be interpreted as employed in the same sense throughout the writing in the absence of countervailing reasons.'" *Com. ex rel. Kane v. UPMC*, 129 A.3d 441, 464 (Pa. 2015) (quoting Maloney v. Glosser, 235 A.2d 607, 609 (!967)); *T.N. Incorporation, Ltd. v. Fidelity National Information Services, Inc.*, Civ. A. No.18-5552, 2022 WL 910092, at * 10 (E.D. Pa. 2022); *see also* 11 *Williston on Contracts* § 32:6 (4th ed. 2015). Applying the principle here, paragraph 81's inclusion of "Class B fire-rated toilet partitions" in the meaning of "non-NFPA 286-compliant HDPE toilet partitions" means that the use of the same "non-NFPA 286[-]compliant" language in paragraph 89 has the same meaning absent countervailing reasons. Bobrick's conclusory argument set out above does not present such a reason and, though it is Bobrick's burden to identify a countervailing reason, the Court finds no basis to conclude that the presumption set out in the principle of interpretation should not apply here.  In this carefully crafted Settlement Agreement, had the parties intended that the explanation of a term set out in a provision would have a different meaning in a subsequent provision, they would not have done so without acknowledgment of the distinction. Because Bobrick provides no reasoned basis to conclude that the explanation of what products are included in the term "non-NFPA 286-compliant toilet partitions" in one provision of the SA does not inform the meaning of the term in a later provision, the Court concludes that Bobrick has not shown that Scranton Products breached the Settlement Agreement by using terms "Class

24

B," "fire rated," and "ASTM E84" as descriptors of its non-NFPA 286-complaint HDPE bathroom partitions in materials and communications covered by paragraph 89.

This determination applies to documents and communications specifically identified and those encompassed within the broad scope of Bobrick's Third Enforcement Motion. Plaintiff's counsel asserted that the allegedly prohibited use of these terms is not limited to the specific documents cited but, rather, the use of the terms "is a problem, wherever it appears [and] . . . it could appear other places . . . which we don't know about yet[.] . . . [T]hat's what this case is about." (7/25/24 Hr'g Tr.  62:9-15.) The Court allowed a broad interpretation of the allegations in Bobrick's Third Enforcement Motion at the Evidentiary Hearing. (See, e.g., 7/25/24 Hr'g Tr. 63:12-65:3.) The Court's consideration of the broad scope of this aspect of Bobrick's Third Enforcement Motion in turn leads to the conclusion that ALL documents and communications covered in paragraph 89 of the SA, whether specifically identified or not, are encompassed in the disposition set forth here.[8] Further, because Scranton Products' did not breach the SA in the first instance where the alleged contradiction with the Customer Letter related to the presence of the terms "Class B," "fire rated," and/or "ASTM E84," any criticism of the "cure" of the alleged breaches is irrelevant in

---

[8] With this determination, the Court need not address the specific documents and communications to which Bobrick has pointed in support of the claimed breach. In the Notice of Breach, Bobrick's Third Enforcement Motion and at the Evidentiary Hearing, the numerous examples cited by Bobrick are encompassed in the Court's application of the analysis to ALL documents covered in paragraph 89.

that Scranton Products has no obligation to undertake a cure under the SA where there was no legal basis to remove references to these terms in marketing and advertising materials.[9]

Finally, the Court notes that Bobrick's overarching position that the SA allows Scranton Products to sell non-NFPA 26-compliant toilet partitions but does not allow it to market or advertise them as anything other than "non-NFPA 286-compliant" toilet partitions is unsupported by the SA, the Customer Letter, and common sense. (*See, e.g.*, 7/25/24 Hr'g

---

[9] Bobrick's FOF/COL also points to the International Building Code ("IBC") and jurisdictional requirements in support of claimed breaches. (*See* Doc. 814 ¶¶ 33-68.) Enforcement of the Settlement Agreement does not and should not require the Court to be an arbiter of the meaning and impact of various editions of the International Building Code ("IBC") in that Scranton Products is not tasked with any obligation regarding the IBC other than what is in the customer letter, and the language in the Customer Letter clearly places the burden on the purchaser, architect, or product designer to monitor IBC compliance. Discussion of Bobrick's proffered IBC arguments (*see* Doc. 814 ¶¶ 36-65 & n.13) is not warranted in that all editions of the IBC relied upon, i.e., 2009, 2012, and 2015, predated the December 2017 Settlement Agreement and the SA contains no specific provision about IBC interpretation or compliance. Further, the Customer Letter's reference to the IBC relates to a list published by the International Code Council ("ICC") "of states and territories that have adopted a version of the International Building Code that required HDPE bathroom partitions to pass the NFPA 286 test." (SA Ex. D.). The specific information provided in the Customer Letter is keyed to "July 2017" and the purchase is directed to the ICC website for "[t]he ICC's current summary of jurisdiction and their adoption of [relevant] regulations." (*Id.*) The Customer Letter also advises that the customer "or the architect or designer on your project should consult the local state and building codes in effect in the area where the partitions are intended to be installed to see if the applicable building code requires HDPE bathroom partitions to be NFPA 286 compliant in the area of installation." (*Id.*) In the absence of any directive in the SA assigning IBC-related responsibilities to Scranton Products, the foregoing provisions of the Customer Letter clearly indicate that it was not the intent of the SA for Scranton Products or the Court to interpret and enforce potentially relevant aspects of the IBC.

Similarly, enforcement of the Settlement Agreement does not require the Court to keep abreast of what jurisdictions require HDPE toilet partitions to be tested in accordance with the NFPA 286 standard in that Scranton Products is not tasked with doing so beyond providing the information provided in the 2017 ICC chart and providing the link to the ICC's current summary of jurisdictions and their adoptions of relevant regulations which are followed by the statement that "[t]his letter is not intended to provide you with legal advice about your obligations or about building code requirements." (SA Ex. D.) Though not relevant to the disposition of this matter, the Court further notes that, on the question of whether all jurisdictions require NFPA 286-compliant HDPE partitions, Bobrick's SOF/COL acknowledges that compliance with the NFPA 286 standard is not universally required. (Doc. 814 ¶ 66.)

Tr. 106:12-22; Doc. 814 ¶¶ 155, 156.) This Settlement Agreement is between sophisticated, heavily-represented parties—Bobrick's conclusion that the SA is properly interpreted to mean that Scranton Products gave up the ability to use descriptors relevant to its non-NFPA 286-compliant HDPE toilet partitions in its marketing and advertising of these products totally contradicts what the Court has learned over the last decade about these parties and this Settlement Agreement.

## IV. CONCLUSION

For the foregoing reasons, Bobrick's Third Enforcement Motion (Doc. 704), will be denied. In the morass that has been the litigation of alleged breaches of the Settlement Agreement, all of which have been determined to be without merit, Bobrick's Third Enforcement Motion is the most labyrinthine of all, and Bobrick's attempt to interpret the Settlement Agreement to prohibit the use of terms clearly contemplated therein has caused unnecessary expenditures of time and financial resources. Bobrick's executives have consistently acknowledged that they wished they had bargained for more. Alan Gettelman, Bobrick's Vice-president of External Affairs, again expressed at the evidentiary hearing that he regretted concessions made. (7/25/24 Hr'g Tr. 123:16-124:3.) However, in these instances, Bobrick executives have consistently acknowledged that the Settlement Agreement does not require what they would have liked. Going forward, the Court urges the parties to carefully consider the Court's strict construction of the Settlement Agreement and

the Court's interpretation of Settlement Agreement provisions to date in working to amicably

resolve issues of contention that may arise in the future.

A separate Order will enter.

Robert D. Mariani
United States District Judge